UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH RAANAN *et al.*,<br><br>         Plaintiffs,<br><br> - v. -<br><br>BINANCE HOLDINGS LIMITED and CHANGPENG ZHAO,<br><br><br>         Defendants. | Civil Action Case No.<br>24 Civ. 00697 (JGK)<br><br>**ORAL ARGUMENT REQUESTED** |

**BINANCE HOLDINGS LIMITED'S AND CHANGPENG ZHAO'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
<u>OF THEIR MOTION TO DISMISS</u>**

              CAHILL GORDON & REINDEL LLP
              Samson A. Enzer
              Anirudh Bansal
              Sesi Garimella
              Lauren A. Riddell
              32 Old Slip
              New York, New York 10005
              (212) 701-3125

              *Attorneys for Binance Holdings Limited
              and Changpeng Zhao*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

    I.    PLAINTIFFS' PRIMARY LIABILITY CLAIMS FAIL. .................................................. 2

        A.    Plaintiffs Do Not Adequately Allege That *Defendants Committed an Act of Terrorism*. ................................................................................................ 2

        B.    Plaintiffs Do Not Adequately Allege That *Defendants Proximately Caused the Attacks*. ....................................................................................................... 4

    II.    PLAINTIFFS' AIDING-AND-ABETTING CLAIM FAILS. ........................................... 5

        A.    Plaintiffs Fail to Plead Defendants' Knowing and Substantial Assistance. .................. 5

        B.    Plaintiffs Do Not Adequately Allege General Awareness. .............................. 8

    III.    EIGHTEEN PLAINTIFFS LACK STANDING. ............................................................. 9

    IV.    THE COURT LACKS PERSONAL JURISDICTION. ................................................... 9

CONCLUSION ................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Averbach* v. *Cairo Amman Bank*,
  2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022)............................................................................2, 4

*Boim* v. *Holy Land Found. for Relief and Dev.*,
  549 F.3d 685 (7th Cir. 2008) ....................................................................................................2, 3

*Bonacasa* v. *Standard Chartered PLC*,
  2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023).............................................................................8n

*Erickson Prods., Inc.* v. *Atherton Tr.*,
  2013 WL 1163346 (S.D.N.Y. Mar. 20, 2013) ............................................................................9n

*Halberstam* v. *Welch*,
  705 F.2d 472 (D.C. Cir. 1983) .....................................................................................................8

*Honickman* v. *BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) .......................................................................................................2, 3n

*King* v. *Habib Bank Ltd.*,
  2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023) ..............................................................................8n

*Lelchook* v. *Islamic Republic of Iran*,
  393 F. Supp. 3d 261 (E.D.N.Y. 2019) ........................................................................................3n

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)..................................................................................................... 9-10

*Linde* v. *Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018)..........................................................................................................2

*Miller* v. *Arab Bank, PLC*,
  372 F. Supp. 3d 33 (E.D.N.Y. 2019) ..........................................................................................3n

*Schansman* v. *Sberbank of Russia PJSC*,
  565 F. Supp. 3d 405 (S.D.N.Y. 2021).....................................................................................3, 3n

*Strauss* v. *Crédit Lyonnais, S.A.*,
  379 F. Supp. 3d 148 (E.D.N.Y. 2019) .........................................................................................4

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 118 (2d Cir. 2013).........................................................................................................4

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021)..................................................................................10n

*Twitter, Inc.* v. *Taamneh*,
    598 U.S. 471 (2023)............................................................................................... *passim*

*Weiss* v. *Nat'l Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021)...................................................................................................3

*Zobay* v. *MTN Group Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ................................................................................8n

**Statutes**

18 U.S.C. § 2331(1) ........................................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)..................................................................................................................10

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition (ECF No. 24, "Opp.") cannot change the basic allegations in this case: BHL[1] is alleged to operate a cryptocurrency exchange available to and used by members of the public all over the world. It is not alleged to have affiliations with *any* terrorist groups, including those responsible for the Attacks, which Defendants unequivocally condemn. Nor does Plaintiffs' AC allege that BHL had any connection with the perpetrators of the Attacks, nor any advance knowledge of the Attacks, nor even that any funds traveling through BHL's exchange contributed to the Attacks. At most, the AC alleges BHL's controls failed to stop users with unspecified ties to Hamas/PIJ from accessing the exchange in the same way countless innocent users did.

