# SEIDEN | LAW

August 13, 2024

**VIA ECF**
Hon. Barbara Moses
United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

**Re:** *Raanan et al. v. Binance Holdings Limited et al.*, 1:24-cv-00697-JGK-BCM (S.D.N.Y)

Dear Judge Moses:

We represent Plaintiffs in the above-referenced action against Defendants Binance Holdings Limited ("Binance") and Changpeng Zhao ("Zhao"; and together with Binance, "Defendants"). We write pursuant to the Court's August 8, 2024 Order (ECF 32) and in reply to Defendants' August 9, 2024 letter (ECF 33, "Def. Letter") that was in response to Plaintiffs' Letter Motion dated August 6, 2024 for a pre-motion conference as to Plaintiffs' potential motion for jurisdictional discovery (ECF 30, "Pl. Letter").[1]

## I. Plaintiffs' Letter Motion Is Timely

Defendants maintain that Plaintiffs' Letter is premature because the Court has not determined if the FAC sets forth a prima facie jurisdictional showing. Def. Letter at 1. Not so.

In the context of the ATA, courts routinely review motions to dismiss at the same time as motions for jurisdictional discovery. *See, e.g.*, *Henkin v. Charity*, 2023 WL 2734788, at *11 (E.D.N.Y. Mar. 31, 2023) (granting motion for jurisdictional discovery that was requested in connection with motion to dismiss); *Brown v. Nat'l Bank of Pakistan*, 2022 WL 1155905, at *2 (S.D.N.Y. Apr. 19, 2022) (same); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) (same); *Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 426 n.1 (S.D.N.Y. 2004) (declining to dismiss until jurisdictional discovery). Moreover, that Plaintiffs filed their Letter Motion during the pendency of Defendants' Motion to Dismiss serves to streamline the proceedings and keep this case moving at an appropriate pace. If the Court determines that the FAC does not make a prima facie jurisdictional showing (the FAC does; Pl. Letter at 1; *infra* at 2-3), the Court can also rule on whether Plaintiffs have made a sufficient start towards making this showing (they have; Pl. Letter at 2-3) such that jurisdictional discovery is warranted and can grant Plaintiffs leave either to file their Motion or to propound discovery.

---

[1] Capitalized terms not otherwise defined herein have the same meanings as ascribed to them in Plaintiffs' Letter, the FAC, and Plaintiffs' Memorandum of Law (ECF 24). References to "¶" are paragraphs of the FAC; references to "Pl. Br.," "Def. Br.," and "Reply Br." are to Plaintiffs' Memorandum of Law, Defendants' Memorandum of Law (ECF 19), and Defendants' Reply Memorandum of Law (ECF 28), respectively. All emphasis is added; all internal quotations and citations are omitted.

II.     **The FAC Establishes A Prima Facie Jurisdictional Showing**

Defendants assert that the FAC does not establish a prima facie jurisdictional showing as to either CPLR 302(a) or FRCP 4(k)(2). Def. Letter at 2-3. Defendants' assertions fail.

### A. The FAC Establishes Jurisdiction Pursuant To CPLR 302(a)

Defendants rehash their contention that the FAC purportedly does not make a CPLR 302(a) showing because it does not allege that Defendants' New York customers funded the Attacks or that Binance operated from New York. Def. Letter at 2; Def. Br. at 20-21. Not so.

Defendants' self-servingly restrictive interpretation of the requisite nexus between Defendants' New York activities and Plaintiffs' claims is unavailing, as CPLR 302(a) merely requires "***some articulable nexus*** between the business transacted and the cause of action sued upon." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). In other words, CPLR 302(a) merely requires "***a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former***[.]" *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012). Defendants' reliance on *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022) is unavailing because there the plaintiffs' claims arose out of defendants' *failure to carry out transactions in New York*. *See id*. at 121. Here, the FAC alleges that, for years, Defendants affirmatively directed New York activities, intentionally concealed those activities, and deliberately deceived regulators about those activities – including that Binance had U.S. and specifically New York users that transacted on the Binance platform that provided the liquidity Binance needed to operate, allowing Binance to serve as a crypto platform uniquely tailored for criminals and terrorists. ¶¶16, 68-69, 72, 180-231. Defendant Zhao admitted that Defendants were obligated to report their users' data in accordance with U.S. anti-terrorism laws. ¶221. These allegations plausibly set forth that a terrorist attack was the foreseeable consequence of Defendants' misconduct, demonstrating an articulable nexus between Defendants' New York activities and Plaintiffs' claims. *See In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 88 (S.D.N.Y. 2021) ("substantial relationship" between defendant's opening New York bank accounts containing U.S. dollar reserves and crypto manipulation claim because existence of reserves "was a critical component of the illicit scheme").

