# SEIDEN | LAW

> *Application to file a sur-reply letter is denied. The motion to dismiss should be decided on the basis of allegations in the current complaint, not on the basis of allegations in another complaint.*
>
> *So ordered.*
> *9/9/24   /s/ JGK*

September 6, 2024

**VIA ECF AND EMAIL**
Hon. John G. Koeltl
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Raanan et al. v. Binance Holdings Limited et al.*, 1:24-cv-00697-JGK-BCM (S.D.N.Y)

Dear Judge Koeltl:

Pursuant to Rules I.A and I.F of Your Honor's Individual Practices, we write on behalf of Plaintiffs to bring to the Court's attention the recently unsealed complaint filed by the Department of Justice in *United States of America v. Haniyeh et al.*, 24-MAG-438 (S.D.N.Y.) ("DOJ Complaint") and to seek the Court's leave to file the below sur-reply (*infra* Section II) as to how the DOJ Complaint supports the Court's denial of Defendants' Motion to Dismiss.[1]

## I.    The DOJ's Charges Against Hamas' Senior Leaders Are Tied To Cryptocurrency

On September 3, 2024, the DOJ unsealed the DOJ Complaint, making public that it had brought charges against various senior leaders of Hamas related to their central role in planning, supporting, and perpetrating the October 7 Attacks, including (i) conspiracy to finance terrorism; (ii) conspiracy to provide material support to a FTO resulting in death; (iii) conspiracy to provide material support for acts of terrorism resulting in death; (iv) conspiracy to violate IEEPA; (v) conspiracy to murder U.S. nationals; (vi) conspiracy to bomb a place of public use resulting in death; and (vii) conspiracy to use weapons of mass destruction resulting in death. Core to these charges are allegations related to Hamas' use of cryptocurrency, with the DOJ setting forth that:

> Hamas raises money to fund its terrorist activities … ***by soliciting and receiving cryptocurrency payments, advertising the ostensible anonymity of such transactions***. Since 2019, Hamas' military wing has used social media and other platforms to call for cryptocurrency contributions from supporters abroad, including in the United States, to Hamas-controlled virtual wallets, ***explicitly acknowledging that those payments would be used to fund Hamas' campaign of violence***. Through these mechanisms, Hamas has received tens of millions of dollars in cryptocurrency payments to fund its activities.

---

[1] Capitalized terms not defined herein have the same meanings as ascribed to them in Plaintiffs' First Amended Complaint (ECF 17, "FAC") and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 29, "Plaintiffs' Brief"). References to "¶"and "DOJ ¶" are to paragraphs of the FAC and the DOJ Complaint, respectively. References to "Pl. Br.," "Def. Br.," and "Reply Br." are to Plaintiffs' Brief, Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF 19), and Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss (ECF 28), respectively. All emphasis is added. A copy of the DOJ Complaint is filed contemporaneously herewith as "Exhibit 1."

# SEIDEN | LAW

DOJ ¶18(c). Indeed, "cryptocurrency" appears prominently in the DOJ Complaint's overview section and is mentioned 17 times throughout the document. Five of the document's 38 pages discuss the role of cryptocurrency in Hamas' efforts to fund its terrorist activities.

In connection with Hamas' use of crypto, the DOJ Complaint sets forth the following:

- *"Beginning in or about 2019, the al-Qassam Brigades issued a call on their social media page for Bitcoin donations to help fund Hamas's campaign of terror. These websites explained to supporters how to make Bitcoin donations anonymously and boasted that Bitcoin donations were untraceable and would be used for violent causes.* The al-Qassam Brigades have actively solicited cryptocurrency funding on their official websites." DOJ ¶27(a).

- "By July 2021, following Hamas's attacks on Israel earlier that year ... cryptocurrency wallets affiliated with a Hamas fundraising campaign seized by Israeli government authorities had received more than $7.7 million worth of contributions, and held a variety of cryptocurrencies, including Bitcoin, Tether, Ether, Tron, and Dogecoin. *One of the seized wallet addresses belonged to Buy Cash Money and Money Transfer Company ("Buy Cash"), a Gaza-based business that provides money transfer and virtual currency exchange services for a number of terrorist groups and their affiliates, including Hamas.*" DOJ ¶27(c).

