UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH RAANAN *et al.*, | Civil Action Case No. |
| Plaintiffs, | 24 Civ. 00697 (JGK) |
| - v. - | |
| BINANCE HOLDINGS LIMITED and CHANGPENG ZHAO, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR RECONSIDERATION OF
THE COURT'S FEBRUARY 25, 2025 ORDER**

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

BAKER & HOSTETLER LLP
Teresa Goody Guillén
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    RECONSIDERATION MOTION STANDARD. ............................................................. 2

    II.    THE ORDER OVERLOOKS FUNDAMENTAL ASPECTS OF *TWITTER*. .................... 2

        A.    The Order Overlooks *Twitter*'s Rigorous Intent Requirement. ..................................... 3

        B.    Plaintiffs Conceded that the AC Does Not Allege Defendants Intended to Further the Attack. ................................................................................................................. 5

    III.    THE COURT SHOULD RECONSIDER ITS GRANTING OF JURISDICTIONAL DISCOVERY AND DISMISS FOR LACK OF PERSONAL JURISDICTION. .......... 8

CONCLUSION ............................................................................................................................. 11

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bristol-Myers Squibb Co.* v. *Superior Ct. of California, San Francisco Cnty.*,
    582 U.S. 255 (2017)......................................................................................................9

*Coinbase, Inc.* v. *SEC*,
    126 F.4th 175 (3d Cir. 2025) .........................................................................................7

*Daventree Ltd.* v. *Republic of Azerbaijan*,
    349 F. Supp. 2d 736 (S.D.N.Y. 2004)............................................................................9

*Farsura* v. *QC Terme US Corp.*,
    21 Civ. 9030 (AT), 2022 WL 16838212 (S.D.N.Y. Nov. 8, 2022) ...............................2

*Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021)......................................................................................................9

*Langenberg* v. *Sofair*,
    No. 03 Civ. 8339 (KMK), 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) ...................9

*Lee* v. *Coughlin*,
    914 F. Supp. 1004 (S.D.N.Y. 1996)............................................................................12

*Long Side Ventures LLC* v. *Hempacco Co., Inc.*,
    22 Civ. 08152 (ALC), 2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023) .........................9

*Mones* v. *Com. Bank of Kuwait, S.A.K.*,
    204 F. App'x 988 (2d Cir. 2006) ................................................................................11

*NovelAire Techs., L.L.C.* v. *Munters AB*,
    No. 13 Civ. 472 (CM), 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) ......................11

*O'Sullivan* v. *Deutsche Bank AG*,
    No. 17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446 (S.D.N.Y. Mar. 28,
    2019) ............................................................................................................................7

*Reed Int'l, Inc.* v. *Afghanistan Int'l Bank*,
    657 F. Supp. 3d 287 (S.D.N.Y. 2023)...........................................................................9

*RSM Prod Corp.* v. *Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009)...........................................................................9

*Shrader* v. *CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)..................................................................................................2

*Siegel* v. *HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)..................................................................................................7

*Twitter* v. *Taamneh*,
    598 U.S. 471 (2023).................................................................................................. *passim*

*Tymoshenko* v. *Firtash*,
    No. 11 Civ. 2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)..............................10

*United States* v. *Ruiz-Patozano*,
    No. 20 Cr. 00686 (JGK), 2024 WL 1676163 (S.D.N.Y. Apr. 16, 2024)...................................2

*Zobay* v. *MTN Grp. Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...................................................................................3

**Statutes**

18 U.S.C. § 2333(d)(2) ........................................................................................…5, 6, 7

Defendants Binance Holdings Limited ("BHL") and Changpeng Zhao (together, "Defendants") respectfully submit this memorandum of law in support of their joint motion for reconsideration of portions of the Court's February 25, 2025 Order (ECF No. 53,"Order").

## PRELIMINARY STATEMENT[1]

Defendants respectfully submit that, in considering Count One of the Amended Complaint (the "AC"), the Order erred by overlooking critical aspects of the Supreme Court's decision in *Twitter* v. *Taamneh*, 598 U.S. 471 (2023), in particular (i) the lack of any allegation of a nexus between Defendants' alleged acts (or omissions) and the October 7 Attack (the "Attack"), and (ii) Plaintiffs' concession that the AC does not allege that Defendants intended to bring about ***any*** act of terrorism, which together are fatal to Count One.

