## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH RAANAN *et al.*,<br><br>                                     Plaintiffs,<br><br>        - v. -<br><br>BINANCE HOLDINGS LIMITED and<br>CHANGPENG ZHAO,<br><br><br>                                     Defendants. | Civil Action Case No.<br><br>24 Civ. 00697 (JGK)<br><br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO CERTIFY THE COURT'S FEBRUARY 25, 2025 ORDER FOR INTERLOCUTORY APPEAL

**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*


**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 2

INTERLOCUTORY APPEAL STANDARD ....................................................................... 4

ARGUMENT ........................................................................................................................ 5

    I.    THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL ITS DENIAL OF DEFENDANTS' MOTION TO DISMISS COUNT ONE ......................................... 5

      A.    Whether a plaintiff can state an aiding and abetting claim under JASTA despite the lack of a definable nexus and any intent by defendants to further terrorism is a pure, controlling question of law. ............................................................................................ 6

      B.    There is, at a bare minimum, substantial ground for difference of opinion concerning whether a lack of a definable nexus, and lack of intent to further acts of terrorism, must result in dismissal of an aiding and abetting claim under JASTA. ................................. 8

      C.    Certifying the Order for immediate appeal could—and likely would—materially advance the termination of this litigation. .................................................................. 14

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atchley* v. *AstraZeneca UK Ltd. et al.*,
   No. 20-7077 (D.C. Cir..) ...............................................................................................7

*Capitol Records LLC* v. *Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013) .........................................................................14

*Coinbase, Inc*. v. *SEC*,
   126 F.4th 175 (3d Cir. 2025) ......................................................................................12

*Direct Sales Co.* v. *U.S.*,
   319 U.S. 703 (1943) ...................................................................................................12

*Dupree* v. *Younger*,
   598 U.S. 729 (2023) .....................................................................................................6

*Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*,
   821 F.3d 265 (S.D.N.Y. 2015) .....................................................................................8

*Honickman* v. *BLOM Bank SAL*,
   6 F.4th 487 (2d Cir. 2021) ...........................................................................................9

*Islam* v. *Lyft, Inc.*,
   2021 WL 2651653 (S.D.N.Y. June 28, 2021) ............................................................14

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021)..........................................................................................9

*Klinghoffer* v. *S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)........................................................................................4, 7

*Koehler* v. *Bank of Berm. Ltd*.,
   101 F.3d 863 (2d Cir. 1996)..........................................................................................4

*Nye & Nissen* v. *U.S.*,
   336 U.S. 613 (1949).......................................................................................................5

*O'Sullivan* v. *Deutsche Bank AG*,
   2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ...........................................................12

*SEC* v. *Coinbase, Inc.*,
   2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) ............................................................ *passim*

ii

*SEC* v. *Rio Tinto PLC*,
    2021 WL 1893165 (S.D.N.Y. May 11, 2021) ...................................................8, 14

*Siegel* v. *HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)..................................................................................12

*Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*,
    No. 23-1141 (Mar. 4, 2025).............................................................................12, 13

*Twitter* v. *Taamneh*,
    598 U.S. 471 (2023)............................................................................... *passim*

*Wang* v. *Hearst Corp.*,
    2013 WL 3326650 (S.D.N.Y. June 27, 2013) ........................................................7

*Wausau Bus. Ins. Co.* v. *Turner Constr. Co.*,
    151 F. Supp. 2d 488 (S.D.N.Y. 2001).....................................................................4

*Weber* v. *U.S.*,
    484 F.3d 154 (2d Cir. 2007)...................................................................................4

*Wildman* v. *Deutsche Bank Aktiengesellschaft*,
    No. 23-132 (2d Cir.)...............................................................................................7

*Zobay* v. *MTN Group Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ..................................................................10

## Statutes

18 U.S.C. § 2333(d) ..............................................................................................1, 6

28 U.S.C. § 1292(b) ....................................................................................1, 4, 5, 14

## Other Authorities

31 C.F.R. § 5312(a)(2)...............................................................................................11

Defendants Binance Holdings Limited ("BHL") and Changpeng Zhao (together, "Defendants") respectfully submit this memorandum of law in support of their motion under 28 U.S.C. § 1292(b) to certify for interlocutory appeal the portion of the Court's February 25, 2025 Memorandum Opinion and Order (ECF No. 53, the "Order"), that denied Defendants' motion to dismiss Plaintiffs' aiding and abetting claim under the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 144-222, 130 Stat. 852 (2016) (codified at 18 U.S.C. § 2333(d)), asserted in Count One of the Amended Complaint (ECF No. 17, "AC").

