# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JUDITH RAANAN *et al.,*

           Plaintiffs,

    -v-

BINANCE HOLDINGS LIMITED, and
CHANGPENG ZHAO,

          Defendants.

Case No: 1:24-cv-00697-JGK

-------------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION FOR
# <u>RECONSIDERATION OF THE COURT'S FEBRUARY 25, 2025 ORDER</u>

**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

**PERLES LAW FIRM, P.C.**
Steven R. Perles
Joshua K. Perles
Edward B. MacAllister
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ........................................................................................................ 3

I.  THE APPLICATION OF *TWITTER* DOES NOT WARRANT RECONSIDERATION ......... 3

    A.   The Application Of *Twitter*'s Nexus Factor Does Not Warrant Reconsideration ......... 3

    B.   The Application Of *Twitter*'s Intent Factor Does Not Warrant Reconsideration .......... 8

II. RECONSIDERATION IS NOT WARRANTED AS TO CPLR 302(A) DISCOVERY ......... 13

    A.   Defendants Do Not Establish A Basis For Reconsideration ........................................ 13

    B.   If There Is Not CPLR 302(a) Jurisdiction, Then Plaintiffs Should Be Permitted To Establish Rule 4(k)(2) Jurisdiction ........................................................ 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abadi v. NYU Langone Health Sys.*,
  714 F. Supp. 3d 387 (S.D.N.Y. 2024).................................................................. 7

*Anwar v. Fairfield Greenwich Ltd.*,
  800 F. Supp. 2d 571 (S.D.N.Y. 2011)................................................................. 3

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003)................................................................................ 15

*Bartlett v. Societe Generale de Banque au Liban SAL*,
  19-cv-00007, ECF 434 (S.D.N.Y. Sept. 18, 2024) ........................................... 10

*Biehner v. City of New York*,
  2021 WL 5827536 (S.D.N.Y. Dec. 7, 2021) (Koeltl, J.) ................................... 3

*Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*,
  2020 WL 7128968 (S.D.N.Y. Dec. 4, 2020) ...................................................... 15

*Bonacasa v. Standard Chartered PLC*,
  2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) .................................................. 9, 10

*City of Almaty v. Ablyazov*,
  278 F. Supp. 3d 776 (S.D.N.Y. 2017)................................................................. 15

*Coinbase, Inc. v. SEC*,
  126 F.4th 175 (3d Cir. 2025) .............................................................................. 12

*DiLaura v. Power Auth. of New York*,
  982 F.2d 73 (2d Cir. 1992)................................................................................... 3

*Direct Sales Co. v. United States*,
  319 U.S. 703 (1943) ........................................................................................... 12

*Doe v. N.Y.C. Dept. of Soc. Servs.*,
  709 F.2d 782 (2d Cir. 1983)................................................................................. 3

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*,
  2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ................................................... 16

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*,
  2018 WL 3639929 (S.D.N.Y. July 10, 2018) .................................................... 19

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*,
  2018 WL 3632524 (S.D.N.Y. July 31, 2018) .................................................... 19

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ................................................................... *passim*

*Hollins v. United States Tennis Assoc.*,
  469 F. Supp. 2d 67 (E.D.N.Y. 2006) .................................................................. 16

*In re Tether & Bitfinex Crypto Asset Litig.*,
  576 F. Supp. 3d 55 (S.D.N.Y. 2021).................................................................. 17

*King v. Habib Bank Ltd.*,
  2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023) .............................................. 9, 10

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
  861 F. Supp. 2d 262 (S.D.N.Y. 2012)................................................................. 3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)............................................................................ 14

*Miami Prods. & Chem. Co. v. Olin Corp.*,
  449 F. Supp. 3d 136 (W.D.N.Y. 2020) ........................................................... 19

*Muniz v. Orange Cnty.*,
  2023 WL 2648776 (S.D.N.Y. Mar. 27, 2023) ............................................... 16

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
  2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ................................................... 20

*Przewozman v. Charity*,
  2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) ............................................... 19

*Range Road Music, Inc. v. Music Sales Corp.*,
  90 F. Supp. 2d 390 (S.D.N.Y. 2000)................................................................. 3

*Reed Int'l, Inc. v. Afghanistan Int'l Bank*,
  657 F. Supp. 3d 287 (S.D.N.Y. 2023)............................................................. 15

*RegenLab USA LLC v. Estar Techs. Ltd.*,
  335 F. Supp. 3d 526 (S.D.N.Y. 2018)............................................................. 19

*Sikhs for Just. v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012)............................................................... 8

*Smith & Wesson Brands, Inc. et al. v. Estados Unidos Mexicanos*,
  No. 23-1141 (2024)......................................................................................... 12

*Sweigert v. Goodman*,
  2024 WL 5047302 (S.D.N.Y. Dec. 9, 2024) (Koeltl, J.) ................................. 3

*Twitter, Inc. v. Taamneh,*
  598 U.S. 471 (2023)................................................................................................ *passim*

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.,*
  2019 WL 3252907 (S.D.N.Y. July 19, 2019) .................................................... 15, 18

*Walsh v. Townsquare Media, Inc.,*
  565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021) .............................................................. 3

**Rules**

CPLR 302(a) ..........................................................................................1, 13, 14, 18

Federal Rule of Civil Procedure 4(k)(2) ................................................... 2, 18, 19

