## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

JUDITH RAANAN *et al.*,

        Plaintiffs,

      -v-

BINANCE HOLDINGS LIMITED, and
CHANGPENG ZHAO,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No: 1:24-cv-00697-JGK

--------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY
## THE COURT'S FEBRUARY 25, 2025 ORDER FOR INTERLOCUTORY APPEAL

**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

**PERLES LAW FIRM, P.C.**
Steven R. Perles
Joshua K. Perles
Edward B. MacAllister
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

I.  THE COURT SHOULD NOT CERTIFY THE ORDER ................................................ 4

    A.    The Order Does Not Involve A Controlling Question Of Law .......................... 4

    B.    Substantial Grounds For Difference Of Opinion Do Not Exist ..................... 11

    C.    Interlocutory Appeal Will Not Materially Advance The Case ..................... 17

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adar Bays, LLC v. Aim Exploration, Inc.*,
    310 F. Supp. 3d 454 (S.D.N.Y. 2018)....................................................................... 3

*Aldana v. GameStop, Inc.*,
    2024 WL 3104345 (S.D.N.Y. June 24, 2024) ......................................................... 12

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
    426 F. Supp. 2d 125 (S.D.N.Y. 2005).............................................................. 12, 16

*Bartlett v. Societe Generale de Banque au Liban SAL*,
    19-cv-00007 (S.D.N.Y. Sept. 18, 2024) ....................................................... 8, 13, 14

*Bilello v. JPMorgan Chase Ret. Plan*,
    603 F. Supp. 2d 590 (S.D.N.Y. 2009).................................................................... 6

*Bonacasa v. Standard Chartered PLC*,
    2023 WL 7110774  (S.D.N.Y. Oct. 27, 2023) ............................................... 8, 13, 14

*Curtiss–Wright Corp. v. Gen. Elec. Co.*,
    446 U.S. 1 (1980)..................................................................................................... 3

*Doe Fund, Inc. v. Berkley Ins. Co.*,
    2024 WL 4732771 (S.D.N.Y. Oct. 11, 2024) ......................................................... 13

*Dorce v. City of New York*,
    2022 WL 3133063 (S.D.N.Y. July 18, 2022) ........................................................... 9

*Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*,
    2025 WL 622546 (E.D.N.Y. Feb. 26, 2025) ....................................................... 9, 11

*Estevez-Yalcin v. The Children's Vill.*,
    2006 WL 3420833 (S.D.N.Y. Nov. 27, 2006)......................................................... 13

*FHJ 86 Partners v. Charter Oak Fire Ins. Co.*,
    2010 WL 11712790 (S.D.N.Y. Oct. 5, 2010) ......................................................... 10

*Fogarazzo v. Lehman Bros.*,
    2004 WL 1555136 (S.D.N.Y. July 9, 2004) ........................................................... 18

*Freeman v. Nat'l Broad. Co.*,
    1993 WL 524858 (S.D.N.Y. Dec. 15, 1993) ............................................................ 4

*Garber v. Off. of the Com'r of Baseball*,
    120 F. Supp. 3d 334 (S.D.N.Y. 2014)................................................... 3, 13, 15, 18

*Gottesman v. Gen. Motors Corp.*,
  268 F.2d 194 (2d Cir. 1959) ................................................................................ 17

*Hakimyar v. Habib Bank Ltd.*,
  2025 WL 605575 (S.D.N.Y. Feb. 25, 2025) ......................................................... 11

*Honickman* v. *BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) ............................................................................ 11, 16

*In re Belton*,
  2016 WL 164620 (S.D.N.Y. Jan. 12, 2016) .......................................................... 18

*In re Enron Corp.*,
  2007 WL 2780394 (S.D.N.Y. Sept. 24, 2007) ....................................................... 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014) ........................................................... *passim*

*In re Flor*, 79 F.3d 281 (2d Cir. 1996) ..................................................................... 3, 12

*In re Kingdom of Belgium Fed. Pub. Serv. Fin. Pension Plan Litig.*,
  2023 WL 6214806 (S.D.N.Y. Sept. 22, 2023) ...................................................... 13

*In re Manhattan Inv. Fund Ltd.*,
  288 B.R. 52 (S.D.N.Y. 2002) ............................................................................... 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  174 F. Supp. 2d 4 (S.D.N.Y. 2001) ................................................................ 14, 18

*In re Pfizer Inc. Sec. Litig.*,
  2008 WL 11389170 (S.D.N.Y. Sept. 4, 2008) ...................................................... 19

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
  745 F.3d 30 (2d Cir. 2014) ..................................................................................... 3

*In re Terrorist Attacks on Sept. 11, 2001*,
  2023 WL 2971480 (S.D.N.Y. Apr. 17, 2023) ................................................. 14, 17

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) ....................................................................... 11, 15, 16

*King v. Habib Bank Ltd.*,
  2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023) ................................................. *passim*

*King v. Habib Bank Ltd.*,
  2024 WL 3761821 (S.D.N.Y. Jan. 2, 2024) .................................................. 11, 13, 17

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ..................................................................................... 3

iii

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ............................................................................... 17

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
    2012 WL 1481510 (S.D.N.Y. Apr. 27, 2012) ..................................................... 19

*Manrique v. State Farm Mut. Auto. Ins. Co.*,
    2022 WL 2384170 (S.D.N.Y. July 1, 2022) ....................................................... 16

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
    293 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................. 9

