UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH RAANAN *et al.*,<br><br>                            Plaintiffs,<br><br>  - v. -<br><br>BINANCE HOLDINGS LIMITED and<br>CHANGPENG ZHAO,<br><br>                            Defendants. | Civil Action Case No.<br>24 Civ. 00697 (JGK)<br><br>ORAL ARGUMENT<br>REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY
25, 2025 ORDER**

                                              CAHILL GORDON & REINDEL LLP
                                              Samson A. Enzer
                                              Anirudh Bansal
                                              Sesi Garimella
                                              32 Old Slip
                                              New York, NY 10005
                                              (212) 701-3125

                                              *Attorneys for Binance Holdings Limited*


                                              **BAKER & HOSTETLER LLP**
                                              Teresa Goody Guillén (*pro hac vice*)
                                              Marco Molina
                                              Joanna F. Wasick
                                              45 Rockefeller Plaza
                                              New York, NY 10111
                                              (212) 589-4200

                                              *Attorneys for Changpeng Zhao*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    THE ORDER DID NOT CONSIDER FUNDAMENTAL ASPECTS OF *TWITTER* OR PLAINTIFFS' CONCESSION THAT THEY HAVE NOT ALLEGED THE REQUISITE INTENT. ............................................................................................... 1

    II.    THE COURT SHOULD VACATE ITS GRANT OF JURISDICTIONAL DISCOVERY ................................................................................................................ 3

CONCLUSION .............................................................................................................................. 6

# **TABLE OF AUTHORITIES**

**Cases**

*Bristol-Myers Squibb Co.* v. *Superior Ct. of California, San Francisco Cnty.*,
　582 U.S. 255 (2017)..................................................................................................................4

*Dennis* v. *JPMorgan Chase & Co.*,
　343 F. Supp. 3d 122 (S.D.N.Y. 2018).......................................................................................6

*Freeman* v. *HSBC Holdings PLC*,
　57 F.4th 66 (2d Cir. 2023) ........................................................................................................3

*Halberstam* v. *Welch*,
　705 F.2d 472 (D.C. Cir. 1983)..................................................................................................3

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
　732 F.3d 161 (2d Cir. 2013)......................................................................................................4

*Nken* v. *Holder*,
　556 U.S. 418 (2009)..................................................................................................................6

*Shrader* v. *CSX Transp., Inc.*,
　70 F.3d 255 (2d Cir. 1995).....................................................................................................4, 5

*In re SSA Bonds Antitrust Litig.*,
　420 F. Supp. 3d 219 (S.D.N.Y. 2019).......................................................................................6

*Twitter, Inc.* v. *Taamneh*,
　598 U.S. 471 (2023)..........................................................................................................1, 2, 3

**Other Authorities**

CPLR § 302(a) ................................................................................................................................3

Fed. R. Civ. P. 4(k)(2).....................................................................................................................6

ii

**PRELIMINARY STATEMENT**[1]

As Defendants demonstrated in their Moving Brief, the February 25, 2025 Order erred by (1) failing to consider Defendants' undisputed lack of intent to further any act of terrorism (which when coupled with the lack of a close nexus, is fatal to Count One); and (2) granting jurisdictional discovery. In their Opposition brief (ECF No. 66 ("Opp.")), Plaintiffs suggest that the Court *must* have applied the proper aiding-and-abetting standard since it did not dismiss Count One (*id.* at 4-12). But if this illogical position were accepted, no ruling could be reconsidered. And Plaintiffs' arguments on personal jurisdiction (*id.* at 13-20) only confirm why granting jurisdictional discovery was inappropriate, particularly in the absence of briefing on the issue.

**ARGUMENT**

**I. THE ORDER DID NOT CONSIDER FUNDAMENTAL ASPECTS OF *TWITTER* OR PLAINTIFFS' CONCESSION THAT THEY HAVE NOT ALLEGED THE REQUISITE INTENT.**

The Order did not consider (nor even acknowledge) Plaintiffs' concession that the AC fails to allege Defendants intended to bring about ***any*** attack. (Tr. (ECF No. 63-1) at 35:17-20). Paired with the Court's finding that a close nexus between Defendants' conduct and the Attacks was lacking, this requires the dismissal of Plaintiffs' JASTA claim. *Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 503 (2023).