This is insufficient. The Federal anti-terrorism statutes—the ATA and JASTA—impose civil liability for engaging in terrorist violence, or assisting in violent acts "as something that [the defendant] wished to bring about," *Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 498 (2023)—something the AC does not and cannot allege. Plaintiffs' Opposition avoids these intent requirements, and rehashes the AC's vague, conclusory allegations about unspecified links between Hamas/PIJ and transactions on BHL's exchange, which, without any plausible allegations about BHL's state of mind at the time of the transactions, cannot sustain Plaintiffs' claims. The AC must be dismissed.

---

[1] Capitalized terms not defined herein have the meanings assigned in Defendants' Moving Brief (ECF No. 19, "Br.").

**ARGUMENT**

I. **PLAINTIFFS' PRIMARY LIABILITY CLAIMS FAIL.**

The AC's primary liability counts—Counts 2 and 3—must adequately plead that *Defendants themselves* committed an act of international terrorism that proximately caused Plaintiffs' injuries. The AC alleges no such thing, and the Opposition does not change that.

    **A. Plaintiffs Do Not Adequately Allege That *Defendants Committed* an Act of Terrorism.**

To plead primary liability, Plaintiffs must allege facts showing that Defendants committed an act of "international terrorism," meaning an act that (1) is violent or dangerous to human life, (2) violates U.S. criminal laws, and (3) is intended to intimidate or coerce a civilian population or government (*i.e.*, "terroristic intent"). *See Averbach* v. *Cairo Amman Bank*, 2022 WL 2530797, at *17-19 (S.D.N.Y. Apr. 11, 2022); 18 U.S.C. § 2331(1). The AC fails on each element.

***Violent or Dangerous Acts.*** Defendants' Moving Brief establishes that the routine exchange services they offered to the public—on which Plaintiffs' allegations rest entirely—cannot be violent or dangerous to human life. *See Averbach*, 2022 WL 2530797, at *19 ("routine" services are "not violent or dangerous to human life"; collecting cases).

Plaintiffs' reliance on *Boim* v. *Holy Land Foundation for Relief and Development*, 549 F.3d 685, 690 (7th Cir. 2008), for the proposition that merely "[g]iving money to Hamas" is "an act dangerous to human life" (Opp. at 15) is unpersuasive. *Boim* preceded the 2016 passage of JASTA, which created aiding-and-abetting liability for non-terrorists under narrow circumstances that—as discussed below—are not presented here. *See Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 320 (2d Cir. 2018). The Second Circuit has expressly rejected attempts to use *Boim* to sidestep JASTA's secondary liability standards, as Plaintiffs attempt here. *See Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 499 n.14 (2d Cir. 2021). Moreover, whereas the *Boim* defendants actively made

2

donations to Hamas, Plaintiffs allege merely that Defendants operated a generally available cryptocurrency exchange, and, at most, did not prevent users with undefined links to Hamas from using the exchange. This is a far cry from "giving money" to Hamas.[2]

***Criminal Act.*** The AC also fails to allege Defendants committed a criminal act, because it does not plead the requisite *mens rea*. (Br. at 12). Plaintiffs argue that "deliberate indifference" is sufficient, relying on *Weiss* v. *National Westminster Bank, PLC*, 993 F.3d 144, 162 (2d Cir. 2021). (Opp. at 16). But *Weiss* did not discuss deliberate indifference; rather, it held that intent is measured by whether the defendant *knew* its conduct could foreseeably cause injury, which Plaintiffs cannot plausibly allege here. 993 F.3d at 161. The other cases Plaintiffs cite to support their manufactured standard rely on the pre-JASTA *Boim* decision, which, as indicated, no longer supports primary liability. (*See, e.g.*, Opp. at 17 (citing *Goldberg* v. *UBS AG*, 660 F. Supp. 2d 410, 433-34 (E.D.N.Y. 2009))). Unlike in Plaintiffs' cases, nowhere does the AC allege Defendants had notice of Hamas/PIJ connections with BHL exchange transactions *at the time of the transactions*. *Compare* (Br. at 5, 6, 12-13), *with Schansman*, 565 F. Supp. 3d at 411 (cited in Opp. at 15) (news reports put defendant on notice that ongoing services furthered *specific* terrorist acts).

---

[2] Plaintiffs' other cases (Opp. at 15) preceded *Honickman* and/or involve conduct far beyond that alleged here. *See Miller* v. *Arab Bank, PLC*, 372 F. Supp. 3d 33, 39-40, 45 (E.D.N.Y. 2019) (defendant administered martyr-payment program); *Lelchook* v. *Islamic Republic of Iran*, 393 F. Supp. 3d 261 (E.D.N.Y. 2019) (default judgment); *Schansman* v. *Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 417-18 (S.D.N.Y. 2021) (continuing support for terrorist group after media reported on defendant's participation in terrorist funding).