Defendants characterize the FAC's jurisdictional allegations as "vague and conclusory." Def. Letter at 3. But Defendants ignore that the FAC's allegations arise from the comprehensive investigations of numerous government regulators as to Defendants' operation of Binance, including that: (i) the CFTC concluded that Defendants' specific New York customers provided Binance with the liquidity it needed to function as a crypto platform (¶¶68-69); (ii) the SEC concluded that Defendants' New York business with a specific New York customer was critical for Binance, as it provided Binance with billions of dollars in liquidity in the form an unregulated but transactable cryptocurrency (¶¶72-73); and (iii) that the DOJ, FinCEN, OFAC, and the CFTC concluded that Defendants intentionally concealed Binance's activities from regulators, allowing Binance to operate as a platform usable for criminals and terrorists. ¶¶16, 68-69, 72, 180-231.[2]

---

[2] *NovelAire Techs., L.L.C. v. Munters AB* is inapposite here. *See* 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (plaintiffs' theory of jurisdiction was based on holding a parent company liable for its subsidiary's New York activities when parent company did not act in New York; plaintiffs; allegations were merely "speculative").

### B. The FAC Establishes Jurisdiction Pursuant To FRCP 4(k)2

Defendants ignore Plaintiffs' showing that 4(k)(2) jurisdiction is warranted. Pl. Letter at 1, 3. Their Letter ignores that the FAC establishes 4(k)(2)'s requirements. Pl. Letter at 1; Pl. Br. at 21. It ignores that Plaintiffs can assert 4(k)(2) as an alternative jurisdictional basis. Pl. Letter at 1; Pl. Br. at 22 (citing authorities). And it ignores that, by their contesting 4(k)(2) jurisdiction, this Court's precedent requires Defendants to affirmatively identify in what forum Defendants are subject to jurisdiction. Pl. Letter at 3 (citing authorities). Moreover, during an August 12, 2024 meet and confer, Defendants explicitly affirmed that they cannot be sued anywhere in the U.S.

Rather, Defendants maintain that 4(k)(2) jurisdiction is purportedly inappropriate because the FAC does not allege that Defendants had sufficient minimum contacts with the U.S. as a whole. Def. Letter at 3. Defendants' assertion fails for numerous reasons.

*First*, Defendants waived this argument. Defendants failed to timely raise it on their Motion to Dismiss. Pl. Letter at 1; Pl. Br. at 21. In response to Plaintiffs' demonstrating Defendants' waiver, Defendants, on Reply, inappropriately (and cursorily) maintained that 4(k)(2) would not comport with due process. Reply Br. at 10. Defendants' most recent assertion as to their purported non-waiver fails (Def. Letter at 3, n. 2), as their citation to their Opening Brief merely notes that 4(k)(2) must comply with due process. Defendants have never once timely argued that the Court's assertion of 4(k)(2) jurisdiction, as applied to the allegations of the FAC, would not comport with due process or that there are insufficient contacts with the U.S.