- Prior to the Attacks, "an administrator of a Hamas-affiliated entity posted a cryptocurrency wallet address to a social media network seeking funding for 'brothers' and accompanied by a photograph of a terrorist fighter. *Over the period of 2019 to the present, this Hamas-affiliated entity, and its associates, raised millions of dollars from individuals around the world, including by receiving funds from individuals via transfers through a U.S.-based financial technology company.* Some of the individuals sent messages accompanying their funds. For example, in or about May 2023, one individual wrote the following message to accompany the funds sent to the Hamas-affiliated entity's associate: 'Oh Allah, grant our brothers in Gaza victory and grant them patience and strength!'" DOJ ¶27(d).

## II.   The DOJ's Crypto Allegations Support The Denial Of The Motion To Dismiss

On several fronts, the DOJ's cryptocurrency allegations accord with the FAC's, such that, in addition to Plaintiffs' arguments set forth in their Opposition Brief, the DOJ Complaint further supports the Court's denying Defendants' Motion to Dismiss. *First*, the DOJ Complaint explicitly ties Hamas' solicitations and use of cryptocurrency to Hamas' terroristic violence and the October 7 Attacks. DOJ ¶¶18(f), 27(c)-(d), (f). Whereas Defendants seek to minimize the significance of the assistance Defendants provided to Hamas and PIJ in terms of its effect on Hamas' ability to carry out the Attacks (Def. Br. at 14, 17-18), the DOJ's allegations provide additional credence

2

# SEIDEN | LAW

to the FAC's allegations of the causal link between the $60 million transacted by FTOs (and the $100 million transacted by FTOs and their affiliates) and the October 7 Attacks. *Compare* ¶¶193-98, 226-27 ("[L]eading up to the October 7 Terrorist Attacks, these Hamas-Affiliated wallets transferred a staggering amount of money on Binance – at least approximately $101 million.") *with* DOJ ¶¶18(c)-(e) ("Through these mechanisms, Hamas has received tens of millions of dollars in cryptocurrency payments to fund its activities ... Hamas has pursued its objectives through terrorist attacks and other acts of brutal violence ... On October 7, 2023, Hamas committed its most violent, large-scale terrorist attack to date ..."). Indeed, the DOJ's allegations that Hamas-affiliated individuals and entities promised to use crypto transactions to fund attacks (DOJ ¶¶26(a)(i)-(ii), 27(a)-(b), (d)-(e)) further support Plaintiffs' allegations that Defendants knew terrorists were using Binance to support their violent objectives. ¶¶182-92, 200-31.

*Second*, the DOJ Complaint specifically identifies BuyCash as a known Hamas affiliate *since no later than July 2021* and that BuyCash transacted millions of dollars in crypto on Hamas' behalf prior to the Attacks. DOJ ¶27(c). This accords with the FAC's allegations that Binance transacted with BuyCash *for more than two years after its affiliation with Hamas was made public*, supporting Defendants' awareness of their culpable conduct before the Attacks. ¶¶196, 207, 226 (in June 2021, Israel seized a BuyCash wallet used for Hamas fundraising).

*Third*, the DOJ Complaint specifically sets forth that Hamas alone (as opposed to Hamas and PIJ, collectively; and/or these FTOs and their affiliates, collectively) received tens of millions of dollars in crypto payments to fund its terroristic violence. DOJ ¶18(c). Whereas Defendants cast procedurally inapposite aspersions on the credibility of Plaintiffs' blockchain analysis (Def. Br. at 7, 9; Reply at 8-9), that Plaintiffs' and the DOJ's independent blockchain analyses converged on similar amounts and overlapping actors supports the fundamental plausibility and accuracy of both Plaintiffs' and the DOJ's analyses. ¶¶3, 194, 209; Pl. Br. at 6, 8, 12.

As the DOJ continues to investigate Hamas and its use of crypto, it is likely that the new information uncovered will provide further support for Plaintiffs' claims against Defendants. As to this proposed sur-reply, Defendants are not prejudiced, as the information set forth in the DOJ Complaint is new to all parties, and Defendants may respond to Plaintiffs' letter with their own.

Respectfully submitted,

*/s/ Jake Nachmani*
**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1201
New York, NY 10001
(212) 523-0686

**PERLES LAW FIRM, P.C.**
Steven R. Perles
Joshua K. Perles
Edward B. Macallister
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*

cc: All counsel of record (via ECF)