Defendants also submit that the Court erred in granting jurisdictional discovery, and should have dismissed the AC because the Court found that Plaintiffs have not established personal jurisdiction. (Order at 11-13, 15). Accordingly, Defendants request that the Court reconsider the portions of the Order denying Defendants' motion to dismiss Count One, and granting jurisdictional discovery, and dismiss the AC.[2]

---

[1] Unless otherwise noted, emphasis is added and internal citations and quotations are omitted.

[2] The Second Circuit's decision in *Wildman* v. *Deutsche Bank Aktiengesellschaft*, No. 23-132 (2d Cir.) is currently pending and is expected to be the Circuit's first opportunity to substantively opine on *Twitter*'s impact. Because the Second Circuit's decision may provide much needed clarity to the issues described herein, Defendants reserve the right to seek further review, as appropriate, following the Second Circuit's decision in *Wildman*.

1

**ARGUMENT**

I.   **RECONSIDERATION MOTION STANDARD.**

"Under Rule 54 of the Federal Rules of Civil Procedure, the Court has the inherent power to reconsider any of its decisions prior to the entry of a final judgment adjudicating all claims at issue." *Farsura* v. *QC Terme US Corp.*, 21 Civ. 9030 (AT), 2022 WL 16838212, at *1 (S.D.N.Y. Nov. 8, 2022). Reconsideration is warranted where the movant identifies an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States* v. *Ruiz-Patozano*, No. 20 Cr. 00686 (JGK), 2024 WL 1676163, at *1 (S.D.N.Y. Apr. 16, 2024) (Koeltl, J.). In seeking reconsideration of an order, the moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." *Id.* Where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," a court may grant the motion. *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

II.  **THE ORDER OVERLOOKS FUNDAMENTAL ASPECTS OF *TWITTER*.**

Plaintiffs effectively concede there is no discernible nexus between Defendants' alleged acts (or omissions) and the Attack. (*See* ECF No. 24 at 10 (arguing that a "close nexus" between Defendants' conduct and the Attack is not required because Defendants were "systemic financial enablers of Hamas and PIJ")). As the Supreme Court made clear in *Twitter*, "because of the distance between [D]efendants' acts (or failures to act) and the [A]ttack, [P]laintiffs would need some other very good reason to think that [D]efendants were ***consciously trying*** to help or otherwise participate in the . . . [A]ttack." 598 U.S. at 500. Yet here, Plaintiffs explicitly conceded that there is **no** such "good reason" because, as they admitted during oral argument, "[t]he

2

complaint ***does not allege that the defendants intended to bring about the October 7 attacks. It does not allege that the defendants intended to bring about any act of terrorism***." (ECF No. 47 (Jan. 30, 2025 Oral Argument Transcript ("Tr.") at 35:17-20, attached hereto as Exhibit A)).

Accordingly, as in *Twitter*, given the lack of nexus between Defendants' alleged acts (or omissions) and the Attack, it is fatal to Count One that—as Plaintiffs concede—"none of [the AC's] allegations suggest that [D]efendants consciously and culpably associated [themselves] with the [A]ttack, participate[d] in it as something that they wishe[d] to bring about, or sought by [their] action to make it succeed." 598 U.S. at 490, 493.

### A. The Order Overlooks *Twitter*'s Rigorous Intent Requirement Where, As Here, There Is No Definable Nexus Alleged Between Defendants' Alleged Acts or Omissions and the Attack.

*Twitter* requires courts to "consider the attenuation or nexus between a defendant's assistance and the act of international terrorism. If the relationship between a defendant's assistance and the ultimate tortious act is attenuated, then plaintiffs need some other very good reason to think that defendants were ***consciously trying*** to help or otherwise participate in the [specific] attack." *Zobay* v. *MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 345 (E.D.N.Y. 2023) (quoting *Twitter*, 598 U.S. at 500). Under *Twitter*, the more remote the connection between the alleged assistance and the attack, the higher the pleading burden with respect to intent.

Accordingly, the starting point for the aiding and abetting analysis is the nexus between the defendant's conduct and the specific attack that injured the plaintiff. *See Twitter*, 598 U.S. at 497 ("[B]ecause they are trying to hold defendants liable for the Reina attack, plaintiffs must plausibly allege that defendants aided and abetted ISIS in carrying out ***that attack***"); *see also id.* at 506 ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in ***the tort at issue***. ***The focus must remain on assistance to the tort for***

3

*which plaintiffs seek to impose liability*."). The Supreme Court elaborated that providing substantial assistance to the terrorists' "activities in general" is not sufficient—"the question is whether defendants gave substantial assistance to [the foreign terrorist organization ('FTO') that carried out the attack] with respect to the [specific] attack. The focus thus must remain on the [specific] attack[.]" *Id.* at 503; *see also id.* at 495 ("[I]t is not enough . . . that a defendant have given substantial assistance to a transcendent enterprise separate from and floating above all the actionable wrongs that constitute it.").