## PRELIMINARY STATEMENT

In its Order, the Court dismissed the AC's primary liability claims and the claims of approximately one-third of the Plaintiffs for lack of standing but allowed the claim for aiding and abetting an act of international terrorism under JASTA to proceed against a global, generally available cryptocurrency exchange and its former CEO. Defendants now move to certify the Court's Order for interlocutory appeal.[1]

---

[1] Defendants have also moved for reconsideration of the February 25 Order. (*See* ECF No. 58 ("MTR Br.")). As set out in that brief, Defendants respectfully submit that the Order erred by overlooking critical aspects of *Twitter* v. *Taamneh*, 598 U.S. 471 (2023)—in particular by failing to address (i) the lack of any nexus between Defendants' alleged assistance and the October 7, 2023 attack that injured Plaintiffs, and (ii) Plaintiffs' concession that Defendants did not intend to bring about any act of terrorism. Defendants maintain that *Twitter*, on its face, requires the dismissal of Plaintiffs' JASTA claim. In the alternative, this Court should, for the reasons described herein, certify the Order for review by the Second Circuit.

As set forth more fully below, the question for interlocutory appeal presented by the Court's Order is: Whether Plaintiffs' allegations are insufficient to state a claim for aiding and abetting under JASTA and the United States Supreme Court's holding in *Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 495-506 (2023) where, as here, Plaintiffs have not alleged a "definable nexus" between Defendants' alleged acts or omissions and the terrorist attack that injured Plaintiffs, and have conceded that they do not allege that Defendants intended to bring about the attack that injured Plaintiffs, nor any act of terrorism.

As discussed below, the Order's denial of Defendants' motion to dismiss Count One meets the standard for interlocutory appeal, and the Second Circuit should be given the opportunity to immediately rule on the question presented, to the extent that this Court declines to reconsider its Order as requested by Defendants in their recently filed motion for reconsideration (ECF No. 58).

## BACKGROUND

This case concerns the abhorrent attack of October 7, 2023 (the "Attack"), which Defendants unequivocally condemn in every respect. The perpetrators of the Attack—Hamas and Palestine Islamic Jihad ("PIJ")—are not before the Court. Instead, Plaintiffs have sought to hold a global, generally available cryptocurrency exchange and its former CEO liable for aiding and abetting those foreign terrorist organizations ("FTOs") in committing the Attack. By failing to stop users and wallets Plaintiffs contend are associated with Hamas and PIJ from transacting on the Binance exchange, Plaintiffs allege that those FTOs were able to access funds that could foreseeably be used to commit terrorist attacks, including the October 7 Attack. (*See* AC ¶¶ 11, 253).

Defendants moved to dismiss the AC for (among other reasons) failure to state an aiding and abetting claim under JASTA and the Supreme Court's holding in *Twitter*. (*See* ECF No. 19).

In their opposition brief, Plaintiffs effectively conceded that they have alleged no discernible nexus between Defendants' alleged acts (or omissions) and the Attack. (*See* ECF No. 24 at 10 (arguing that a "close nexus" between Defendants' conduct and the Attack is not required because Defendants were "systemic financial enablers of Hamas and PIJ")). Nor is any such nexus alleged in the AC. And at oral argument on the motion to dismiss, Plaintiffs further conceded that the AC does not allege that Defendants intended to further any act of terrorism:

> The complaint ***does not allege that the defendants intended to bring about the October 7 attacks. It does not allege that the defendants intended to bring about any act of terrorism***. The allegation is, as your Honor correctly pointed out, when you're knowingly providing financial services to terrorists, you can't [*sic*, likely "can"] be held liable for aiding and abetting.

(Enzer Decl. Ex. A (Jan. 30, 2025 Oral Argument Transcript ("Tr.")) at 35:17-20 (emphasis added)).