Federal Rule of Civil Procedure 54(b) ................................................ .............3

Federal Rule of Civil Procedure 59(e) ...................................................................3

Plaintiffs submit this memorandum of law in opposition to Defendants Binance Holdings Limited ("Binance") and Changpeng Zhao's ("Zhao"; and with Binance, "Defendants") motion for reconsideration of the Court's February 25, 2025 opinion and order (ECF 53, "Order") denying in part Defendants' Motion to Dismiss the First Amended Complaint (ECF 57, "Motion").[1]

## PRELIMINARY STATEMENT

Defendants' Motion is a textbook example of an improper request for a do-over. Such motions exemplify the reasoning behind the procedural rules fashioned to discourage attempts to relitigate argued and decided issues. If Defendants' arguments regarding *Twitter* and CPLR 302 seem repetitive, it is because Defendants raised these exact arguments in their Motion to Dismiss and at oral argument. The Court considered and rejected these arguments.

Defendants fail to provide a cognizable basis for reconsideration. Defendants maintain that the Court erred when it ruled on the definable nexus between Defendants' conscious and culpable participation and the October 7 Attacks. But the parties comprehensively litigated this issue and the Court decided it. The Court correctly applied *Twitter* based on the FAC's extensive allegations that Defendants deliberately allowed terrorists and their affiliates to transact on Binance, that

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the First Amended Complaint (ECF 17, "FAC") and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 24, "Plaintiffs' Brief"). References to "¶," "Pl. Br.," "Def. Br.," "Reply Br.," and "Mot." are to the FAC, Plaintiffs' Brief, Defendants' Memorandum of Law in Support of the Motion to Dismiss (ECF 19), Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss (ECF 28), and Defendants' Memorandum of Law in Support of the Motion (ECF 58), respectively. All emphasis is added; all internal quotations and citations are omitted.

Defendants intentionally evaded legal requirements designed to detect, report, and prevent terrorism financing, *and* that Defendants affirmatively enabled Hamas and PIJ by knowingly providing financial services to them and their affiliates. Moreover, *Twitter* does not require a "definable nexus"; Defendants' misinterpretation of the law cannot warrant reconsideration.

Defendants also maintain that Plaintiffs "conceded" that the FAC does not allege that Defendants intended to further the Attacks and that the Court erred by sustaining Plaintiffs' aiding and abetting claim without allegations of this intent. But no "concession" was made; the parties extensively litigated *Twitter*'s intent requirement, and the Court considered the issue and correctly concluded that no such intent was required. Moreover, Defendants' assertion is not a basis for reconsideration, as the Court correctly interpreted *Halberstam*, *Twitter*, and post-*Twitter* caselaw from the Second Circuit, all of which hold that aiding and abetting does not require specific intent.

Defendants also contend that the Court erred when it granted jurisdictional discovery pursuant to Plaintiffs' CPLR 302(a) allegations. But Defendants fail to present a cognizable basis for reconsideration; they merely restate their Motion to Dismiss arguments that the FAC's allegations are lacking. Moreover, under the Court's substantial discretion and the liberal standard for granting jurisdictional discovery, Plaintiffs have made a sufficient start towards establishing CPLR 302(a) jurisdiction by raising an issue of fact as to the nature of Defendants' New York activities. Thus, the Court's grant of jurisdictional discovery is not a basis for reconsideration.

Even if the Court were to change its mind about jurisdictional discovery, the Court should deny Defendants' request to dismiss this case on personal jurisdiction grounds, as Plaintiffs also alleged that the Court has personal jurisdiction pursuant to Rule 4(k)(2). Should the Court determine that Defendants are not subject to jurisdiction in New York, the Court should permit Plaintiffs to establish that personal jurisdiction exists pursuant to Rule 4(k)(2).

## ARGUMENT

Reconsideration of a previous order "is an extraordinary remedy to be employed sparingly." *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011). "To succeed on a motion for reconsideration, the movant carries a heavy burden." *Biehner v. City of New York*, 2021 WL 5827536, at *3 (S.D.N.Y. Dec. 7, 2021) (Koeltl, J.). The movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y.C. Dept. of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (discussing Rule 59(e) motion); *see also DiLaura v. Power Auth. of New York*, 982 F.2d 73, 76 (2d Cir. 1992) (same in the context of a Rule 54(b) motion for reconsideration).

Reconsideration "is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). Also, it "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Walsh v. Townsquare Media, Inc.*, 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021). The standard is strict to prevent litigants from repeating arguments "that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000). Reconsideration "rests within the sound discretion of the district court." *Sweigert v. Goodman*, 2024 WL 5047302, at *1 (S.D.N.Y. Dec. 9, 2024) (Koeltl, J.).

## I.  THE APPLICATION OF *TWITTER* DOES NOT WARRANT RECONSIDERATION

### A.  The Application Of *Twitter*'s Nexus Factor Does Not Warrant Reconsideration

Defendants maintain that reconsideration should be granted because the Court purportedly erred when it held that Plaintiffs alleged a "definable nexus" between Defendants' conscious and culpable participation and the Attacks. Mot. at 4. For numerous reasons, Defendants are wrong.