*McNeil v. Aguilos*,
    820 F. Supp. 77 (S.D.N.Y. 1993) ....................................................................... 19

*Merryman v. Citigroup, Inc.*,
    2017 WL 129126 (S.D.N.Y. Jan. 6, 2017) ......................................................... 10

*Mills v. Everest Reins. Co.*,
    771 F. Supp. 2d 270 (S.D.N.Y. 2009) .................................................................. 4

*Multi Juice, S.A. v. Snapple Beverage Corp.*,
    2003 WL 22000593 (S.D.N.Y. Aug. 20, 2003) ................................................. 10

*Murray v. UBS Sec., LLC*,
    2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) ................................................. 13, 18

*Noto v. 22nd Century Grp., Inc.*,
    35 F.4th 95 (2d Cir. 2022) ................................................................................. 17

*Platinum Partners Value Arbitrage Fund L.P.*,
    2022 WL 4357548 (S.D.N.Y. Sept. 19, 2022) ................................................... 17

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ..................................................... 10, 15, 17

*Ret. Bd. of the Policemen's Annuity v. Bank of New York Mellon*,
    2016 WL 2744831 (S.D.N.Y. May 9, 2016) ...................................................... 15

*S.E.C. v. Gruss*, 2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) ................................................. 10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2023 WL 5671544 (S.D.N.Y. Sept. 1, 2023) ....................................................... 6

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ................................................................................... *passim*

*United States v. Prevezon Holdings Ltd.*,
    2016 WL 187936 (S.D.N.Y. Jan. 15, 2016) .......................................... 4, 9, 12, 17

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Distribution Corp.*,
  964 F.2d 85 (2d Cir. 1992)...................................................................................... 18

*Wildman v. Deutsche Bank Aktiengesellschaft*,
  23-132 (2d Cir.) ...................................................................................................... 11

*Zobay* v. *MTN Group Ltd.*,
  695 F. Supp. 3d 301 (E.D.N.Y. 2023) .......................................................... 13, 14

**Statutes**

28 U.S.C. § 1292(b) .............................................................................................. *passim*

Plaintiffs submit this memorandum of law in opposition to Defendants Binance Holdings Limited ("Binance") and Changpeng Zhao's ("Zhao"; and together with Binance, "Defendants") motion under 28 U.S.C. § 1292(b) to certify for interlocutory appeal the portion of the Court's February 25, 2025 Memorandum Opinion and Order (ECF 53, "Order"), that denied Defendants' motion to dismiss Plaintiffs' aiding and abetting claim under 18 U.S.C. § 2333, asserted in the First Amended Complaint (ECF 17, "FAC"; and as to Defendants' motion, "Motion").[1]

## PRELIMINARY STATEMENT

Defendants enabled Hamas and PIJ. By its Order, the Court denied in part Defendants' Motion to Dismiss, holding that Plaintiffs had sufficiently stated their aiding and abetting claim. In a comprehensive opinion that followed extensive briefing and oral argument, the Court concluded that the FAC sufficiently pled that Defendants knowingly and substantially assisted Hamas and PIJ in committing the horrific October 7 Attacks.

Defendants want a re-do. By their Motion, Defendants seek interlocutory appeal, attempting to reverse the Court's Order. To that end, they maintain that interlocutory appeal is warranted because the Court erroneously sustained Plaintiffs' aiding and abetting claim while

---

[1] Capitalized terms not defined herein have the same meanings as ascribed to them in the FAC and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 24, "Plaintiffs' Brief"). References to "¶," "Pl. Br.," "Def. Br.," "Reply Br.," and "Mot." are to paragraphs of the FAC, Plaintiffs' Brief, Defendants' Memorandum of Law in Support of the Motion to Dismiss (ECF 19), Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss (ECF 28), and Defendants' Memorandum of Law in Support of the Motion (ECF 58), respectively. All emphasis is added; all internal quotations and citations are omitted.

Plaintiffs had purportedly not satisfied *Twitter*'s nexus and intent requirements. However, Defendants fail to establish any of § 1292(b)'s requirements. No exceptional circumstances exist here for interlocutory appeal; the Court should not authorize this re-do.

The Court's Order does not involve a controlling issue of law. While Defendants misrepresent the Court's Order as holding that Plaintiffs did not plead a "definable nexus" or the requisite intent under *Twitter*, the Court went to lengths to thoroughly identify both the colorable nexus Plaintiffs had alleged and Defendants' culpable intent. Whereas Defendants misstate *Twitter* to require Plaintiffs to plead facts establishing Defendants' specific intent to further the Attacks, the Court correctly concluded that no such intent is required. Moreover, the Order does not involve the requisite pure question of law; the Court reached its holding by thoroughly analyzing the facts that Plaintiffs alleged, such that the Order gives rise to a non-appealable application of law to facts.

Defendants also fail to establish that substantial grounds for difference of opinion as to the Order exist. Rather than present a cognizable basis for such a difference of opinion, Defendants instead simply repeat their Motion to Dismiss arguments as to *Twitter*'s purported nexus and intent requirements, positions that as a matter of law cannot be a basis for § 1292(b) certification.

Defendants also fail to establish that interlocutory appeal will advance this case. In fact, if the Second Circuit reverses the Order, Plaintiffs would be entitled to file a second amended complaint, giving rise to another round of Rule 12(b)(6) briefing, causing further delay. Defendants' assertion that interlocutory appeal would expedite this case's termination is entirely speculative; the possibility of expedited termination is insufficient under § 1292(b). And given the strength of Plaintiffs' allegations, the Order's thoroughness, and that no exceptional circumstances have occurred affecting the Order, it is implausible that the Court would now be convinced that interlocutory appeal will definitively accelerate the action. Defendants' Motion should be denied.