*Twitter* made clear that the JASTA aiding-and-abetting analysis—with respect to both nexus and intent—must focus on the specific attack that injured Plaintiffs, *id.* at 503 ("The focus thus must remain on the [specific] attack[.]"); and held that the "failure to allege any definable

---

[1] Capitalized terms not defined herein have the meanings assigned in Defendants' Moving Brief (ECF No. 58). Unless noted, emphases are added and citations are omitted.

nexus between the defendants' assistance and the attack therefore—at minimum—***drastically increases*** [plaintiffs'] burden to show that defendants somehow consciously and culpably assisted the attack." *Id.*; *see also id.* at 498 (no aiding-and-abetting claim where no plausible allegations that defendants "culpably associated [themselves] with" the Attack or "participate[d] in it as something that they wishe[d] to bring about[.]").

Plaintiffs continue to rely on allegations that Defendants failed to prevent terrorists from accessing the Binance exchange (Opp. at 4-6), and point to portions of the Court's Order that discussed AML duties and alleged actions taken to evade them. (*Id.* at 6-7). Such allegations do not establish "a connection or link"[2] to the ***October 7 Attack***, and instead, at most, allege assistance to FTOs in general, which *Twitter* explicitly held is insufficient. 598 U.S. at 495. Accordingly, the allegations on which Plaintiffs rely, at best, "drastically increase" their burden to plead a specific intent to further the Attacks, which they conceded the AC does not do. *Id.* at 503.

Plaintiffs also argue that neither a definable nexus, nor specific intent to further the principal's tort, are required to state an aiding-and-abetting claim. (Opp. at 7, 10). But this misunderstands *Twitter*'s "sliding scale" standard for nexus and intent, which requires an intent to further the specific attack where—as here—there is no definable nexus between the Defendants' conduct and the Attacks. The Order did not apply that sliding scale: it found that a "close nexus" was "lacking" (Order at 70), but did not acknowledge Defendants' undisputed lack of intent to further ***any*** act of terrorism, which should have been fatal to Count One.

And while there may be exceptions where the alleged assistance begins to "blur" with conspiracy liability, 598 U.S. at 496, 501, or involves services offered in an "unusual way" or

---

[2] "Nexus," Black's Law Dictionary (12th ed. 2024).

inherently "dangerous wares," *id*. at 502, these exceptions are inapplicable here. (Moving Br. at 6-8). Even if Plaintiffs could plausibly allege otherwise—which they cannot—allegations of intent would still be required, and they are utterly lacking here. *See Twitter*, 598 U.S. at 502 (where plaintiffs allege that defendant offered "dangerous wares" or "unusual" services, "plaintiffs *might* be able to establish liability with a *lesser* showing of scienter"); *see also Freeman* v. *HSBC Holdings PLC*, 57 F.4th 66, 80 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023) (JASTA conspiracy requires "common *intent*").[3] Accordingly, Plaintiffs' suggestion that "specific intent to further a primary actor's tort is not required" (Opp. at 10) is simply wrong.

## II. THE COURT SHOULD VACATE ITS GRANT OF JURISDICTIONAL DISCOVERY.

Plaintiffs' Opposition confirms (at 13-18) that reconsideration of the Order's grant of jurisdictional discovery is warranted. Plaintiffs argue that "the issue of the sufficiency of Plaintiffs' CPLR 302(a) allegations has already been thoroughly litigated." (Opp. at 13). But

---

[3] *Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983) is in accord. That case involved a two-person stolen goods operation, in which Welch obtained the goods while Hamilton provided "invaluable service to the enterprise as banker, bookkeeper, recordkeeper, and secretary" and had an "intent and desire to make the venture succeed[.]" *Id.* at 487, 488. Because Welch's murder of Halberstam was a "foreseeable consequence" of this enterprise, Hamilton was deemed liable as both a coconspirator and aider-and-abetter, given the close nexus between her assistance and the underlying tort, and her intent to make it succeed. *Id.* Neither of these factors is present here.

3

Defendants do not seek reconsideration on that "issue" because Defendants *prevailed* on it. (Order at 10-13).