3

Case 1:24-cv-00697-JGK    Document 28    Filed 08/02/24    Page 8 of 16

***Terroristic Intent.*** Plaintiffs' Opposition does not excuse the AC's failure to allege this element. (Br. at 13). Plaintiffs merely assert that "Defendants' objective intent is set forth by their knowing, substantial assistance and general awareness." (Opp. at 16). Plaintiffs cite no authority for their attempt to eliminate the terroristic intent requirement, which is real and cannot simply be brushed aside. *See Strauss* v. *Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 161 (E.D.N.Y. 2019) (dismissing primary liability claim for failure to allege terroristic intent).

### B. Plaintiffs Do Not Adequately Allege That *Defendants Proximately Caused* the Attacks.

Plaintiffs' Opposition does not cure the AC's failure to "plausibly allege that [Defendants'] actions proximately caused [Plaintiffs'] injuries." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013). Plaintiffs do not even argue that the AC meets this standard, but merely assert that "Plaintiffs' injuries were the foreseeable consequences of Defendants' material support." (Opp. at 17). This is insufficient. "Without a more direct connection between" Defendants' conduct and the Attacks, "the provision of financial services to individuals and organizations on its own is insufficient to support a plausible inference that th[ose] financial services . . . proximately caused the Attacks." *Averbach*, 2022 WL 2530797, at *21.

Nor are Plaintiffs' generalized assertions about cryptocurrency relevant. (*See, e.g.*, Opp. at 18 ("cryptocurrency is tailored for terrorists to conceal their financial transactions")). Plaintiffs cite no authority for their conclusory assertion that cryptocurrency is inherently illicit, and documents incorporated by reference in Plaintiffs' AC acknowledge the opposite: that "illicit activity is no more of a concern for the cryptoeconomy than it is for the traditional financial system."[3]

---

[3] 8/2/2024 Declaration of Lauren A. Riddell at Ex. 1 (cited by AC ¶ 208).

4

## II. PLAINTIFFS' AIDING-AND-ABETTING CLAIM FAILS.

Plaintiffs' aiding-and-abetting claim (Count 1) fails because they cannot plausibly allege the required elements that Defendants (1) knowingly and substantially assisted in the Attacks, and (2) were generally aware they were part of the Attacks. *Twitter*, 598 U.S. at 487-88, 503.

### A. Plaintiffs Fail to Plead Defendants' Knowing and Substantial Assistance.

To plead knowing and substantial assistance, Plaintiffs must allege facts showing (1) Defendants' conscious, voluntary, and culpable participation in the Attacks; and (2) a nexus between Defendants' participation and Plaintiffs' injuries. *Twitter*, 598 U.S. at 493, 504-05. The AC fails on both.

*1. Plaintiffs Do Not Allege Culpable Participation.*

Culpable participation requires that Defendants actively participated in the Attacks and "wished to 'bring [them] about', or sought 'by their action to make [them] succeed'" (*id.* at 498), something the AC fails to allege and the Opposition ignores. Rather, Plaintiffs misread *Twitter* to hold that "[a] routine service provider is culpable if it provides services 'in an unusual way' or 'provides such dangerous wares that selling those goods to a terrorist group could constitute aiding and abetting a foreseeable terrorist attack.'" (Opp. at 7 (quoting *Twitter*, 598 U.S. at 502)). However, this language from *Twitter* does not even *concern* the culpable participation requirement, but relates to the nexus requirement (which, as discussed below, the AC also does not meet).

Plaintiffs also fail to distinguish the AC from the allegations *Twitter* rejected. Plaintiffs argue that, unlike the social media platforms in *Twitter*, Defendants "intentionally created" Binance.com to serve as "an illicit financing tool *designed* to hide criminal activity." (Opp. at 7 (emphasis added)). Yet the AC does not (and cannot) plausibly allege that Binance.com was

5

designed for illicit purposes. Instead, the AC alleges only that Defendants failed to implement effective controls, and as a result, bad actors used the exchange. (AC ¶¶ 190, 219, 232, 242). This is the same passive nonfeasance that *Twitter* held insufficient. *Twitter*, 598 U.S. at 499 ("[I]t might be that bad actors like ISIS are able to use platforms like defendants' for illegal—and sometimes terrible—ends. But the same could be said of cell phones, email, or the internet generally.").