*Second*, the FAC alleges that Defendants had pervasive, deliberate contacts with the U.S. The CFTC concluded that, as of January 2020, twenty percent of Binance's customers were located in the U.S. ¶154. Binance's internal documents reveal that this amounted to more than 2.8 million U.S. users, that between August 2017 and October 2022 these U.S. users transacted trillions of dollars, and that these transactions generated over $1.6 billion in profit for Binance. ¶15. Given Binance's massive U.S. business, Binance was subject to the jurisdiction of U.S regulators and was required to comply with a wide range of U.S. regulation and disclosure mandates. ¶¶158-73. And Defendants schemed to avoid these requirements and the scrutiny of U.S. regulators by deliberately misleading U.S. regulators and U.S. courts about Binance's U.S. business. ¶¶174-92. Indeed, Defendants created a U.S.-facing entity, Binance.US, which Defendants deliberately and misleadingly held out as their official U.S. crypto exchange, to intentionally conceal the actual billion-dollar U.S. business Defendants were engaging in through the Binance platform. ¶174. As a result of Defendants' misconduct, Defendants entered into numerous settlements with U.S. regulators, allowing Defendants to intentionally avail themselves of the benefits of the U.S. judicial system. ¶¶232-44. Defendants' sprawling, intentional U.S. contacts demonstrate that 4(k)(2) jurisdiction comports with due process. *See RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 546 (S.D.N.Y. 2018) (purposefully seeking U.S. as marketplace satisfied minimum contacts); *Peterson v. Islamic Republic of Iran*, 2013 WL 1155576, at *15 (S.D.N.Y. Mar. 13, 2013) (under Second Circuit law, minimum contacts are found where a foreign entity "transact[s] business in the United States" or is "doing an act in the United States"); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) (bank had sufficient contacts with U.S. to warrant jurisdictional discovery where bank once had an office in the U.S, advertised in the U.S., and had initiated lawsuits in the U.S.).

**III.     Defendants' Remaining Contentions Are Meritless**

Defendants do not challenge core legal issues as to whether jurisdictional discovery should be granted. Defendants' Letter does not challenge the standard for determining whether discovery is appropriate. Pl. Letter at 2. It does not challenge that, at a minimum, Plaintiffs have made a sufficient start towards establishing jurisdiction under CPLR 302(a) and FRCP 4(k)(2). *Id.* at 2-3 (citing authorities). Instead, Defendants maintain that Plaintiffs have purportedly conceded the insufficiency of their prima facie showing. Def. Letter at 3. This is nonsense.

Plaintiffs' Letter expressly contradicts this. Pl. Letter at 1 ("While Plaintiffs have made their prima facie showing that jurisdiction exists over Defendants, Plaintiffs seek the relief requested in the Motion *only* if the Court finds that Plaintiffs must offer more details about Defendants' secret financial transactions to establish personal jurisdiction."); *id.* (establishing prima facie showing); Pl. Br. at 19-22 (same). Indeed, this Reply Letter is now the *third time* that Plaintiffs have set forth the sufficiency of their prima facie jurisdictional showing.

Defendants maintain that jurisdictional discovery should not be granted because Plaintiffs' potential Motion purportedly amounts to a fishing expedition. Def. Letter at 4. Defendants are wrong. Plaintiffs set forth the discrete categories of discovery that would be relevant for their Motion. Pl. Letter at 3. Moreover, and in connection to CPLR 302(a) and FRCP 4(k)(2), Defendants cannot credibly maintain that they do not know why these categories are relevant. Notwithstanding the strength of Plaintiffs' prima facie jurisdictional showing such that the provision of detailed future discovery may very well be unnecessary, Plaintiffs will appropriately focus any future discovery to accord with the Court's ruling on Defendants' Motion to Dismiss. *See Marsh & McLennan Agency LLC v. Williams*, 2023 WL 4534984, at *1 (S.D.N.Y. July 13, 2023) ("District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so, to what extent."). In the meantime, Defendants' purported concern of a supposed fishing expedition can be allayed by Defendants' designating where they can be sued.

Respectfully submitted,

 */s/ Jake Nachmani*
| | |
|---|---|
| **SEIDEN LAW LLP** | **PERLES LAW FIRM, P.C.** |
| Robert W. Seiden | Steven R. Perles |
| Amiad Kushner | Joshua K. Perles |
| Jake Nachmani | Edward B. Macallister |
| Jennifer Blecher | 816 Connecticut Avenue, NW |
| Dov Gold | 12th Floor |
| 322 Eighth Avenue, Suite 1200 | Washington, D.C. 20006 |
| New York, NY 10001 | (202) 955-9055 |
| (212) 523-0686 | |

*Attorneys for Plaintiffs*

cc: All counsel of record (via ECF)