Here, Plaintiffs come nowhere close to pleading a "definable nexus between the defendants' assistance and the attack." *Twitter*, 598 U.S. at 498. Rather, the AC alleges only that by allowing users and wallets Plaintiffs contend are associated with Hamas and PIJ onto the Binance platform, those FTOs were able to access funds that could foreseeably be used to commit terrorist attacks. (*See* AC ¶¶ 11, 253). But alleging that a defendant gave "assistance to [the terrorist group's] activities in general" is not enough. *Twitter*, 598 U.S. at 503.

Because Plaintiffs fail to allege a "definable nexus" between Defendants' acts or omissions and the Attack, *Twitter* imposes a more demanding intent requirement on the AC. *Id.* ("[F]ailure to allege any definable nexus between the defendants' assistance and [the specific] attack therefore—at minimum—drastically increases [plaintiffs'] burden to show that defendants somehow consciously and culpably assisted the attack."). In other words, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through *intentional aid that substantially furthered the tort*." *Id.* at 506.

4

### B. Plaintiffs Concede that the AC Does Not Allege Defendants Intended to Further the Attack.

Because the nexus alleged between Defendants' conduct and the Attack is at least as attenuated as it was in *Twitter*, Plaintiffs must plead a "very good reason to think that [D]efendants were ***consciously trying*** to help or otherwise participate in" the Attack. *Twitter*, 598 U.S. at 500. But Plaintiffs have not pled this, and cannot, given their concession that Defendants had no intent to bring about the Attacks nor ***any*** act of terrorism. (Tr. at 35:17-20). Accordingly, as in *Twitter*, the AC, by Plaintiffs' own account, fails to allege that Defendants "culpably associated themselves with" the attack or "participate[d] in it as something they ***wishe[d] to bring about***." 598 U.S. at 498.

At best then—and again by Plaintiffs' own account—the AC alleges that "when you're knowingly providing financial services to terrorists, you [can] be held liable for aiding and abetting." (Tr. at 35:21-23). The Order's conclusion that this was sufficient is precisely the conclusion of the Ninth Circuit that the Supreme Court rejected in *Twitter*:

> The Ninth Circuit framed the issue of substantial assistance as turning on ***defendants' assistance to ISIS' activities in general***. . . . But, as we explained above, ***the question is whether defendants gave substantial assistance to ISIS with respect to the Reina attack***. The focus thus must remain on the Reina attack; plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack therefore—at minimum—***drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack***.

598 U.S. at 503. For the same reasons the Supreme Court rejected the Ninth Circuit's analysis in *Twitter*, the Order should have rejected Plaintiffs' contention that "knowingly providing financial services to terrorists" (Tr. at 35:19-20) is sufficient to state a claim for aiding and abetting liability under the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d)(2).

5

Moreover, given the Defendants' lack of intent, their anti-money laundering ("AML") duties and alleged evasion of them (cited in the Order at 63-64) do not bring Plaintiffs any closer to stating a claim. This is because Plaintiffs' allegations of breach of duty, at best, could only show Defendants' breach of duty assisted "a transcendent enterprise separate from and floating above all the actionable wrongs that constitute it," which is plainly insufficient. 598 U.S. at 495.[3]

Although *Twitter* acknowledges that there could be certain situations where a defendant's aid to an FTO is so "systemic[ ] and pervasive[ ]" that it "could be said to aid and abet every single [FTO] attack," 598 U.S. at 501, that is not what Plaintiffs allege here, nor could it credibly be alleged. As in *Twitter*, there is no plausible allegation in the AC that "[D]efendants and [a terrorist group] formed a near-common enterprise," or "intentionally associated themselves with [Hamas's] operations or affirmatively gave aid that would assist each of [Hamas's] terrorist attacks." 598 U.S. at 502. To the contrary, Plaintiffs have explicitly conceded that the AC does not allege that Defendants "intended to bring about *any act of terrorism*." (Tr. at 35:22).