In its Order, the Court denied Defendants' motion to dismiss Count One of the Amended Complaint, finding that Plaintiffs had sufficiently stated a JASTA aiding and abetting claim. (Order at 53-70). The Court noted that "a close nexus between the defendants' alleged assistance and the attacks is lacking" (*id.* at 70), but did not acknowledge or otherwise discuss the consequent significance of Plaintiffs' concession that Defendants did not intend to bring about any act of terrorism. (*See generally id.* at 53-70).

As discussed below, this holding overlooks and conflicts with fundamental aspects of *Twitter*, in particular by failing to address (i) the lack of any allegation of a "definable nexus" between Defendants' alleged acts (or omissions) and the Attack, which imposes a higher burden on Plaintiffs to "show culpable participation through intentional aid that substantially furthered the [Attack]," 598 U.S. at 506; and (ii) Plaintiffs' concession that the AC does not allege that

3

Defendants intended to bring about the Attack, nor any act of terrorism, which together are fatal to Plaintiffs' JASTA claim under *Twitter*.

Defendants moved for reconsideration of the Court's Order (*see* ECF Nos. 57-59) and now move in the alternative to certify the following question for interlocutory review:

> <u>Question presented</u>: Whether Plaintiffs' allegations are insufficient to state a claim for aiding and abetting under JASTA and the United States Supreme Court's holding in *Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 495-506 (2023) where, as here, Plaintiffs have not alleged a "definable nexus" between Defendants' alleged acts or omissions and the terrorist attack that injured Plaintiffs, and have conceded that they do not allege that Defendants intended to bring about the attack that injured Plaintiffs, nor any act of terrorism.

## **INTERLOCUTORY APPEAL STANDARD**

Although appeals in federal court are ordinarily reserved for final judgment, *Koehler* v. *Bank of Berm. Ltd*., 101 F.3d 863, 865 (2d Cir. 1996), a district court may certify an order for interlocutory appeal where it finds that "such order [i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b); *see Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 23-25 (2d Cir. 1990). Among the purposes of Section 1292(b) is to "avoid protracted litigation" and "assure the prompt resolution of knotty legal problems." *Weber* v. *U.S.*, 484 F.3d 154, 159 (2d Cir. 2007).

Section 1292(b) is strictly construed, *Wausau Bus. Ins. Co.* v. *Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001), but "[w]hen a ruling satisfies [the Section 1292(b)] criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *See SEC* v. *Coinbase, Inc.*, 2025 WL 40782, at *5 (S.D.N.Y. Jan. 7, 2025) (citations omitted, cleaned up).

<u>**ARGUMENT**</u>

**I.  THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL ITS DENIAL OF DEFENDANTS' MOTION TO DISMISS COUNT ONE.**

The Order's denial of Defendants' motion to dismiss Count One satisfies all of the criteria for certification of an interlocutory appeal under Section 1292(b).  In analyzing the standard required to state a JASTA aiding and abetting claim, the Supreme Court held in *Twitter* that where there is "distance between [the] defendants' acts (or failures to act) and the . . . attack [that injured the plaintiffs], plaintiffs would need some other very good reason to think that defendants were ***consciously trying*** to help or otherwise 'participate in' the . . . attack."  598 U.S. at 500 (emphasis added).  Ultimately, the Supreme Court confirmed that where a plaintiff fails to allege a "definable nexus" between the defendant's conduct and the attack that injured the plaintiff, to plead an aiding and abetting claim under JASTA, the plaintiff must plausibly allege that the defendant consciously and "culpably associate[d themselves] with the [relevant] attack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed."  598 U.S. at 498 (quotation marks omitted; second alteration added) (quoting *Nye & Nissen* v. *U.S.*, 336 U.S. 613, 619 (1949)).  But here, despite the lack of any definable nexus between Defendants' acts or omissions and the Attack, the AC—as Plaintiffs have explicitly conceded—does not allege that Defendants "wished to bring about" the Attack, nor any terrorist attack.