*First*, Defendants' assertion cannot be a basis for reconsideration, as the parties have already litigated this exact issue. Defendants' Motion repeats verbatim Defendants' argument from their Motion to Dismiss that "Plaintiffs come nowhere close to pleading a 'definable nexus between the defendants' assistance and the attack.'" *Compare* Mot. at 4 *with* Def. Br at 21. Defendants also raised this issue at oral argument. *See* ECF 58-1 at 8:11-17, 9:2-4, 11:15 – 10:12.

Plaintiffs have repeatedly and directly challenged this argument. Pl. Br. at 10-11. As Plaintiffs explained, "a close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, but even more remote support can still constitute aiding and abetting in the right case." Pl. Br. at 10 (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 496 (2023 ("*Twitter*")). Plaintiffs' allegations demonstrate precisely this kind of support, alleging that:

> Defendants were systemic financial enablers of Hamas and PIJ. For years, ***Defendants provided these terrorists with the ability to transact millions of dollars in crypto and access global markets, even after they had been identified***. Moreover, Zhao admitted the connection between Defendants' assistance and a future terror attack.

Pl. Br. at 10 (quoting ¶221). Hamas and PIJ (and their affiliates) transacted on Binance from July 2017 through July 2023 – and Defendants knew it in real time (Pl. Br. at 8, ¶¶5, 190, 211-13, 215, 218), as revealed in part by Defendants' internal discussions. Pl. Br. at 5, 9; ¶¶187-88, 216, 221.

Furthermore, *Twitter* identified examples of how remote support without a close nexus to a particular attack could qualify, where a "provider of routine services does so in an unusual way or provides such dangerous wares that selling those goods to a terrorist group could constitute aiding and abetting . . . ." 598 U.S. at 502. As Plaintiffs set forth:

> Defendants' creation and operation of the Binance platform was unusual *and* dangerous because Defendants intentionally created an illicit financing tool designed to hide criminal activity. Defendants' business strategy was in their words: the "***international circumvention of KYC***." ¶177. Notwithstanding their legal obligations to disclose illegal activity (¶221), Defendants used their fake compliance program to enable terrorist financing. ¶¶174-99, 215-19.

4

Pl. Br. at 7. FinCEN's determination that between July 2017 and July 2023 Binance failed to file SARs regarding dozens of Hamas and PIJ transactions associated with terrorist financing demonstrates Binance's real-time knowledge. Pl. Br. at 6; ¶¶211-12, 214-16, 218. And not notwithstanding their duty to report illegal or suspicious activities on Binance, Defendants affirmatively helped terrorist-users evade government investigation, by systematically failing to file a SAR between July 2017 and July 2023, concealing terrorist activity and continuing to do business with them. Pl. Br. at 8; ¶¶5, 211-12, 214-16. On at least one occasion, Binance affirmatively protected a Hamas user, warning the user that he had been flagged and giving him back his money. Pl. Br. at 8; ¶5.

As Plaintiffs further explained: "*Twitter* offers no protection for providers of even 'routine services' where they do so 'in an unusual way,' such as when a morphine distributor mailed narcotics 'far in excess of normal amounts' to a customer." Pl. Br. at 9. As further discussed during oral argument, the provision of routine services in an unusual way—financial services in this case via deliberate circumvention of KYC, AML, and anti-terrorism financing laws and in *Halberstam* following nighttime procurement of "antiques, jewelry, and precious metals"—leads to the imposition of aiding and abetting liability. ECF 58-1 at 35:17 – 36:16; 598 U.S. at 485.

Plaintiffs therefore alleged not only a nexus but amply demonstrated Defendants' conscious and culpable participation in Hamas and PIJ funding schemes. Pl. Br. at 7-10. And in contrast with the service providers in *Twitter*, Defendants' aid to Hamas and PIJ flowed through the knowing violation of Defendants' legal duties to shut down financial aid to terrorist organizations. *Id.; see id.* at 9 ("In February 2019, Binance's CFO demonstrated his knowledge of terrorists' presence on the Binance platform and acknowledged the possibility that they were using it to buy weapons."). Defendants' intentionally-constructed, fraudulent compliance program

allowed terrorists to use the platform to acquire critically important financial support. The foreseeable consequences of these violations were:

> FinCEN concluded that from July 2017 through July 2023 "***Binance's willful failure*** to implement an effective [AML] program" ***directly led to Hamas and PIJ*** transactions in "***significant sums***." ¶¶5, 190, 211-12. FinCEN and the CFTC concluded that ***Hamas operated on Binance in February 2019***. ¶¶213, 216. Binance's own KYC provider identified Hamas usage ***at least twice – in April 2019 and July 2020***. ¶¶213, 215. Plaintiffs themselves uncovered ***$60 million in Hamas and PIJ transactions on Binance***. ¶194.

Pl. Br. at 8.

In the Order, the Court considered the parties' arguments and identified Defendants' (unlike those in *Twitter*) affirmative duties under the regulations. The Court highlighted the FAC's "***ample allegations*** that United States laws and regulations required Binance to implement robust anti-money laundering programs, perform due diligence on its customers, and file SARs with regulators flagging suspected illicit activity, ***all to prevent terrorists from accessing the United States financial system through the Binance exchange***." Order at 63. Likewise, the Court emphasized Plaintiffs' allegations describing Defendants' violation of their duties — Defendants "indeed, ***intentionally evaded***" their duties by "fostering a financial ecosystem on which illicit actors, ***including terrorist organizations like Hamas and PIJ***, transacted freely." *Id.*; *see also id.* at 69 ("defendants at best allegedly failed to prevent groups like Hamas and PIJ from using the Binance platform, despite having an independent legal obligation to do so"). The Court highlighted that Defendants "***knew in real-time that terrorists were transacting on the platform***." *Id.* at 64.