2

## ARGUMENT

There is an "historic federal policy against piecemeal appeals[.]" *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). "Interlocutory appeals are presumptively disfavored." *Garber v. Off. of the Com'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). Certification "should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). "The party seeking an interlocutory appeal has the burden of showing [these] exceptional circumstances to overcome the general aversion to piecemeal litigation." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

A court should certify an order for interlocutory appeal only if the order: (1) "involves a controlling question of law," (2) "there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The proponent of an interlocutory appeal "has the burden of showing that all three of the substantive criteria are met." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014). "These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that section 1292(b) be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at 529-30. "[T]he certification decision is entirely a matter of discretion for the district court." *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 36 (2d Cir. 2014). "[E]ven when the elements of section 1292(b) are satisfied, the district court retains unfettered discretion to deny certification." *Adar Bays, LLC v. Aim Exploration, Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018). A court can exercise such discretion "for any reason." *Facebook*, 986 F. Supp. 2d at 530.

## I.  THE COURT SHOULD NOT CERTIFY THE ORDER

The Court should deny Defendants' Motion because, as set forth herein, Defendants cannot establish any of the required factors under 28 U.S.C. § 1292(b).

### A.  The Order Does Not Involve A Controlling Question Of Law

A § 1292(b) appeal requires "a ***pure*** question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Facebook*, 986 F. Supp. 2d at 536. "Where controlling issues are factual rather than legal ... section 1292(b) certification is unavailable." *United States v. Prevezon Holdings Ltd.*, 2016 WL 187936, at *2 (S.D.N.Y. Jan. 15, 2016). Likewise, questions regarding the "***application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b).***" *Facebook*, 986 F. Supp. 2d at 536. "Similarly, ***mixed questions of law and fact are not appropriate for certification under § 1292(b)***." *Freeman v. Nat'l Broad. Co.*, 1993 WL 524858, at *2 (S.D.N.Y. Dec. 15, 1993). "The antithesis of a proper Section 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Mills v. Everest Reins. Co.*, 771 F. Supp. 2d 270, 275-76 (S.D.N.Y. 2009).

For numerous reasons, Defendants' Motion does not present a controlling question of law. *First*, seeking to frame the Court's Order as presenting a question of law, Defendants' question presented grossly misrepresents the Court's holdings with respect to nexus and intent. Specifically, Defendants assert that the Court purportedly held that Plaintiffs had not alleged either a "***definable nexus***" between Defendants' misconduct and the Attacks or Defendants' culpable intent under *Twitter*. Mot. at 2, 5, 6. But this is <u>not</u> what the Court held.

The Court went to lengths to explicitly identify and define the nexus and Defendants' conscious and culpable participation – devoting no less than nine pages to the FAC's allegations as to these issues. Order at 61-70. The Court identified Defendants' duty to act (unlike those in

*Twitter*), as set forth by the FAC's "***ample allegations*** that United States laws and regulations required Binance to implement robust anti-money laundering programs, perform due diligence on its customers, and file SARs with regulators flagging suspected illicit activity, ***all to prevent terrorists from accessing the United States financial system through the Binance exchange***." Order at 63. Likewise, the Court identified Plaintiffs' allegations describing Defendants' violation of their duty — Defendants "***intentionally evaded***" their duty by "fostering a financial ecosystem on which illicit actors, ***including terrorist organizations like Hamas and PIJ, transacted freely***." *Id.*; *see also id.* at 69 ("the defendants at best allegedly failed to prevent groups like Hamas and PIJ from using the Binance platform, despite having an independent legal obligation to do so"). And the Court emphasized Plaintiffs' allegations that Defendants "***knew in real-time that terrorists were transacting on the platform***." *Id.* at 64.

Likewise, the Court concluded that, as alleged in the FAC, Defendants' misconduct amounted to more than "passive nonfeasance" in the provision of "routine services." *Id*. To that effect, the Court set forth numerous examples of Defendants' "***affirmative actions to enable terrorist groups to transact on the Binance platform***," including Binance's going out of its way to <u>protect</u> a user associated with Hamas[.]" *Id.* at 65 (emphasis in original); *see also id.* at 69 (Defendants "arguably took deliberate steps to enable such users evade regulatory scrutiny."). As such, the Court held that the FAC adequately pled that Defendants "provided services that might otherwise be considered routine— cryptocurrency transaction services—in an ***'unusual way'— designed to evade government detection and regulation***." *Id.* at 66 (citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 502). The Court described Defendants' substantial support for the Attacks: "***Binance, in providing financial services that intentionally circumvented anti-terrorist-***

*financing regulations, offered 'such dangerous wares that selling those goods could constitute aiding and abetting a foreseeable terrorist attack.'"* Order at 66 (citing *Twitter* 598 U.S. at 502).

For these reasons and as to Defendants' intent under *Twitter*, the Court held that the FAC's "allegations capture the 'essence' of aiding-and-abetting liability: *that Binance and Zhao 'consciously and culpably participated' in Hamas's and PIJ's wrongdoing.*" Order at 69-70. And in response to Defendants' assertion at oral argument that Defendants' misconduct did not satisfy *Twitter*'s intent requirement, the Court stated:

> *It is, on one level, somewhat breathtaking to take the position that it's OK for a regulated entity to say, sure, we accept terrorist accounts which allow the transmission of funds to terrorists because we treat terrorists just like anyone else*, and if you want to use our account to finance what you do, that's OK. We're open, and in fact, we advertise that crime can be committed on our site.