Rather, Defendants seek reconsideration on the issue of jurisdictional discovery, which was not part of the motion-to-dismiss briefing. Plaintiffs' motion-to-dismiss Opposition stated that they might seek jurisdictional discovery in the *future*. (ECF No. 24 at 22 n.7). Plaintiffs later filed a letter motion for jurisdictional discovery, (ECF No. 30), but Magistrate Judge Moses denied it as premature, (ECF No. 35), and it does not appear that that briefing informed the Order. (*See* Order at 13). Fulsome briefing on jurisdictional discovery did not occur until now, which confirms this is no "do-over." (Opp. at 1). Plaintiffs note an exchange regarding jurisdictional discovery at the motion-to-dismiss hearing, (*see* ECF No. 63-1 at 28:18–30:24; Opp. at 16), but the Order does not address the arguments Defendants' counsel made in that exchange (Order at 13). It is thus fair for Defendants to ask whether the Order "overlooked" critical issues concerning jurisdictional discovery. *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The Order does not explain how discovery concerning "Binance's New York-based VIP customers" (Order at 13) could establish anything beyond "a loose and spurious form of general jurisdiction" over Binance, which the Supreme Court has rejected. *Bristol-Myers Squibb Co.* v. *Superior Ct. of California*, 582 U.S. 255, 264 (2017). The relevance of these customers to Defendant Changpeng Zhao is even more dubious. The Opposition also does not explain how discovery into whether Binance would "have collapsed but for Binance's New York business" could ever prove *specific* personal jurisdiction as to either Defendant. (Opp. at 17). New York's long-arm statute requires that "at least one element arise[] from the New York contacts," such as where financial transactions are "an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress[.]" *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161,

4

169, 171 (2d Cir. 2013).  Evidence that Binance required New York contacts to exist would not meet the governing standard as to Binance, much less to Mr. Zhao, because there is no suggestion that any of Defendants' "allegedly culpable conduct stems from" any of those New York contacts. *See id.*

Perhaps for this reason, Plaintiffs backtrack.  They defend the market-making theory (Opp. at 13-17), but then abruptly admit that "whether Binance would have 'collapsed entirely' without its New York business ***is not a controlling consideration***" (*id..* at 18) and acknowledge that New York contacts must have been a "critical component of the illicit scheme" (*id.*), which means a critical component of the Attack.[4]  Put differently, Plaintiffs display no confidence in the Order's rationale for granting jurisdictional discovery.

Plaintiffs attempt to support the Order by stating: "VIP users in New York ***may*** have acted as counterparties in transactions with Hamas and PIJ wallets[.]" (*Id*. at 18).  But the Order did not find that the AC alleged—or even made a sufficient start toward alleging—this assertion; it is a brand new theory that Plaintiffs have never before advanced. (*See* ECF No. 24 at 20-21; ECF No. 35 at 2).  And it is unsupportable.  The allegations cited in the Opposition (Opp. at 18 (citing ¶¶ 69, 155-57)) attempt to show that New York contacts made the Binance platform possible, but do not even hint that Binance's New York customers actually transacted with Hamas. (*Id.*). Moreover, Plaintiffs' new theory does not justify jurisdiction in this forum over Mr. Zhao, as it does not involve him.  By adding confusion and new information to these inquiries, Plaintiffs' Opposition only confirms that reconsideration is warranted.  *See Shrader*, 70 F.3d at 257.

---

[4] The Opposition suggests that the illicit scheme involves New York-based VIP customers, (Opp. at 16, 18), but that is not the illicit scheme in ***this*** case—it is the Attack by Hamas.

5

The Court should also consider the issue from a practical standpoint, given that the Order does not detail what discovery might prove, where it might come from, or what limits apply. While the Court has discretion (Opp. at 15), it must be "dependent upon the circumstances of the particular case" and "guided by sound legal principles." *Nken* v. *Holder*, 556 U.S. 418, 434 (2009). The Order does not fairly account for the governing standard or the facts of this highly complex litigation involving foreign parties. Discovery without guidance will be impracticable for all concerned. The best approach is for the Court to deny jurisdictional discovery altogether. *See Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 212 (S.D.N.Y. 2018) (denying jurisdictional discovery where plaintiffs "propose no actual plan for such discovery"); *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 241 (S.D.N.Y. 2019) (same where plaintiffs "have not presented evidence that leads to a colorable jurisdictional claim").

The Court should reconsider its Order and find that jurisdiction cannot lie in New York, at which point the parties should brief whether jurisdiction exists under Rule 4(k)(2). (*See* Opp. at 20). Because the Court previously deemed inquiries under Rule 4(k)(2) premature (*id.*; Order at 15 n.4) it would make little sense to confine future briefing to past arguments. Therefore, briefing should be permitted on all issues under Rule 4(k)(2), including Defendants' position that sufficient minimum contacts cannot be established with the United States.

## **CONCLUSION**

The Court should reconsider its Order and dismiss the AC in its entirety.

Date:  April 11, 2025
       New York, New York

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*


/s/ Teresa Goody Guillén
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

7

## **CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 6.3 and Paragraph III.D of the Individual Practices of Judge John G. Koeltl, Defendants have complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 1,744 words.

Date:   April 11, 2025

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

/s/ Teresa Goody Guillén
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*