Plaintiffs also attempt to distinguish *Twitter* by arguing that the social media platforms at issue did not have a *duty* to remove terrorist content, whereas Defendants had a duty to file suspicious activity reports ("SARs"). (Opp. at 9). *Twitter* dispensed with that argument too, explaining that even if the social media platforms had such a duty, "it would not transform defendants' distant inaction into knowing and substantial assistance that could establish aiding and abetting" liability. 598 U.S. at 501.

Finally, Plaintiffs' mantra that Defendants must have acted culpably because Hamas/PIJ used the BHL platform (Opp. at 1, 2, 5, 12, 16) fails. *Twitter* made clear that aiding-and-abetting liability cannot rest on "the value of defendants' platform" to terrorists, but rather on what *affirmative acts*, if any, defendants took to assist the terrorist acts. 598 U.S. at 504. Contrary to Plaintiffs' assertion, Defendants' alleged failure to file SARs (Opp. at 6, 8)—which is not an affirmative act—does not suffice. As in *Twitter*, "Plaintiffs never allege that, after defendants established their platforms, they gave [Hamas/PIJ] any special treatment or words of encouragement. Nor is there reason to think that defendants selected or took any action with respect to [Hamas/PIJ transactions]." 598 U.S. at 498. Because the AC does not adequately allege Defendants' culpable participation in the Attacks, Plaintiffs' aiding-and-abetting claim fails.

### 2. *Plaintiffs Have Not Plausibly Alleged a Nexus Between Defendants' Alleged Actions and the Attacks.*

Plaintiffs do not try to argue that the AC adequately pleads the required nexus between Defendants' actions and the Attacks. Instead, Plaintiffs argue that "a defendant 'can be held liable for [terrorist acts] that were a foreseeable risk'" of its actions. (Opp. at 10 (quoting *Twitter*, 598 U.S. at 496)). Again, Plaintiffs misread *Twitter*. There, as here, the plaintiffs could not allege a "concrete nexus between [the relevant] services and the [terror] attack," and the Supreme Court held that imposing aiding-and-abetting liability without that "concrete nexus" would "necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world," an absurd result the Court rejected.[4] *Twitter*, 598 U.S. at 501. Like in *Twitter*, Plaintiffs cannot allege such a concrete nexus (indeed much of the nonfeasance alleged occurred over two years before the Attacks), and their aiding-and-abetting claims fail. *Id.* at 501, 506-07.[5]

---

[4] While *Twitter* contemplated in *dicta* that this type of sweeping liability might be allowed in limited situations—such as when defendants and terrorists "formed a near-common enterprise" or "where the provider of routine services does so in an unusual way" or supplies terrorists with particularly "dangerous wares" (*Twitter*, 598 U.S. at 502)—those extreme examples are unavailing here, since there are no such allegations about BHL's generally-available exchange.

[5] Plaintiffs' cases on the nexus requirement (Opp. at 10-12) are unavailing, since they involved intentional, directed assistance to terrorism, which *Twitter* distinguished from the "passive nonfeasance" alleged here. 598 U.S. at 500. *See Bonacasa* v. *Standard Chartered PLC*, 2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) (defendant provided "specially structured loan" to fertilizer company after U.S. general told company it was enabling manufacture of explosives used in

7

### 3. The <u>Halberstam</u> Factors Do Not Support Aiding-and-Abetting Liability.

Plaintiffs' argument on the factors in *Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983), boils down to the assertion that Defendants provided Hamas/PIJ with financial support. (Opp. at 11-12). Yet as the Supreme Court recognized in *Twitter*, the *Halberstam* factors are "a framework designed to hold defendants liable when they consciously and culpably 'participate[d] in' a tortious act in such a way as to help 'make it succeed.'" 598 U.S. at 497. The AC does nothing to allege Defendants engaged in such culpable participation, but only alleges Defendants provided an exchange to the general public that happened to be used by claimed associates of Hamas/PIJ. That is insufficient. *See Twitter*, 598 U.S. at 497 (rejecting identical argument under *Halberstam* where "defendants' arm's-length relationship with ISIS" was "essentially no different from their relationship with their millions or billions of other users").