Nor is it accurate to say Defendants marketed a "dangerous ware" that could distinguish this case from the controlling holding of *Twitter*. Cryptocurrency transactions are not "a gun." (Tr. at 9:12-10:6). They involve fungible digital assets, which are not inherently dangerous. As alleged, cryptocurrency transactions are not qualitatively different from those in currencies like dollars, which are not inherently dangerous, even when noncompliant with financial institutions'

---

[3] By basing their JASTA claim on those same failures, Plaintiffs try to manufacture a private right of action to enforce those same AML laws—for which Defendants have already collectively paid billions in fines and penalties. (*See* AC ¶¶ 232-46).

6

AML duties. *See, e.g.*, *Coinbase, Inc.* v. *SEC*, 126 F.4th 175, 203 n.11 (3d Cir. 2025) (stating that "digital assets are a growing part of the financial sector and are emerging as an increasingly important form of online payment"); *Siegel* v. *HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (dismissing JASTA claim despite acknowledged AML failures); *O'Sullivan* v. *Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) (same).[4] Certainly, currency transactions generally available to BHL's over 100 million users are nothing like the "wares" the Supreme Court found in *Twitter* to have an "inherent capacity for harm." *See* 598 U.S. at 502 (citing *Direct Sales Co.* v. *U.S.*, 319 U.S. 703, 707, 711-12, 714-15 (1943) (registered morphine distributor could be liable as a coconspirator of an illicit operation to which it mailed morphine far in excess of normal amounts)).[5]

---

[4] During a recent oral argument in *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141, Justices of the Supreme Court expressed concerns about imposing expansive aiding and abetting liability on the sale of legitimate products—which in that case **were guns**—notwithstanding the fact that they are indisputably dangerous, in ways currency clearly is not. Oral Argument Tr. at 88:12–89:10, *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141 (Mar. 4, 2025), available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-1141_8m59.pdf.

[5] Nor did Defendants offer routine cryptocurrency transactions in an "unusual way." (Order at 66). The AC alleges only that Defendants offered routine, generally available services that were in no sense aimed at assisting Hamas or any other terrorist group. *See, e.g.*, ¶¶ 66, 215. Indeed, the FinCEN Consent Order explicitly states that while BHL filed no SARs, it "proactively

7

Accordingly, as in *Twitter*, it is insufficient to allege an intent to "assist[] [a terrorist group's] activities in general," which is, by Plaintiffs' own concession, the most the AC alleges. The Order did not consider this concession, nor the complete lack of an alleged nexus between the Defendants' omissions and the Attack, and accordingly Defendants submit that the Court should reconsider the Order and dismiss Plaintiffs' JASTA claim.

### III. THE COURT SHOULD RECONSIDER ITS GRANTING OF JURISDICTIONAL DISCOVERY AND DISMISS FOR LACK OF PERSONAL JURISDICTION.

The Order concluded that Plaintiffs failed to allege a *prima facie* basis for jurisdiction over Defendants. (Order at 10-13). But instead of dismissing the AC for lack of personal jurisdiction, the Court *sua sponte* granted jurisdictional discovery into "the character and extent of the connection, if any, between the alleged market-making activities of Binance's New York-based VIP customers and Binance's ability to provide financial services to Hamas and PIJ." (*Id*.) This ruling merits reconsideration.

Plaintiffs' sole surviving theory of personal jurisdiction is the conclusory and unsupported allegation that, "upon information and belief, Binance's transactions with certain VIP market maker customers based in New York provided necessary liquidity to the Binance platform" and that "[w]ithout this New York business . . . there would have been no viable Binance platform for Hamas and PIJ to use to finance their terrorist activities." (Order at 11).

---

cooperated with global law enforcement and blockchain vendors to combat terrorist financing," and "cooperated with Israeli law enforcement in numerous seizures related to the al-Qassam brigades." (ECF No. 20-2 at 46; *see also* Tr. at 21-22).

8

Setting aside that the allegation is made on information and belief, it could not—even if proven—establish specific jurisdiction, which covers only claims that "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The question of whether New York business engagements are necessary to Binance's general operation as an enterprise bypasses that inquiry entirely and would, if deemed conclusive, render all businesses subject to general jurisdiction any place where they conduct important business transactions, even in forums where they are not domiciled. *See Bristol-Myers Squibb Co.* v. *Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (rejecting this approach).