Accordingly, the Supreme Court's clear holding in *Twitter* requires dismissal of Count One.  Yet, the Order relied on other authorities to conclude that Plaintiffs had adequately stated a JASTA claim, even though (i) Plaintiffs have not alleged a "definable nexus" between Defendants' alleged acts or omissions and the Attack that injured the Plaintiffs, and (ii) Plaintiffs concede that they do not allege that Defendants intended to bring about the Attack that injured Plaintiffs, nor any act of terrorism.  Because this legal error would otherwise prolong the litigation through

5

discovery, summary judgment motions, and trial before it is corrected, an interlocutory appeal should be certified.

> **A.**  **Whether a plaintiff can state an aiding and abetting claim under JASTA despite the lack of a definable nexus and any intent by defendants to further terrorism is a pure, controlling question of law.**

The question presented for appeal is controlling for three interrelated reasons:

<u>First</u>, whether a plaintiff can state an aiding and abetting claim under JASTA where the plaintiff alleged neither (i) a definable nexus between the defendant's conduct and the attack that injured the plaintiffs, nor (ii) that the defendants intended to further that attack or any act of terrorism, is the sort of "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Coinbase*, 2025 WL 40782, at *6; *see also Dupree* v. *Younger*, 598 U.S. 729, 735 (2023) ("pure[] legal issues" are those that "can be resolved without reference to any disputed facts"). In ruling on the motion to dismiss, the Court (as it must) accepted the AC's allegations as true and did not consider a factual record beyond the AC in interpreting the meaning of "knowingly providing substantial assistance." 18 U.S.C. § 2333(d)(2)(d). Accordingly, no review of the record beyond the AC and controlling legal authority is required to resolve the appeal.

Nor are any facts in dispute. The Order found that a "close nexus" between Defendants' alleged support and the Attack that injured Plaintiffs "is lacking" (Order at 70); and Plaintiffs concede that Defendants did not intend to support any act of terrorism, let alone the Attack giving rise to Plaintiffs' injuries. (Tr. at 35:17-20). Thus, the question presented—whether a plaintiff can state a claim based on these allegations—is a purely legal question, ripe for immediate review by the Second Circuit, because it "would require only 'a limited universe of familiar legal texts'

to answer what is, at bottom, a matter of statutory interpretation." *Coinbase*, 2025 WL 40782, at *7 (citation omitted).

Second, the question presented is controlling because reversal on this basis "would terminate the action." *Klinghoffer*, 921 F. 2d at 24. The Order dismissed Counts Two and Three of the AC (both of which asserted primary liability claims under the ATA and do not implicate *Twitter*), leaving only Count One (Plaintiffs' JASTA claim). Accordingly, if the Court of Appeals correctly applies the controlling holding of *Twitter* and dismisses the aiding and abetting claim, it would terminate this action in its entirety.

Finally, the question presented is controlling in the broader sense because Second Circuit precedent addressing the JASTA pleading requirements under *Twitter* would have "value for a large number of cases." *Coinbase*, 2025 WL 40782, at *6. The Supreme Court decided *Twitter* on May 18, 2023. There is no Second Circuit case substantively applying *Twitter* in the JASTA context.[2] There are at least a dozen JASTA actions currently pending in district courts within the Second Circuit, many, if not all of which would benefit from a Second Circuit decision applying *Twitter's* standard. *See Klinghoffer*, 921 F.2d at 24 ("[T]he impact that an appeal will have on other cases is a factor that [courts] may take into account[.]"); *see also, e.g.*, *Wang* v. *Hearst Corp.*, 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013) (certifying appeal where a "decision on the[]

---

[2] Defendants are aware of two relevant pending appeals nationwide that involve *Twitter*, but there is no indication on when decisions might be issued. *Atchley* v. *AstraZeneca UK Ltd. et al.*, No. 20-7077 (D.C. Cir..); *Wildman* v. *Deutsche Bank Aktiengesellschaft*, No. 23-132 (2d Cir.). Moreover, although the *Wildman* appeal discusses *Twitter*, briefing in that appeal was already underway when *Twitter* was issued.

questions will significantly affect the conduct of other lawsuits now pending in the district courts"). There would therefore be enormous value in "[r]eceiving authoritative guidance from the Second Circuit [that] will help resolve [similar] actions quickly and consistently." *SEC* v. *Rio Tinto PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021) (quotation marks omitted; second alteration added) (quoting *Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, 821 F. 3d 265, 266 (S.D.N.Y. 2015)).