Accordingly, the Court found that Defendants' misconduct amounted to more than "passive nonfeasance" in the provision of "routine services." *Id*. Defendants' "***affirmative actions to enable terrorist groups to transact on the Binance platform***," including Binance's going out of its way "to <u>protect</u> a user associated with Hamas[.]" Order at 65 (emphasis in original); *see also*

*id.* at 69 (Defendants "arguably took deliberate steps to enable such users evade regulatory scrutiny."). As such, the Court held that the FAC alleged that Defendants "provided services that might otherwise be considered routine— cryptocurrency transaction services—in an 'unusual way'—designed to evade government detection and regulation." *Id.* at 66 (citing *Twitter*, 598 U.S. at 502). Thus, the Court concluded:

> While a close nexus between the defendants' alleged assistance and the attacks is lacking, the defendants' alleged widespread, intentional circumvention of anti-terror financing regulations, considered with the defendants' purported knowledge that Hamas and PIJ were transacting on the Binance platform, support the inference that the defendants' assistance was knowing. And the financial assistance allegedly provided was substantial, even if not directly targeted at the October 7, 2023 attacks in particular . . . . Therefore, **the plaintiffs have alleged plausibly that the defendants knowingly and substantially assisted the October 7, 2023 attacks.**

Order at 70. Because Defendants seek to relitigate this same nexus argument, the Court should deny reconsideration. *See Abadi v. NYU Langone Health Sys.*, 714 F. Supp. 3d 387, 393 (S.D.N.Y. 2024) (denying reconsideration as arguments were raised in underlying motion).

*Second*, Defendants are wrong that the Court purportedly misapplied that law, as the *Twitter* standard is flexible and does <u>not</u> require a "definable nexus" in every case to impose aiding and abetting liability. *See Twitter*, 598 U.S. at 503. *Twitter* explicitly holds that a failure to allege "**any definable nexus**" between the defendants' assistance and a terrorist attack is not dispositive but rather "drastically increases [a plaintiff's] burden to show that defendants somehow consciously and culpably assisted the attack." *Id.* Moreover, *Twitter* rejected the precise argument that Defendants make here, holding that the ATA "**does not always demand a strict nexus** between the alleged assistance and the terrorist act." *Id.* at 497. Likewise, a "close nexus" is not required because, while a close nexus "might help establish that the defendant aided and abetted the tort … **even more remote support** can still constitute aiding and abetting in the right case." *Id.* at 496.

And *third*, at most Defendants raise an incognizable issue of fact, as the Court correctly stated that *Twitter* "instructed that determining whether the defendant provided knowing and substantial assistance ***called for the balancing*** of 'the nature and amount of the assistance on the one hand and the defendant's scienter on the other.'" Order at 55. And in finding that a definable nexus existed, the Court conducted this very balancing based on the facts alleged. *See* Order at 63-64 (factual bases for Defendants' failure to act and Defendants' knowledge of terrorists-associated transactions); *id.* at 64-66 (factual bases for Defendants' affirmative acts that enabled terrorists). Notably, Defendants do not point to any fact the Court overlooked; they merely assert that under *Twitter* Plaintiffs purportedly failed to allege a close enough nexus. This is not a basis for reconsideration, warranting denial of Defendants' Motion. *See Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 606 (S.D.N.Y. 2012) (denying motion for reconsideration where motion was "based on the same evidence and the record before the Court" on underlying motion to dismiss).

### B. The Application Of *Twitter*'s Intent Factor Does Not Warrant Reconsideration

Defendants maintain that reconsideration is warranted because, based on a "concession" Plaintiffs made during oral argument, the Court purportedly erred when it held that Plaintiffs did not need to allege that Defendants "were consciously trying to help or otherwise participate in the Attack." Mot at 6. For numerous reasons, Defendants are wrong.

*First*, the parties already litigated this exact issue of Defendants' required intent. Defendants raised it in their Motion to Dismiss. Def. Br. at 16 (that the FAC "alleges nothing but routine transactional services and, at most, Defendants' (1) knowledge that Hamas or PIJ-associated accounts were using BHL, and (2) failure to stop that use."); *id.* at 17 ("there are no allegations to suggest that Defendants gave special treatment to Hamas or the PIJ."); *id.* at 18 (the FAC "alleges no 'affirmative act' that Defendants undertook with the intent of facilitating the

Attacks"); Def. Reply at 5 ("Culpable participation requires that Defendants actively participated in the Attacks and wished to bring [them] about, or sought by their action to make [them] succeed … something the AC fails to allege and the Opposition ignores."); Def. Reply at 7 n.5 (distinguishing Plaintiffs' cited authorities on the basis of intent).