ECF 58-1 at 23:2-8. And as to nexus, the Court explicitly held that Plaintiffs had sufficiently pled a cognizable nexus under *Twitter*:

> While a close nexus between the defendants' alleged assistance and the attacks is lacking, the defendants' alleged widespread, intentional circumvention of anti-terror financing regulations, considered with the defendants' purported knowledge that Hamas and PIJ were transacting on the Binance platform, support the inference that the defendants' assistance was knowing. And the financial assistance allegedly provided was substantial, even if not directly targeted at the October 7, 2023 attacks in particular . . . . Therefore, *the plaintiffs have alleged plausibly that the defendants knowingly and substantially assisted the October 7, 2023 attacks.*

Order at 70. The Court likewise stated that that the FAC sufficiently alleged "that the defendants provided knowing and substantial assistance *with respect to the attacks.*" *Id.*

Given the Court's explicit holdings as to nexus and intent, Defendants' misrepresentations as to what the Court actually held cannot serve as a basis for interlocutory appeal. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 5671544, at *3 (S.D.N.Y. Sept. 1, 2023) (denying § 1292(b) certification where defendant mischaracterized underlying order's holding); *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 594 (S.D.N.Y. 2009) (same).

*Second*, Defendants' Motion presents no controlling issue of law, as Defendants misstate the law, incorrectly asserting that Plaintiffs had to but did "not allege that Defendants intended to bring about the attack that injured Plaintiffs" or "any act of terrorism." Mot. at 4, 5; *see also id*. at 6 (as to the FAC's allegations purportedly being lacking). No such requirement exists.

Neither the ATA nor *Twitter* requires that a defendant must specifically intend to bring about the terrorist attack that injured a plaintiff. Under *Twitter*, a routine services provider is culpable if it provides routine services "***in an unusual way***" or "***provides such dangerous wares*** that selling those goods to a terrorist group could constitute aiding and abetting a foreseeable terrorist attack." *Twitter*, 598 U.S. at 502. In such circumstances, "a close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, ***but even more remote support can still constitute aiding and abetting in the right case***." *Id*. at 496.

The Court correctly recognized that an ATA defendant's knowing and substantial assistance is <u>not</u> required as to "***the specific terrorist act that caused the plaintiffs' injuries*** . . . ." Order at 67-68. Citing *Twitter*, the Court correctly concluded that Plaintiffs "have alleged that the defendants provided services that might otherwise be considered routine – cryptocurrency transaction services ***– in an 'unusual way' – designed to evade government detection and regulation***" such that even remote support could give rise to aiding and abetting liability. Order at 66. Additionally, the Court correctly applied *Twitter*'s ruling on foreseeability, stating that "***the defendant need not have known 'all particulars of the primary actor's plan … a defendant who aids and abets a tort can be held liable for other torts that were 'a foreseeable risk' of the intended tort***." *Id.* at 56 (quoting 598 U.S. at 496). Accordingly, under the Court's correct interpretation of the law, Defendants' provision of "financial services that intentionally circumvented anti-terrorist-financing regulations, offered such dangerous wares that ***selling those***

***goods could constitute aiding and abetting a foreseeable terrorist attack***." *Id.* at 66. And because the Attacks were a foreseeable consequence of Defendants' "***alleged widespread, intentional circumvention of anti-terror financing regulations, considered with the defendants' purported knowledge that Hamas and PIJ were transacting on the Binance platform***," the Court correctly concluded that Defendants consciously and culpably participated even though their participation was "***not directly targeted at the October 7, 2023 attacks in particular* . . .**" Order at 69-70.

To that effect, the Court cited two post-*Twitter* decisions, *King* and *Bonacasa*, as examples of ATA cases in which the plaintiffs had stated cognizable aiding and abetting claims, notwithstanding that the claims were <u>not</u> "closely linked to the specific terrorist act that caused the plaintiffs' injuries." Order at 67-68; *see also King v. Habib Bank Ltd.*, 2023 WL 8355359, at *3 (S.D.N.Y. Dec. 1, 2023) (recognizing that where a "provider of routine services 'does so in an unusual way,' those actions might well constitute aiding and abetting a foreseeable terrorist attack."); *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *9  (S.D.N.Y. Oct. 27, 2023) (recognizing that *Twitter* "does not always demand a strict nexus between the alleged assistance and the terrorist act … this requirement can be satisfied even where the defendant did not intentionally aid the specific terrorist attack itself."). Another recent post-*Twitter* decision, *Bartlett*, holds accordingly. *See Bartlett v. Societe Generale de Banque au Liban SAL*, 19-cv-00007, ECF 434 at 10-11 (S.D.N.Y. Sept. 18, 2024) (rejecting argument that "nexus" required intent to further terrorist attack where defendants provided otherwise routine financial services but did so for terrorist affiliates). Accordingly, Defendants' purported "controlling question of law" is actually a misstatement of law that, as such, cannot serve as a basis for § 1292(b) certification.