### B. Plaintiffs Do Not Adequately Allege General Awareness.

Plaintiffs' Opposition cannot overcome the fatal flaw in their general awareness allegations, namely that the AC fails to adequately allege that Defendants were aware of any supposed connections between BHL customers and Hamas at the time of relevant transactions. Plaintiffs argue they are not required to meet this standard because the AC alleges Defendants provided services directly to Hamas. (Opp. at 13). That argument fails because the only direct link Plaintiffs purport to draw between Defendants' exchange and Hamas is Plaintiffs' self-serving

---

attacks); *King* v. *Habib Bank Ltd.*, 2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023) (defendants affirmatively whitelisted terrorist organizations and representatives, and stripped wires to enable organizations' transactions to evade filters); *Zobay* v. *MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 319 (E.D.N.Y. 2023) (bank provided FTO with "embargoed technologies" and "technical aid").

8

description of their undisclosed (and therefore unverifiable) "blockchain analysis." (*See* AC ¶¶ 3, 209). And even if Plaintiffs' analysis did show "Hamas-linked" persons transacting on the BHL platform, this says nothing about whether Defendants *knew* those transactions were linked to Hamas at the time of the transactions.

### III. EIGHTEEN PLAINTIFFS LACK STANDING.

At least eighteen Plaintiffs lack standing because they are not U.S. nationals, or not the estates, survivors or heirs of U.S. nationals. (*See* Br. at 19-20). Plaintiffs respond that these 18 claimants are either U.S. citizens, "the functional equivalent of immediate family" of U.S. citizens, or "surviving family members of U.S. citizens." (Opp. at 18-19). As detailed in Appendix A, Plaintiffs' arguments fail because (1) two Plaintiffs are not survivors or heirs of any victims of the Attacks; (2) the ATA does not recognize standing for distant relatives; and (3) the remaining Plaintiffs are not U.S. nationals.

### IV. THE COURT LACKS PERSONAL JURISDICTION.

The Opposition's personal jurisdiction arguments fail.[6] First, Plaintiffs cannot invoke the New York long-arm statute because they cannot tie any of BHL's New York business to their claims. (Br. at 20-21). Plaintiffs rely on a highly attenuated link, alleging Defendants depended on liquidity gained from certain New York customers. (Opp. at 20-21). But no well-pleaded allegations support this, and such an expansive interpretation would eviscerate the requirement of a nexus "between the forum *and the underlying controversy*." *Licci ex rel. Licci* v. *Lebanese*

---

[6] Plaintiffs' request for jurisdictional discovery (Opp. at 22 n.7) should be rejected, because this Court's decision must be based on the sufficiency of the pleadings. *Erickson Prods., Inc.* v. *Atherton Tr.*, 2013 WL 1163346, at *5 (S.D.N.Y. Mar. 20, 2013).

9

*Canadian Bank, SAL*, 673 F.3d 50, 60 n.9 (2d Cir. 2012) (specific jurisdiction "depends on an affiliation between the forum and the underlying controversy").[7]

Nor can Plaintiffs rely on federal long-arm rules, since they have not properly served Defendants. (Br. at 21; Fed. R. Civ. P. 4(k)(2)). Plaintiffs' argument that Defendants waived service (Opp. at 21-22) is refuted by Plaintiffs' stipulation that Defendants "d[id] not concede that service has been effectuated within the Southern District of New York (or anywhere else)," and Plaintiffs' "agree[ment] not to argue that the waiver affects any of the Stipulating Defendants' other rights, defenses, or objections," including "defenses based upon lack of personal . . . jurisdiction" (ECF No. 12).[8] Rule 4(k)(2)—which Defendants explicitly cited and did not waive—also requires that personal jurisdiction comport with due process, which Plaintiffs have not shown.

## CONCLUSION

The Court should dismiss the AC with prejudice.

---

[7] *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 88 (S.D.N.Y. 2021) (Opp. at 21) does not help Plaintiffs. There, the defendant used a New York bank account to commit fraud. *Id.* No such New York instrumentality is alleged here.

[8] Plaintiffs' reliance on out-of-circuit authority to advance a novel interpretation of the so-ordered stipulation does not save their case. (*See* Opp. at 22).

Date: August 2, 2024                                   Respectfully submitted,

                                                  */s/ Samson A. Enzer*
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
Lauren A. Riddell
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited and Changpeng Zhao*

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph II-D of the Individual Practices of Judge John G. Koeltl, Defendants Binance Holdings Limited and Changpeng Zhao have complied with all of the formatting rules contained therein. The total number of words contained herein, exclusive of the cover page, certificate of compliance, table of contents, and table of authorities, is 2,795 words.

Date:   August 2, 2024

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
Lauren A. Riddell
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited and Changpeng Zhao*