As the Court correctly held, contacts with the forum matter only if related to "the plaintiffs' claims." (Order at 12 and n.3). Jurisdictional discovery may be appropriate absent a *prima facie* jurisdictional showing, "[i]f a plaintiff has identified a genuine issue of jurisdictional fact." *Daventree Ltd.* v. *Republic of Azerbaijan*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004); *see also RSM Prod Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009) ("If the plaintiff has failed to establish a *prima facie* case for personal jurisdiction, jurisdictional discovery is generally not granted."); *Langenberg* v. *Sofair*, No. 03 Civ. 8339 (KMK), 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (collecting cases).

However, there must be facts that may exist to support jurisdiction and "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Reed Int'l, Inc.* v. *Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 297 (S.D.N.Y. 2023). A court is not obligated to subject a foreign corporation to jurisdictional discovery "where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Id.* at 299; *see also Long Side Ventures LLC* v. *Hempacco Co.*, 22 Civ. 08152 (ALC),

9

2023 WL 6386888, at *13 (S.D.N.Y. Sept. 29, 2023) ("In the Second Circuit, jurisdictional discovery is permitted where a plaintiff has made a sufficient start toward establishing personal jurisdiction, such that it appears there may be a colorable jurisdictional claim.") (cleaned up). Rather, the fact that Defendants are foreign "disfavors jurisdictional discovery." *Tymoshenko* v. *Firtash*, No. 11 Civ. 2794 (KMW), 2013 WL 1234943, at *7 (S.D.N.Y. Mar. 27, 2013).

As explained, Plaintiffs' claims require allegations (and ultimately proof) of substantial support for the "act of international terrorism" in question. *Twitter*, 598 U.S. at 495. At best, however, the discovery could show only forum-related contacts with a nexus to Defendants' historical business operations, but not with facts that would sustain jurisdiction (*i.e.*, a nexus to the Attack itself). (Order at 11).

Plaintiffs' theory of jurisdiction is also inconsistent with their own pleading. The AC alleges BHL has over 100 million customers worldwide, and that "between 2017 and 2023, [BHL] maintained over one million U.S. users" who accounted for only "**15 to 20 percent of [BHL's] transaction fees**." (AC ¶¶ 66, 157). Even assuming New York-based "VIP market makers" represented the entirety of those users and transactions, it is still not plausible that BHL's entire global exchange was so dependent on those users that it would have—as Plaintiffs suggest—collapsed entirely without them. *See NovelAire Techs., L.L.C.* v. *Munters AB*, No. 13 Civ. 472 (CM), 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (finding that "speculative assertions . . . based on broad statements" do not entitle the plaintiff to "conduct a fishing expedition by means of discovery on the issue of jurisdiction").

Having already concluded Plaintiffs have failed to make a *prima facie* showing of jurisdiction over the Defendants, the Court should reconsider its grant of jurisdictional discovery, and instead dismiss the AC for lack of personal jurisdiction, or at a minimum, permit additional

10

briefing on whether jurisdictional discovery is appropriate. *See Mones* v. *Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989-90 (2d Cir. 2006) (personal jurisdiction is an "essential element" of the jurisdiction of a court, "without which the court is powerless to proceed to an adjudication."). Plaintiffs could have sought, but did not seek, jurisdictional discovery during the motion-to-dismiss phase. Indeed, in their opposition papers, Plaintiffs did not make any request for this type of discovery. It was only *after* that motion was fully briefed that Plaintiffs made this request via a letter and asked for a "pre-motion conference to set forth the scope of their anticipated discovery." (ECF No. 30). That request was ultimately denied (ECF No. 35) so the parties never had the opportunity to file fulsome briefing on this issue in connection with this motion. Under these circumstances, reconsideration is appropriate. *See Lee* v. *Coughlin*, 914 F. Supp. 1004, 1005 (S.D.N.Y. 1996) (Sotomayor, J.) (granting reconsideration on issue the parties "did not have an opportunity to address" in prior motion).

## CONCLUSION

Defendants respectfully submit that the Court should reconsider its Order and dismiss the AC in its entirety.

Date: March 11, 2025
New York, NY

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

/s/ Teresa Goody Guillén
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

**CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 6.3 and Paragraph III.D of the Individual Practices of Judge John G. Koeltl, Defendant Binance Holdings Limited has complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 3,194 words.

Date: March 11, 2025

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

/s/ Teresa Goody Guillén
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*