**B.    There is, at a bare minimum, substantial ground for difference of opinion concerning whether a lack of a definable nexus, and lack of intent to further acts of terrorism, must result in dismissal of an aiding and abetting claim under JASTA.**

While Defendants contend that the Order clearly erred in its application of *Twitter* to Plaintiffs' JASTA claim, at a bare minimum, there is substantial ground for difference of opinion on this Court's holding with respect to Count One.  Substantial ground for difference of opinion on an issue exists when "[i] there is conflicting authority on the issue, or [ii] the issue is particularly difficult and of first impression for the Second Circuit."  *Coinbase*, 2025 WL 40782, at *9 (quotation marks omitted; citation omitted).  While Defendants' position is that *Twitter* itself clearly and unambiguously requires dismissal of Count One, even the Order, in sustaining Count One, effectively acknowledged that it was a close question.  (Order at 61 ("Whether the Amended Complaint sufficiently alleges knowing and substantial assistance is a closer question.")).

As noted, *Twitter* was decided in May 2023, and it heightened the standard required to plead the "knowing and substantial assistance" element of a JASTA aiding and abetting claim, while reaffirming that the analysis of the "general awareness" element is separate and distinct from the conceptual core of "knowing and substantial assistance."  Before *Twitter*, the Second Circuit analyzed JASTA aiding and abetting claims in a manner that understated the significance of the defendant's intent to further a specific attack and conflated the analyses of "general awareness" and "knowing and substantial assistance."  *See Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d

8

842 (2d Cir. 2021) (finding irrelevant whether defendant was alleged to have "intentionally supported" FTO "in perpetrating the rocket attacks" at issue); *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021) (allegations of "knowing and substantial assistance to the actual injury-causing act . . . [are] unnecessary[.]").

Those cases, however, have been (at least) substantially undermined, if not implicitly overruled by *Twitter*, which confirmed the importance of pleading the defendant's specific intent to further the attack that injured the plaintiffs, especially where plaintiffs have failed to allege a definable nexus between the defendant's conduct and the attack. Under *Twitter*, the starting point for the aiding and abetting analysis is the nexus, if any, between the defendant's conduct and the specific attack that injured the plaintiffs. *See Twitter*, 598 U.S. at 497 ("[B]ecause they are trying to hold defendants liable for the Reina attack, plaintiffs must plausibly allege that defendants aided and abetted ISIS in carrying out ***that attack***") (emphasis added); *see also id.* at 506 ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in ***the tort at issue***. ***The focus must remain on assistance to the tort for which plaintiffs seek to impose liability***.") (emphasis added). As the Supreme Court explained in *Twitter*, providing substantial assistance to the terrorists' "activities in general" is not sufficient—"the question is whether defendants gave substantial assistance to [the FTO that carried out the attack] with respect to the [specific] attack. The focus thus must remain on the [specific] attack[.]" *Id.* at 503; *see also id.* at 495 ("[I]t is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it.").

Where such a nexus is lacking, *Twitter* imposes a more demanding intent requirement. *Id.* at 503 ("[F]ailure to allege any definable nexus between the defendants' assistance and [the

specific] attack therefore—at minimum—drastically increases [plaintiffs'] burden to show that defendants somehow consciously and culpably assisted the attack.").  In other words, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through ***intentional aid that substantially furthered the tort***."  *Id.* at 506 (emphasis added).  As one district court explained it: "If the relationship between a defendant's assistance and the ultimate tortious act is attenuated, then plaintiffs 'need some other very good reason to think that defendants were consciously trying to help or otherwise 'participate in' the [specific] attack.'" *Zobay* v. *MTN Group Ltd.*, 695 F. Supp. 3d 301, 345 (E.D.N.Y. 2023) (quoting *Twitter*, 598 U.S. at 500 (alteration in original)).