Plaintiffs challenged Defendants' intent argument, stating that, under *Twitter*, a routine services provider is culpable if it provides services "***in an unusual way***" or "***provides such dangerous wares*** that selling those goods to a terrorist group could constitute aiding and abetting a foreseeable terrorist attack." Pl. Br. at 7 (quoting *Twitter*, 598 U.S. at 502). Plaintiffs likewise set forth that, in such circumstances, "a close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, ***but even more remote support can still constitute aiding and abetting in the right case***." Pl. Br. at 10 (quoting *Twitter*, 598 U.S. at 496; citing *King v. Habib Bank Ltd.*, 2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023) and *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023). And at oral argument, Plaintiffs set forth that "[t]here's no allegation that the defendant in the *Halberstam* case intended to commit a murder, but the Supreme Court says, and *Halberstam* says, you don't need to allege that as long as you can show that someone knowingly provided substantial assistance to someone committing a wrongful act . . . that's aiding and abetting." ECF 58-1 at 36:5-12.

The Court considered this issue and concluded that no such specific intent was required. Citing *Twitter*, the Court concluded that Plaintiffs "have alleged that the defendants provided services that ***might otherwise be considered routine – cryptocurrency transaction services – in an 'unusual way' – designed to evade government detection and regulation***" such that even remote support could give rise to aiding and abetting liability. Order at 66. Likewise, the Court correctly stated that "***the defendant need not have known 'all particulars of the primary actor's***

*plan …* a defendant who aids and abets a tort can be held liable for other torts that were **'a foreseeable risk' of the intended tort**." *Id.* at 56. Accordingly, under the Court's correct interpretation of the law and based on Defendants' "providing financial services that intentionally circumvented anti-terrorist-financing regulations, offered such dangerous wares that **selling those goods could constitute aiding and abetting a foreseeable terrorist attack**." *Id.* at 66. And because the Attacks were a foreseeable consequence of Defendants' "**alleged widespread, intentional circumvention of anti-terror financing regulations, considered with the defendants' purported knowledge that Hamas and PIJ were transacting on the Binance platform**," the Court correctly concluded that "**the Amended Complaint's allegations capture the 'essence' of aiding-and-abetting liability: that Binance and Zhao 'consciously and culpably participated' in Hamas's and PIJ's wrongdoing**" even though their participation was "**not directly targeted at the October 7, 2023 attacks in particular**. . . ." Order at 69-70.

*Second*, Defendants' assertion that the Court erred on the issue of *Twitter*'s requisite intent cannot form a basis for reconsideration, as Defendants misstate the law. As set forth above, under *Twitter* and *Halberstam*, specific intent to further a primary actor's tort is not required. *See Twitter*, 598 U.S. at 486-487 (citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)). Courts in this Circuit interpreting *Twitter* hold accordingly. *See King.*, 2023 WL 8355359, at *3 (denying reconsideration because complaint alleged that defendant provided "non-routine banking services to terrorists and their allies," regardless of whether defendant sought to further a particular terrorist attack); *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *9 (denying reconsideration because intent "can be satisfied even where the defendant did not intentionally aid the specific terrorist attack itself," such as the provision of "routine services" in an "unusual way"); *see also Bartlett v. Societe Generale de Banque au Liban SAL*, 19-cv-00007, ECF 434, at 9-10 (S.D.N.Y.

Sept. 18, 2024) (rejecting need for specific intent where a defendant provides financial services in an unusual way – knowingly doing so for terrorist affiliates).

To that effect, Plaintiffs' purported "concession" is actually a correct statement of law. As Plaintiffs' counsel explained during oral argument, "[t]he complaint does not allege that the defendants intended to bring about the October 7 attacks . . . The allegation is, as your Honor correctly pointed out, *when you're knowingly providing financial services to terrorists, you can[] be held liable for aiding and abetting*." ECF 58-1 at 35:20-23. And the Court agreed, stating that the FAC "doesn't allege that the defendants knew that the money was going to be used for the October 7 attack. I think – unless the plaintiffs tell me differently, *I think that's common ground*. What the plaintiffs say is they don't have to allege that. It's like providing the gun to the person even though you don't know that the gun is going to be used to kill." *Id.* at 9:5-11.  As the Court stated in response to Defendants' argument as to *Twitter*'s intent requirement:

> *It is, on one level, somewhat breathtaking to take the position that it's OK for a regulated entity to say, sure, we accept terrorist accounts which allow the transmission of funds to terrorists because we treat terrorists just like anyone else*, and if you want to use our account to finance what you do, that's OK. We're open, and in fact, we advertise that crime can be committed on our site.

ECF 58-1 at 23:2-8. Similarly, the Court stated that "[i]f you sell a gun to someone and it's used to kill someone else, *the fact that you were selling the gun for profit rather than to facilitate the person's use of the gun would not be a defense*." ECF 58-1 at 20:14-15. Defendants' misstatement of *Twitter*'s intent requirement cannot serve as a basis for reconsideration.

Defendants also maintain that reconsideration is warranted because cryptocurrency is not a "dangerous ware" like "a gun," such that the provision of crypto services purportedly cannot establish aiding and abetting liability. Mot. at 6. But Defendants' assertion fails under *Twitter* because liability may be imposed where a "provider of routine services does so in an unusual way

*or* provides such dangerous wares that selling those goods to a terrorist group could constitute aiding and abetting a foreseeable terror attack." *Twitter*, 598 U.S. at 502 (citing *Direct Sales Co. v. United States*, 319 U.S. 703, 707 (1943)). Moreover, providing financial services to terrorists qualifies as providing routine services in an unusual way *and* is inherently dangerous. Pl. Br. at 7-10. And as to which, the Court agreed, stating that:

> [d]epending upon the gravity of the action, the gravity of the results, the more likely – the more that the comparison is to providing a firearm to a dangerous person. Even though you don't know that that firearm is going to be used to kill someone, you can be held liable for aiding and abetting the murder of that person. ***That seems to weaken substantially the kind of scienter that the Supreme Court requires for an aiding and abetting***.