*Third*, Defendants fail to raise a pure question of law, as the question that Defendants seek to certify turns on the Court's "assessment of the pleadings" and as such "is not a pure question of

law suited for interlocutory appeal." *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018). Whether the "allegations in the complaint are sufficient … is not a controlling question of law but rather the application of the facts … to the question of law." *Dorce v. City of New York*, 2022 WL 3133063, at *1 (S.D.N.Y. July 18, 2022) (Koeltl, J.).

And this assessment of the FAC's allegations is exactly what the Court did in determining that Plaintiffs had sufficiently pled their aiding and abetting claim under *Twitter*. The Court explicitly stated that *Twitter* "instructed that determining whether the defendant provided knowing and substantial assistance ***called for the balancing of 'the nature and amount of the assistance on the one hand and the defendant's scienter on the other.'***" Order at 55. And in finding a definable nexus here, the Court conducted this very balancing based on the facts alleged. *See* Order at 63-64 (factual bases for Defendants' failure to act and Defendants' knowledge of terrorists-associated transactions); *id.* at 64-66 (factual bases for Defendants' affirmative acts that enabled terrorists). Because the Order resulted from the Court's application of law to facts, Defendants' challenge thereto is the "antithesis of a proper Section 1292(b) appeal," warranting denial of Defendants' Motion. *Prevezon Holdings Ltd.*, 2016 WL 187936, at *2 ("whether requested appeal that involves a highly fact-specific application of law may not be appropriate under 1292(b)"); *see also Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, 2025 WL 622546, at *6 (E.D.N.Y. Feb. 26, 2025) (denying certification because § 1292(b) motion concerned issue of court's application of *Twitter*); *Dorce*, 2022 WL 3133063, at *1 ("Whether the factual allegations in the complaint are sufficient under [pleading standard] is not a controlling question of law but rather the application of the facts … to the question of law.").

Defendants maintain that their purported issue of law is appropriate for interlocutory appeal because there is no Second Circuit decision applying *Twitter* and that such a decision "would have

value for a large number of cases." Mot. at 7. Not so because, as the analysis of *Twitter*'s nexus and intent requirements necessitates applying the law to the case-specific facts alleged, a decision at this procedural stage via interlocutory appeal will not have precedential value for many cases. *See Merryman v. Citigroup, Inc.*, 2017 WL 129126, at *3 (S.D.N.Y. Jan. 6, 2017) ("Fact-based determinations rarely, if ever, will have precedential value for a large number of cases."); *Facebook*, 986 F. Supp. 2d 524, 538 (S.D.N.Y. 2014) (that facts were case-specific meant that interlocutory appeal would not have precedential value); *Multi Juice, S.A. v. Snapple Beverage Corp.*, 2003 WL 22000593, at *3 (S.D.N.Y. Aug. 20, 2003) (no precedential value for a large number of cases, because the court's determination "was based on a fact-specific analysis that would likely not apply in future cases.").

Moreover, as Defendants fail to identify the number of potentially affected cases, their assertion as to the purported precedential value of interlocutory appeal is entirely speculative and should be disregarded. *See S.E.C. v. Gruss*, 2012 WL 3306166, at *3 (S.D.N.Y. Aug. 13, 2012) (assertion that interlocutory appeal would have precedential value was "merely speculative" because movant did not provide "any quantification of how many pending cases could be impacted"; *FHJ 86 Partners v. Charter Oak Fire Ins. Co.*, 2010 WL 11712790, at *2 (S.D.N.Y. Oct. 5, 2010) (that interlocutory appeal could affect future cases was unpersuasive); *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001) (rejecting precedential value argument because of indeterminate number of pending cases).

Defendants also ignore that a Second Circuit decision on *Twitter* would not be a game-changer with massive precedential value, as *Twitter* itself stated that the ATA's aiding and abetting provisions could be distilled to "the same conceptual core" as the *Halberstam* factors. *See* Order at 55. Recent district court decisions from within the Second Circuit characterize *Twitter* as an

affirmation of "*Halberstam*'s common-law 'framework' as the primary guidepost for understanding the scope of [JASTA]." *Est. of Henkin*, 2025 WL 622546, at *3 (denying interlocutory appeal and recognizing that *Twitter* is in accord with *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) and *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021)); *see also Hakimyar v. Habib Bank Ltd.*, 2025 WL 605575, at *10 (S.D.N.Y. Feb. 25, 2025) (rejecting "argument that *Twitter* abrogates prior Second Circuit precedent"); *King v. Habib Bank Ltd.*, 2023 WL 8355359, at *2 (S.D.N.Y. Dec. 1, 2023) (the "holdings in *Twitter* largely align with the Second Circuit precedent") *motion to certify interlocutory appeal denied by King v. Habib Bank Ltd.*, 2024 WL 3761821, at *1 (S.D.N.Y. Jan. 2, 2024)); *see also* Section I.B (discussing post-*Twitter* Second Circuit case law aligning with *Twitter* and the Court's Order).

Additionally, and even if a Second Circuit decision would do as Defendants maintain (and it would not), a Second Circuit decision analyzing *Twitter* is forthcoming in *Wildman v. Deutsche Bank Aktiengesellschaft*, 23-132 (2d Cir.) ("*Wildman*"). And whereas Defendants suggest that the parties in *Wildman* did not contend with *Twitter*'s meaning and application (Mot. at 7, n.2), the *Wildman* parties' extensive briefing on the issue of knowing and substantial assistance under *Twitter* disproves Defendants' assertion. The *Wildman* appellees reference *Twitter* on nearly every page of their opposition brief. *See Wildman* ECF 115 at 3-5, 8, 19-44; *see also id.* at 46, 51, 54-55, 57, 65-66. Likewise as to the *Wildman* appellants in their reply brief. *See Wildman* ECF 145 at 1-2, 10-24. Briefing in *Wildman* has been complete since September 2023; the Second Circuit's decision is forthcoming. Accordingly, there is no need for an immediate interlocutory appeal here.