And where, as in this case and *Twitter*, there is no "definable nexus" between Defendants' acts or omissions and the attack, the *Twitter* Court held that a JASTA claim is insufficient where Plaintiffs' allegations do not suggest that Defendants consciously and "culpably associate[d themselves] with the [A]ttack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed."  598 U.S. at 498 (quotation marks omitted; second alteration added).  That is exactly what Plaintiffs concede about the AC:  It "***does not allege that the defendants intended to bring about the October 7 attacks.  It does not*** [even] ***allege that the defendants intended to bring about any act of terrorism.***"  (Tr. at 35:17-20 (emphasis added)).

While *Twitter* acknowledged that there may be extraordinary circumstances in which this holding may not apply, those circumstances exist only where a "defendant[] so systemically and pervasively assisted" the terrorist group that it can "be said to aid and abet every single . . . attack." 598 U.S. at 501.  As the Supreme Court noted, such a finding is reserved for circumstances where "aiding-and-abetting liability begins to blur with conspiracy liability," and where "a defendant has so consciously 'participate[d] in' a series of tortious acts in order to 'make [each one] succeed.'"

*Id.* at 496 (citations omitted); *see id.* at 501-02 (no liability where "Plaintiffs do not claim that defendants intentionally associated themselves with [the FTO's] operations or affirmatively gave aid that would assist each of [the FTO's] terrorist acts" or otherwise "formed a near-common enterprise" with the FTO").   Such allegations are not plausible where, as here (i) Plaintiffs have not alleged a "definable nexus" between Defendants' alleged acts or omissions and the Attack that injured the Plaintiffs, nor ***any*** terrorist attack, and (ii) Plaintiffs concede that they do not allege that Defendants intended to bring about the Attack that injured Plaintiffs, nor ***any*** act of terrorism.   Nor can there be a plausible inference of "systemic and pervasive" assistance to an FTO where, as Plaintiffs do not dispute, Defendants provided the same routine services to 100 million users; and where Defendants "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing," and "cooperated with Israeli law enforcement in numerous seizures related to the al-Qassam brigades." (ECF No. 20-2 (FinCEN Consent Order) at 46; *see also* Tr. at 21-22); *see Twitter*, 598 U.S. at 498 ("Plaintiffs never allege that, after defendants established their platforms, they gave ISIS any special treatment or words of encouragement."); *id* at 503 ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts.").

Nor does the fact that BHL had anti-money laundering ("AML") duties, like any financial institution,[3] support the Order's conclusion that Count One states a JASTA claim.   The *Twitter* Court noted that "even if there were such a duty . . . , it would not transform defendants' distant inaction into knowing and substantial assistance that could establish aiding and abetting the

---

[3] The term "financial institution" as used herein refers to the defined term in 31 C.F.R. § 5312(a)(2).

[specific] attack" at issue. 598 U.S. at 501. Moreover, Plaintiffs' allegations of breach of duty, at best, could only show Defendants' breach assisted "a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it[,]" which *Twitter* explicitly held is insufficient. 598 U.S. at 495.

Nor did Defendants market a "dangerous ware," or offer its services in an "unusual way," that could distinguish this case from the controlling holding of *Twitter*. *See id.* at 502. Cryptocurrency transactions are not "a gun." (Tr. at 9:12-10:6). They involve fungible digital assets, which are in no sense inherently dangerous, and BHL's exchange—by the AC's own account—offered only routine services to over 100 million users worldwide. (AC ¶ 66). BHL's services are not qualitatively different from the services offered by numerous other types of financial institutions, which are not inherently dangerous nor unusual, even when coupled with the failure to comply with their AML duties. *See, e.g.*, *Coinbase, Inc.* v. *SEC*, 126 F.4th 175, 203 n.11 (3d Cir. 2025) (stating that "digital assets are a growing part of the financial sector and are emerging as an increasingly important form of online payment"); *Siegel* v. *HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (dismissing JASTA claim despite acknowledged AML failures); *O'Sullivan* v. *Deutsche Bank AG*, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) (same); *compare id. with Twitter,* 598 U.S. at 502 (citing *Direct Sales Co.* v. *U.S.*, 319 U.S. 703, 707, 711-12, 714-15 (1943) (registered morphine distributor could be liable as a coconspirator of an illicit operation to which it mailed morphine far in excess of normal amounts)).[4]