ECF 58-1 at 8:2-10; *see also id.* at 21:5-10 ("the government has acknowledged that there is the possibility of danger … that's why there's a Bank Secrecy Act and anti-money laundering laws and know-your-customer requirements[.]"). The Court reviewed and rejected this very argument:

> Also, like the defendant in *Bonacasa*, **the defendants in this case allegedly provided routine financial services in an unusual, dangerous way**.

Order at 69. Defendants fail to establish a basis for reconsideration, their Motion should be denied.[2]

---

[2] Defendants' cited authorities are unavailing. *Coinbase, Inc.* v. *SEC*, 126 F.4th 175 (3d Cir. 2025) is irrelevant, as it did not concern *Twitter*'s ruling regarding the provision of routine services in an unusual manner. Defendants already argued *Siegel* and *O'Sullivan* during oral argument; the Court considered them and found them unavailing. Order at 66-67, n.22. Defendants also mischaracterize *Smith & Wesson Brands, Inc. et al. v. Estados Unidos Mexicanos*, No. 23-1141; contrary to Defendants' representation, only Justice Kavanaugh asked a single question on the issue of expanded aiding and abetting liability, which in turn was fully answered. And that question does not alter *Twitter'*s holding as to the provision of routine services in an unusual way.

## II.  RECONSIDERATION IS NOT WARRANTED AS TO CPLR 302(A) DISCOVERY

### A.  Defendants Do Not Establish A Basis For Reconsideration

Defendants maintain that reconsideration should be granted, as the Court purportedly erred when it ordered jurisdictional discovery because Plaintiffs did not establish a prima facie case for jurisdiction under CPLR 302(a). Mot. at 8-10. For numerous reasons, Defendants are wrong.

*First*, the issue of the sufficiency of Plaintiffs' CPLR 302(a) allegations has already been thoroughly litigated. Defendants challenged this showing, maintaining that the FAC's allegations were purportedly "conclusory" and that Plaintiffs did not connect Binance's New York business or customers to Plaintiffs' claims. Def. Br. at 20-21; Def. Reply at 9-10. Defendants raised this argument again during oral argument. ECF 58-1 at 28:312, 29:9-21.

Plaintiffs responded by arguing that the Court had jurisdiction under CPLR 302(a), as Plaintiffs pled that Defendants' knowing provision of financial services to Hamas and PIJ was dependent on Binance's ability to do business in New York and the acts (and misconduct) in which Defendants undertook to solicit and maintain New York business and customers, including Defendants' "prioritized" relationships with New York-based "VIP" "market maker" customers. Pl. Br. at 20-21; ¶¶11-13, 17, 68-69, 158, 174-81. Moreover, Plaintiffs pled the confirmation of the nexus between Plaintiffs' claim and Defendants' New York VIP users by Defendants' deliberate failure to migrate these customers to Binance's U.S.-based exchange, set up by Binance for the purpose of deceiving regulators. ¶175. Plaintiffs also pled that Defendants affirmatively engaged in a scheme to evade regulatory oversight and maintain these customers on Binance's international exchange for the express purpose of providing criminals—including terrorists like Hamas and PIJ—with illegal access to U.S. financial markets and trading counterparties. ¶¶176-79, 182, 187-88, 210-18. Plaintiffs raised these issues during oral argument in response to the Court's questions regarding Plaintiffs' CPLR 302(a) showing. ECF 58-1 at 47:16 – 48:10.

And considering the parties' positions, the Court correctly concluded that jurisdictional discovery was warranted as to Defendants' New York business and customers. Order at 13. The Court rightly stated that CPLR 302(a) "does not require a causal link between the defendant's New York business activity and a plaintiff's injury" but merely "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Order at 10 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)). The Court noted that the FAC "sufficiently alleges that Binance transacted business in New York, and that Zhao, as Binance's CEO, exercised control over these transactions." Order at 10.

Notably as to jurisdictional discovery, the Court questioned whether Plaintiffs could establish that Binance's provision of financial services to Hamas and PIJ depended on Binance's transactions with VIP customers in New York. *Id.* at 11. Likewise, as to Plaintiffs' establishing the relationship amongst Binance's alleged circumvention of regulatory requirements involving its New York customers, Binance's alleged misconduct involving FTOs' and Zhao's activities in New York. *Id.* at 10-11. And based on these issues, the Court correctly concluded that Plaintiffs had "***made a sufficient start***" toward establishing personal jurisdiction. *Id.* at 13. Accordingly, the Court ordered jurisdictional discovery, holding that it "may clarify the character and extent of the connection, if any, between the alleged market-making activities of Binance's New York-based VIP customers and Binance's ability to provide financial services to Hamas and PIJ." *Id.*

By their Motion, Defendants seek to relitigate this same issue, while failing to meet the requirements for reconsideration. Defendants maintain that the "question of whether New York business engagements are necessary to Binance's general operation as an enterprise . . . would, if deemed conclusive, render all businesses subject to general jurisdiction any place where they

conduct important business transactions, even in forums where they are not domiciled." Mot. at 9.