### B. Substantial Grounds For Difference Of Opinion Do Not Exist

The existence of substantial grounds for a difference of opinion is established when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first

impression for the Second Circuit." *In re Enron Corp.*, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007). A claim that a "***court's decision was incorrect***" is insufficient. *Aldana v. GameStop, Inc.*, 2024 WL 3104345, at *1 (S.D.N.Y. June 24, 2024)*. The "**mere presence of a disputed issue that is a question of first impression** . . . is insufficient to demonstrate a substantial ground for difference of opinion." *Flor*, 79 F.3d at 284. It is "not sufficient that the relevant case law is less than clear or allegedly not in accord, or that there is a strong disagreement among the parties." *Enron*, 2007 WL 2780394, at *1. A court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Flor*, 79 F.3d at 284.

For numerous reasons, Defendants fail to establish that substantial grounds for a difference of opinion exist. *First*, Defendants' assertions as to this factor are just re-arguments about *Twitter*'s meaning and the Court's application of *Twitter*'s definable nexus and intent elements (Mot. at 8-12), assertions which the Court already rejected and which Plaintiffs have set forth are incognizable under § 1292(b). *See* Section I.A. Likewise, Defendants repeat their litigated contentions that the FAC's allegations as to their deliberately defective KYC and AML protocols that flouted anti-terrorism financing law and their affirmatively providing financial services to Hamas and PIJ are purportedly incognizable under *Twitter* (Mot. 10-12) and that cryptocurrency is purportedly not a "dangerous ware." Mot. at 12. Setting aside the fact that these assertions are unavailing (*see* Section I.A; Plaintiffs' Brief in Opposition to Defendants' Motion for Reconsideration at Sections I.A-B), Defendants' mere assertion that a "court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005); *Prevezon Holdings Ltd.*, 2016 WL 187936, at *3 (recognizing that there must be "substantial doubt

12

that the district court's order was correct); *Estevez-Yalcin v. The Children's Vill.*, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006) ("substantial doubt" requires the movant to advance a meritorious argument that governing law relied upon was in error). Because Defendants "simply restate[] the same argument[s] the Court addressed and rejected," Defendants' Motion should be denied. *Doe Fund, Inc. v. Berkley Ins. Co.*, 2024 WL 4732771, at *1 (S.D.N.Y. Oct. 11, 2024).

*Second*, Defendants do not present an issue of first impression, as numerous district courts in the Second Circuit have already weighed in on *Twitter*'s nexus and intent requirements. The Court's Order identified two such post-*Twitter* decisions, *King* and *Bonacasa* (Order at 67-68), and another post-*Twitter* decision, *Zobay*, was referenced at oral argument. ECF 58-1 at 55:8. Likewise, the recent decision in *Bartlett* concerns these issues. 19-cv-00007, ECF 434 at 10-11. These decisions demonstrate that Defendants' question presented is not one of "first impression." *In re Kingdom of Belgium Fed. Pub. Serv. Fin. Pension Plan Litig.*, 2023 WL 6214806, at *2 (S.D.N.Y. Sept. 22, 2023) (Koeltl, J.) ("[I]f the silence of an appellate court were sufficient to satisfy the requirements of § 1292(b), then interlocutory appeals would be the norm, not the exception."). That the Second Circuit has not yet weighed in on *Twitter*'s sub-elements is irrelevant, as "the silence of an appellate court is not enough to satisfy section 1292(b)." *Garber*, 120 F. Supp. 3d at 338 (denying certification); *see also Murray v. UBS Sec., LLC*, 2014 WL 1316472, at *6 (S.D.N.Y. Apr. 1, 2014) (that the Second Circuit had not addressed issues was insufficient for first impression requirement).

And *third*, Defendants do not identify any conflicting authority on these issues, as these decisions are all in harmony with *Twitter*. *See King*, 2023 WL 8355359, at *2 ("However, the Court cautioned against overstating the nexus 'between the alleged assistance and the wrongful act.'") (quoting *Twitter*, 598 U.S. at 495)), *motion to certify appeal denied*, 2024 WL 3761821;

*Bonacasa*, 2023 WL 7110774, at *10 ("because Plaintiffs allege affirmative misfeasance, rather than merely passive nonfeasance, *Twitter* requires a much less significant showing of scienter and assistance, and it does not require as close a nexus between [defendant's] actions and the attacks against Plaintiffs' family members"); *Bartlett*, ECF 434 at 10-11 (rejecting "strict nexus" argument that required intent to further terrorist attack; recognizing possibility of remote support under *Twitter*; recognizing that knowingly providing financial services to terrorists constituted a "close nexus"); *Zobay* v. *MTN Group Ltd.*, 695 F. Supp. 3d 301, 345 (E.D.N.Y. 2023) ("Although a direct nexus would always support liability, 'even more remote support can still constitute aiding and abetting in the right case,' and defendants 'who aid and abet a tort can be held liable for other torts that were 'a foreseeable risk' of the intended tort.'") (quoting *Twitter*, 598 U.S. at 496); *see also* Section I.A (discussing *King*, *Bonacasa*, and *Bartlett*).