---

[4] During a recent oral argument in *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141, Justices of the Supreme Court expressed concerns about imposing expansive aiding and abetting liability on the sale of legitimate products—which in that case ***were***

Ultimately, where, as here, plausible allegations of nexus and intent are indisputably lacking, the holding of *Twitter* forecloses any conclusion that defendants "culpably associate[d themselves] with the [A]ttack" or "participat[ed] in it as something that [they] ***wish[ed] to bring about***[.]"  598 U.S. at 498 (emphasis added; quotation marks omitted; second alteration added). Given the lack of nexus and intent here, the AC alleges, at most, that "when you're knowingly providing financial services to terrorists, you [can] be held liable for aiding and abetting."  (Tr. 35:21-23).  The Order's conclusion that this was sufficient is precisely what the Supreme Court rejected in *Twitter*:

> The Ninth Circuit framed the issue of substantial assistance as turning on ***defendants' assistance to ISIS' activities in general***. . . .  But, as we explained above, ***the question is whether defendants gave substantial assistance to ISIS with respect to the Reina attack***.  The focus thus must remain on the Reina attack; plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack therefore—at minimum—***drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack***.

598 U.S. at 503 (emphasis added).  For the same reasons the Ninth Circuit erred in *Twitter*, the Order erred in sustaining Plaintiffs' theory that "knowingly providing financial services to terrorists" (Tr. 35:19-20) is sufficient to state a claim for aiding and abetting liability under JASTA.

Regardless, because there is, at a minimum, substantial ground for difference of opinion on this issue, Defendants respectfully submit that the Second Circuit should immediately have the

---

***guns***—notwithstanding the fact that they are indisputably dangerous, in ways currency clearly is not.  *See* Oral Argument Tr. at 88:12-89:10, *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141 (Mar. 4, 2025), available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-1141_8m59.pdf.

opportunity to rule on whether it is possible to state a JASTA aiding and abetting claim under the circumstances presented here.

### C.    Certifying the Order for immediate appeal could—and likely would—materially advance the termination of this litigation.

Finally, certification of the Order is warranted because immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "[I]n practice," the analysis on this prong "is closely connected to the first factor," *Capitol Records LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quotation and citation omitted), and the focus is on the "institutional efficiency of both the district court and the appellate court."  *Rio Tinto*, 2021 WL 1893165, at *2; *see Islam* v. *Lyft, Inc.*, 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021) (review favored where the "system-wide costs and benefits of allowing the appeal, including the impact that an appeal will have on other cases," warrant prompt resolution).[5]  Here, unless the Order's refusal to dismiss Count One is presented to the Court of Appeals now, it will not be presented before the Parties have engaged in protracted discovery, and the Parties and Court have been through summary judgment motion practice and a lengthy trial.  On the other hand, if an

---

[5] Defendants are not moving for a stay pending appeal because Plaintiffs have agreed that merits discovery should not go forward at this time.  (*See* ECF No. 56).  And although jurisdictional discovery is proceeding (*see id.*), Defendants' Motion for Reconsideration already addresses why the case should have been dismissed and jurisdictional discovery denied.  (*See* MTR Br. at 8-11).  Nevertheless, should the Court wish to stay the case pending appeal, it is within its discretion to do so.  *See Coinbase*, 2025 WL 40782, at *13 (*sua sponte* granting a stay after finding that the interlocutory appeal was warranted).

14

interlocutory appeal is certified, the Circuit will be able to review the question now, and—as is likely based on the legal analysis of the merits detailed above—dispose of the litigation before the burdensome expenditure of extensive time and resources outlined above.

<u>**CONCLUSION**</u>

For the reasons stated above, Defendants respectfully submit that the Court should immediately certify for interlocutory appeal the portion of its Order that sustained Count One.

Date:    March 14, 2025
         New York, New York

*/s/ Samson A. Enzer*
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*


*/s/ Teresa Goody Guillén*
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Paragraph III.D of the Individual Practices of Judge John G. Koeltl, Defendants have complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 4,484 words.

Date:   March 14, 2025

*/s/ Samson A. Enzer*

**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

*/s/ Teresa Goody Guillén*

**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

16