Defendants raised this identical point during oral argument, stating that:

> And, essentially, what they're doing is they're transforming 302 into a general jurisdiction statute. They're not making that argument, Judge. They're making a specific jurisdiction argument, and they don't have it because there's no connection between what they say occurred in New York and anything having to do with the overseas attacks. Maybe they'll draw some connections, but they haven't through rounds and rounds of briefing before the magistrate court.

ECF 58-1 at 29:14-21. The Court considered this argument and still ordered jurisdictional discovery. Order at 11. Defendants' rearguing this point is not a colorable basis for reconsideration.

*Second*, Defendants are wrong as a matter of law that the Court erred by ordering jurisdictional discovery here. Mot. at 8-10. "[T]he standard governing jurisdictional discovery is very generous." *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 3252907, at *1 (S.D.N.Y. July 19, 2019). "[E]ven where [a] plaintiff ***has not made a prima facie showing*** of personal jurisdiction, a court may still order discovery, in its discretion, when … plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." Order at 13. Such discovery is appropriate upon a "showing that there is ***some basis for the assertion of jurisdiction***." *Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020). A "***sufficient start***" towards making this prima facie showing is enough. *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017). A court "should take care to give the plaintiff ***ample opportunity to secure and present evidence relevant to the existence of jurisdiction***." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). "***Whether to allow jurisdictional discovery is a decision as to which a district court enjoys substantial discretion***." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 298 (S.D.N.Y. 2023).

Based on the Court's conclusion that Plaintiffs had "***made a sufficient start***" towards establishing personal jurisdiction and given the Court's substantial discretion, the Court correctly

ordered jurisdictional discovery. Order at 13. That ruling notwithstanding, Defendants assert that reconsideration is purportedly warranted, as Plaintiffs purportedly have not "identified a genuine issue of jurisdictional fact" such that discovery will not support a connection between Defendants' New York business and their knowing and substantial assistance. *Id.* But the Court rejected this assertion at oral argument and identified the genuine issue of jurisdictional fact that Plaintiffs sufficiently alleged:

> ***Then there's the question whether the claims in the case arise out of the doing business in New York. Why doesn't that create, at best, an issue of fact to open up discovery with respect to the nature of the activities in New York and whether that has a sufficient connection?*** There's been no discovery with respect to that, so I just have to decide it on the allegations in the complaint. Don't the cases indicate that, under those circumstances, at the very least, I need discovery to determine whether the allegations of a connection between the business and the complaint are sufficient?

ECF 58-1 at 28:18 – 29:3.

Defendants also suggest that Plaintiffs' allegations regarding the connection between New York-based market makers and Defendants' international platform should not be accepted because it is set forth "upon information and belief." Mot. at 8-9. However, under *Twombly*, "a plaintiff may plead facts asserted upon information and belief "where the belief is based on actual information that makes the inference of culpability plausible." *Muniz v. Orange Cnty.*, 2023 WL 2648776, at *5 (S.D.N.Y. Mar. 27, 2023).

And that is exactly what Plaintiffs have done. Defendants entered a guilty plea with the U.S. Department of Justice and entered massive settlements with multiple government regulators based on a stipulated factual record that identifies "VIP" market makers in New York, including a New York trading firm identified as "among Binance's largest customers." ¶¶68-69. As determined by the SEC, the DOJ, and the CFTC, Binance identified these customers as "VIP" because they were critical for Binance's ongoing operations, providing Binance with necessary

liquidity for Binance to cost-effectively and profitably process trades. ¶155. Binance "prioritized attracting and maintaining relationships with large U.S. market makers to drive activity on the platform and increase profits." ¶157. And rather than appropriately migrate these clients to the U.S. platform, Binance helped these clients circumvent technological restrictions to maintain them on the international platform. ¶¶176-80. Because Plaintiffs cannot at this stage know all the facts as to Defendants' connection to New York, these allegations are a sufficient basis for jurisdictional discovery. *See Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*, 2022 WL 3910679, at *9 (S.D.N.Y. Aug. 31, 2022) (upholding grant of jurisdictional discovery where plaintiff alleged "upon information and belief" that Defendants maintained bank accounts in New York "because additional facts …lie within defendants' knowledge"); *see also Hollins v. United States Tennis Assoc.,* 469 F. Supp. 2d 67, 71 (E.D.N.Y. 2006) ("[T]he Second Circuit has ordered jurisdictional discovery where plaintiffs allege more than conclusory statements but without supporting facts.").

Defendants also assert that Plaintiffs' theory of New York jurisdiction is defective, as it is purportedly implausible that Binance could be dependent on New York customers when its U.S. customers accounted for only "15-20 percent of [Defendants'] transactions fees." Mot. at 10. Defendants' argument fails, as Defendants raised this exact argument at oral argument:

> What they have alleged was done in New York are things that are necessary for Binance to run at best – at best – because they're not really – because the plaintiffs say that it was about 15 percent of the revenue, New York. But even accepting, Judge, their claim that New York customers provided liquidity necessary for Binance to function, that doesn't do it.

ECF 58-1 at 28:6-12. While Defendants fail to provide any support for their assertion that Binance would not have collapsed but for Binance's New York business, that the parties disagree as to this issue gives rise to a material issue of jurisdictional fact that itself warrants jurisdictional discovery.