Notably, **Defendants fail to cite any contrary authority**. *See In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 2971480, at *4 (S.D.N.Y. Apr. 17, 2023) (party failed to cite any "decisions from other circuits" indicating that "a substantial basis ... for difference of opinion [exists]."). According, there is no substantial ground for difference of opinion here. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 174 F. Supp. 2d 4, 8 (S.D.N.Y. 2001) (requirement not found where decision was supported by other courts).

There is also no conflict among these decisions concerning *Twitter*'s flexible "definable nexus," 598 U.S. at 503, and the Court's Order regarding the nexus identified by Plaintiffs:

> While a close nexus between the defendants' alleged assistance and the attacks is lacking, the defendants' alleged widespread, intentional circumvention of anti-terror financing regulations, considered with the defendants' purported knowledge that Hamas and PIJ were transacting on the Binance platform, support the inference that the defendants' assistance was knowing. And the financial assistance allegedly provided was substantial, even if not directly targeted at the October 7, 2023 attacks in particular . . . . Therefore, the plaintiffs have alleged plausibly that the defendants knowingly and substantially assisted the October 7, 2023 attacks.

Order at 70. Because the Court's application of *Twitter* arose from its "balancing of 'the nature and amount of the assistance on the one hand and the defendant's scienter on the other'" (Order at 55, citing *Twitter*, 598 U.S. at 492-93), such a "fact-based" inquiry underscores why there is no substantial ground for difference of opinion. *Ret. Bd. of the Policemen's Annuity v. Bank of New York Mellon*, 2016 WL 2744831, at *2 (S.D.N.Y. May 9, 2016) (that court engaged in fact-intensive analysis demonstrated that certification was not warranted).

Defendants maintain that the Court "acknowledged that it was a close question" as to the Court's conclusion on Defendants' aiding and abetting. Mot. at 8. But the Court made no such acknowledgment; the Court stated that whether the FAC "sufficiently alleges knowing and substantial assistance is *a closer question*." Order at 61. In context, the Court explained that whether Plaintiffs sufficiently alleged Defendants' "knowing and substantial assistance" was a "closer question" than whether Plaintiffs had sufficiently alleged Defendants' general awareness. Order at 60-61. To that effect, the Court explicitly rejected Defendants' assertion that the FAC's allegations as to their knowing, deliberate misconduct did not satisfy *Twitter*'s nexus and intent requirements, calling Defendants' position "***breathtaking.***" ECF 58-1 at 23:2. But even if it were a close question (and it is not), the existence of a close question (standing alone) is not a basis for § 1292(b), as interlocutory appeal "is not intended . . . to provide early review of difficult rulings in hard cases." *Garber*, 120 F. Supp. 3d at 337; *see also Primavera Familienstiftung*, 139 F. Supp. 2d at 574 ("what is left are intellectually challenging issues arising in a difficult and complex litigation, but not a situation warranting certification of an interlocutory appeal under § 1292(b).").

Defendants also maintain, without citations in support, that *Twitter* overruled prior Second Circuit precedent such as *Kaplan*, 999 F.3d at 865 (finding irrelevant whether defendant was alleged to have "intentionally supported" FTO "in perpetrating the rocket attacks" at issue) and

*Honickman*, 6 F.4th at 499 (allegations of "knowing and substantial assistance to the actual injury-causing act . . . [are] unnecessary[.]"). Mot. at 8-9. This is wrong. The court in *King* rejected the same mistaken interpretation of *Twitter* advanced by Defendants based on pre-*Twitter* precedent. 2023 WL 8355359, at *2 ("the holdings in *Twitter* largely align with the Second Circuit precedent cited in *King I*", which included *Kaplan* and *Honickman*). Likewise, the court in *Bonacasa* rejected the argument "that *Twitter* set forth a "new standard" for aiding and abetting liability," affirming that *Twitter*'s nexus "requirement can be satisfied even where the defendant did not intentionally aid the specific terrorist *attack* itself." 2023 WL 7110774, at *9 (citing 598 U.S. at 496, 502).

Defendants also maintain that where "a nexus is lacking, *Twitter* imposes a more demanding intent requirement" and that the Court should have applied this higher threshold. Mot. at 9. Defendants' contention does not establish that there is a substantial ground for difference of opinion. Moreover, Defendants admit that where the defined nexus is not extremely close, liability may still be imposed where Plaintiffs show "culpable participation through ***intentional aid that substantially furthered the tort***." Mot. at 10 (quoting *Twitter*, 598 U.S. 506). Plaintiffs alleged not only a nexus but also Defendants' conscious and culpable participation through Defendants' affirmative misconduct and deliberate violations, which the Court confirmed. Order at 70.

Defendants also contend that the Court "erred in sustaining Plaintiffs' theory that 'knowingly providing financial services to terrorists' (Tr. 35:19-20) is sufficient" to state an aiding and abetting claim. Mot. at 13. Defendants' assertion is unavailing because the "mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *Aristocrat Leisure Ltd.*, 426 F. Supp. 2d at 129. And "a motion for certification may not be used to simply repeat arguments made in a motion to dismiss." *Manrique v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 2384170, at *4 (S.D.N.Y. July 1, 2022).