Furthermore, whether Binance would have "collapsed entirely" without its New York business is not a controlling consideration; rather, for the Court to exercise personal jurisdiction, it is enough for Plaintiffs to demonstrate that the New York business was a "critical component of the illicit scheme." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 88 (S.D.N.Y. 2021). Lastly, Defendants' assertion as to the quantum of transaction fees is misguided, as Plaintiffs allege that Binance's VIP customers provided not just fees but also functioned as de facto market makers, supplying liquidity as transactional counterparties to Binance's criminal customers on its international exchange. ¶¶69, 155-57. Thus, VIP users in New York may have acted as counterparties in transactions with Hamas and PIJ wallets, furnishing a direct nexus between Plaintiffs' claim and New York, which jurisdictional discovery may uncover. The Court recognized these allegations and considered them as a basis for jurisdiction. Order at 3, 11, 13.

In sum, Defendants improperly re-argue the sufficiency of the facts that serve as a basis for Plaintiffs' showing pursuant to CPLR 302(a). Defendants' Motion should be denied. *See Vasquez*, 2019 WL 3252907, at *2 (denying reconsideration of jurisdictional discovery order because defendant merely re-argued that the complaint failed to establish personal jurisdiction).

## B. If There Is Not CPLR 302(a) Jurisdiction, Then Plaintiffs Should Be Permitted To Establish Rule 4(k)(2) Jurisdiction

Even if the Court reversed itself on jurisdictional discovery, the result would not be, as Defendants maintain, to "dismiss the AC for lack of personal jurisdiction" (Mot. at 10), as Plaintiffs also alleged the applicability of Rule 4(k)(2). Order at 14. That the Court has already disposed of most of Defendants' 4(k)(2) challenges demonstrates the appropriateness of this result. In their Motion to Dismiss, Defendants asserted that Plaintiffs had not alleged that Defendants were not subject to jurisdiction in any state's courts of general jurisdiction (the second prong of 4(k)(2)). Def. Br. at 21-22. Defendants also asserted that such jurisdiction could not be exercised

based on Plaintiffs' purported defective service. *Id.* As to the latter, the Court rejected Defendants' service argument. Order at 15 n.4. The Court also determined that Defendants waived any argument that jurisdiction under 4(k)(2) did not comport with due process. *Id.* at 16-17.

With respect to Rule 4(k)(2)'s second prong, the Court determined that resolving that issue was "***premature***" and Plaintiffs could not rely on it "***at this point***" because whether jurisdiction existed in New York remained an open issue. Order at 15-16 n. 4. If the Court reversed its decision on jurisdictional discovery, then the question of 4(k)(2) jurisdiction would be ripe. And at that point, the Court should permit Plaintiffs to certify that, based on the information available to them, Defendants are not subject to personal jurisdiction in any state's courts of general jurisdiction. *See Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 177 (W.D.N.Y. 2020) (permitting plaintiffs to file Rule 4(k)(2) certification); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *13 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (S.D.N.Y. July 31, 2018) (Koeltl, J.) (accepting Plaintiff's offer to "submit a certification" that "Defendant is not subject to the jurisdiction of any state" and finding this prong of Rule 4(k)(2) satisfied after Plaintiff "certifie[d] that, based on the information currently available to it and its counsel, Defendant is not subject to jurisdiction of any state."); *Przewozman v. Charity*, 2023 WL 2562537, at *14 (E.D.N.Y. Mar. 17, 2023) (declining to dismiss claims solely on the basis of plaintiffs' failure to certify and "encourag[ing]" plaintiffs to submit a certification along with an amended complaint after dismissing on other grounds).

Following Plaintiffs' certification, the Court should adopt the burden-shifting framework requiring a defendant to show "that one or more specific states exist in which it would be subject to suit." *Przewozman*, 2023 WL 2562537, at *14; *see also RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 547 (S.D.N.Y. 2018) (adopting burden-shifting framework and ordering

defendant to set forth where it was subject to jurisdiction); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2011 WL 7053807, at *44 (E.D.N.Y. Jan. 4, 2011) (same as to burden-shifting; ordering defendant "to produce evidence that it is subject to jurisdiction in one or more states or that its contacts with the United States generally are insufficient."). That Plaintiffs anticipate that Defendants will identify no such state is an issue for another day.

## CONCLUSION

For all the reasons set forth herein, Defendants' Motion should be denied.

Dated: March 28, 2025
       New York, New York

 */s/ Jake Nachmani*
**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686


**PERLES LAW FIRM, P.C.**

Steven R. Perles
(*pro hac vice motion to be filed*)
Joshua K. Perles
(*pro hac vice motion to be filed*)
Edward B. MacAllister
(*pro hac vice*)
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Section III-D of the Individual Practices of Judge John G. Koeltl, Plaintiffs have complied with all of the formatting rules contained therein. The total number of words contained herein, exclusive of the cover page, certificate of compliance, table of contents, and table of authorities is 6385 words.

Dated: March 28, 2025

*/s/ Jake Nachmani*

**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

**PERLES LAW FIRM, P.C.**

Steven R. Perles
(*pro hac vice motion to be filed*)
Joshua K. Perles
(*pro hac vice motion to be filed*)
Edward B. MacAllister
(*pro hac vice*)
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*