### C. Interlocutory Appeal Will Not Materially Advance The Case

Courts "place particular weight on … whether immediate appeal will materially advance the ultimate termination of the litigation." *Facebook*, 986 F. Supp. 2d at 531. Its purpose is to "avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996). Material advancement occurs when an appeal "promises to advance the time for trial or shorten the time required therefor." *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 2971480, at *4. This requirement is "closely connected" to "the question of whether there is a controlling issue of law[.]" *Primavera Familienstifung*, 139 F. Supp. 2d at 570. "The requirement that an immediate appeal must materially advance the termination of the litigation ***is strictly construed***." *Prevezon Holdings Ltd.*, 2016 WL 187936, at *4. To that effect, a court "***must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole***." *Platinum Partners Value Arbitrage Fund L.P.*, 2022 WL 4357548, at *4 (S.D.N.Y. Sept. 19, 2022).

For numerous reasons, the Court's certification of the Order will not materially advance this case. *First*, as the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6) . . . interlocutory appeals in the preliminary stages of litigation are regularly denied because a reversal at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." *King*, 2024 WL 3761821, at *1 (citing *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) and *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)). Here, if the Second Circuit reversed the Court's Order and dismissed Plaintiffs' aiding and abetting claim (and it should not), such an order would likely result in "a remand for repleading with possibilities of further interlocutory appeals after that." *Gottesman,* 268 F.2d at 195. In that scenario, Plaintiffs would replead, and Defendants would file another motion to dismiss, causing further delay to a merits consideration. *See Facebook*,

986 F. Supp. 2d at 533 ("interlocutory review is strictly reserved for exceptional cases and is especially rare in the early stages of litigation."); *Fogarazzo v. Lehman Bros.*, 2004 WL 1555136, at \*2 (S.D.N.Y. July 9, 2004) (denying certification because a reversal by the Second Circuit "would likely result in an amended complaint (and another motion to dismiss), further delaying the ultimate disposition of this case."). For this reason, Defendants' Motion "presents precisely the sort of situation which [the Second Circuit] … instructs district courts to refrain from certifying an interlocutory appeal." *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 58 (S.D.N.Y. 2002).

*Second*, the Court's certifying the Order would not materially advance this case, as it is "also possible that an interlocutory appeal would delay the onset of trial, which is reason enough to deny certification." *Garber*, 120 F. Supp. 3d at 338. Whereas Defendants maintain that an appeal would expedite the termination of this case, Defendants' assertion is entirely speculative; Defendants' assertion prevails "only if this Court's decision is reversed" – "if the Second Circuit affirms the Court's decision, or rather yet, declines to hear [Defendants'] appeal, the result will be that this action will have been unnecessarily delayed by the interlocutory appeal." *Murray*, 2014 WL 1316472, at \*7; *see also Westwood Pharms., Inc. v. Nat'l Fuel Gas Distribution Corp.*, 964 F.2d 85, 88 (2d Cir. 1992) (dismissing appeal under § 1292(b) because it was "not clear" that appeal would advance the termination of the litigation); *In re Belton*, 2016 WL 164620, at \*2 (S.D.N.Y. Jan. 12, 2016) (that the case would be materially advanced only if the Second Circuit reversed the order warranted denial of certification); *Methyl Tertiary Butyl Ether*, 174 F. Supp. 2d at 9 ("certification is inappropriate where it is unclear whether disposition of the certified issue would advance the ultimate termination of the case."). Moreover, Defendants' assertion of expedited termination by interlocutory appeal is so generalized as to be unavailing, as their

assertion "could be applied to any array of judicial orders." *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, 2012 WL 1481510, at *2 (S.D.N.Y. Apr. 27, 2012).

And *third*, the Court's interlocutory appeal will not materially advance the case, as it is difficult for Plaintiffs to believe, notwithstanding the Court's thorough and well-reasoned Order and just one month later and with no intervening and exceptional circumstances affecting this case, that the Court would now be convinced that the Order's immediate appeal "will literally accelerate the action as a whole." *In re Pfizer Inc. Sec. Litig.*, 2008 WL 11389170, at *2 (S.D.N.Y. Sept. 4, 2008). Even if the Court were to grant certification, given the thoroughness and specificity of Plaintiffs' allegations and the soundness of this Court's application of *Twitter* and controlling Second Circuit authorities to those allegations, Defendants would likely lose their sought-after appeal, causing this case to be unnecessarily delayed. *See McNeil v. Aguilos*, 820 F. Supp. 77, 80 (S.D.N.Y. 1993) ("Since the chances are overwhelming that the [movant] would not prevail in an interlocutory appeal, certification would far more likely delay the case than hasten its disposition.").

## CONCLUSION

For all the reasons set forth herein, Defendants' Motion should be denied.

Dated: March 28, 2025
     New York, New York

*/s/ Jake Nachmani*
**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

*Attorneys for Plaintiffs*

**PERLES LAW FIRM, P.C.**
Steven R. Perles
(*pro hac vice motion to be filed*)
Joshua K. Perles
(*pro hac vice motion to be filed*)
Edward B. MacAllister
(*pro hac vice*)
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Section III-D of the Individual Practices of Judge John G. Koeltl, Plaintiffs have complied with all of the formatting rules contained therein. The total number of words contained herein, exclusive of the cover page, certificate of compliance, table of contents, and table of authorities is 6181 words.

Dated: March 28, 2025

*/s/ Jake Nachmani*
**SEIDEN LAW LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686


**PERLES LAW FIRM, P.C.**

Steven R. Perles
(*pro hac vice motion to be filed*)
Joshua K. Perles
(*pro hac vice motion to be filed*)
Edward B. MacAllister
(*pro hac vice*)
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*