UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH RAANAN *et al.*,<br><br>    Plaintiffs,<br><br>    - v. -<br><br>BINANCE HOLDINGS LIMITED and<br>CHANGPENG ZHAO,<br><br>    Defendants. | Civil Action Case No.<br><br>24 Civ. 00697 (JGK)<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO CERTIFY THE COURT'S FEBRUARY 25, 2025 ORDER
FOR INTERLOCUTORY APPEAL**

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*


BAKER & HOSTETLER LLP
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

   I.   THE QUESTION PRESENTED FOR APPEAL IS A PURE, CONTROLLING QUESTION OF LAW. ...................................................................................................... 2

   II.   THERE IS, AT A MINIMUM, A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE ISSUE PRESENTED. ..................................................................... 5

   III.   CERTIFYING THE ORDER FOR INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE THE LITIGATION BY TERMINATING IT. .................... 7

CONCLUSION ........................................................................................................................ 8

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Dorce* v. *City of New York*,
  2022 WL 3133063 (S.D.N.Y. July 18, 2022) ...........................................................................3

*Dupree* v. *Younger*,
  598 U.S. 729 (2023) ................................................................................................................3

*Hakimyar* v. *Habib Bank Ltd.*,
  2025 WL 605575 (S.D.N.Y. Feb. 25, 2025) ...........................................................................6

*Honickman* v. *BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) ...................................................................................................5, 6

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) ................................................................................................5, 6

*Krys* v. *Pigott*,
  749 F.3d 117 (2d Cir. 2014) ...................................................................................................7

*McBeth* v. *Porges*,
  171 F. Supp. 3d 216 (S.D.N.Y. 2016) ....................................................................................7

*McGraw-Hill Global Educational Holdings, LLC.* v. *Mathrani*,
  293 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................................3

*Mueller, II* v. *Deutsche Bank Aktiengesellschaft*,
  2025 WL 1019201 (S.D.N.Y. Apr. 4, 2025) ...........................................................................8

*Noto* v. *22nd Century Grp.*,
  35 F.4th 95 (2d Cir. 2022) ......................................................................................................8

*SEC* v. *Coinbase, Inc.*,
  2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) .............................................................................2, 4

*SEC* v. *Rio Tinto PLC*,
  2021 WL 1893165 (S.D.N.Y. May 11, 2021) .........................................................................7

*SEC* v. *Ripple Labs., Inc.*,
  697 F. Supp. 3d 126 (S.D.N.Y. 2023) ....................................................................................4

*Twitter* v. *Taamneh*,
  598 U.S. 471 (2023) ...................................................................................................... *passim*

*United States* v. *Dupree*,
    2016 WL 10703796 (E.D.N.Y. Aug. 29, 2016)..................................................................6

*United States* v. *Prevezon Holdings Ltd.*,
    2016 WL 187936 (S.D.N.Y. Jan. 15, 2016) ...............................................................3

**Statutes**

28 U.S.C. § 1292(b) ..............................................................................................................2, 7

# PRELIMINARY STATEMENT[1]

Contrary to Plaintiffs' glib mischaracterization, Defendants are not seeking a "re-do." (*See* Plaintiffs' Opposition brief (ECF No. 67 ("Opp.") at 1). Rather, Defendants seek leave to appeal a controlling, purely legal question that, if Defendants prevail, would terminate this litigation: whether under controlling Supreme Court authority, a plaintiff can plead a JASTA aiding-and-abetting claim where the complaint (1) does not allege a "definable nexus" between the defendant's actions (or omissions) and the terrorist attack that injured the plaintiff, and (2) concededly does not allege the defendant intended to bring about the attack.

In their Opposition, Plaintiffs mischaracterize Defendants' position and the Order, understate the significance of the question presented for appeal, and overstate the procedural hurdles to certification. Plaintiffs argue, principally, that the Order should not be certified for interlocutory review because it does not involve a controlling or pure question of law (*id.* at 4-11), on which there is substantial ground for difference of opinion (*id.* at 11-16), and interlocutory appeal would not materially advance the case (*id.* at 17-19). Plaintiffs are wrong on all counts.

*First*, the question presented for interlocutory review is a controlling question of law, because no factual dispute need be resolved to conclude the AC fails to allege essential facts supporting the required nexus, and (as Plaintiffs have conceded) intent. *Second*, based on the strength of Defendants' arguments under *Twitter*, and the absence of any Second Circuit authority on the question presented, it can hardly be disputed that there are substantial grounds for difference of opinion. And *third*, an interlocutory appeal would materially advance this litigation because a

---

[1] Capitalized terms not defined herein have the meanings assigned in Defendants' Moving Brief (ECF No. 62). Unless noted, emphases are added and citations are omitted.

favorable decision from the Circuit—confirming that there can be no JASTA aiding-and-abetting claim where plaintiffs fail to allege a definable nexus, and concede a lack of intent to further an attack—would terminate this case.

<u>**ARGUMENT**</u>

## I. THE QUESTION PRESENTED FOR APPEAL IS A PURE, CONTROLLING QUESTION OF LAW.

The question presented for appeal—whether plaintiffs can state a JASTA aiding-and-abetting claim where they alleged neither (1) a definable nexus between Defendants' conduct and the attack that injured Plaintiffs, nor (2) that Defendants intended to further any act of terrorism—is a purely legal question, because it "would require only a limited universe of familiar legal texts to answer what is, at bottom, a matter of statutory interpretation." *See SEC* v. *Coinbase, Inc.*, 2025 WL 40782, at *7 (S.D.N.Y. Jan. 7, 2025). Plaintiffs counter that the Order did in fact find a sufficient nexus between Defendants' alleged omissions and the Attacks, relying on portions of the Order that quoted the AC's ***allegations***, in an attempt to cobble together a finding of nexus. (Opp. at 4-6). This may be ***Plaintiffs'*** analysis of their AC, but it is not that of the Court, which explicitly held that "a close nexus between the [D]efendants' alleged assistance and the attacks is lacking." (Order at 70). Nor can Plaintiffs use the Court's questions and comments at oral argument—which are ***not*** a part of the Order—to sidestep their explicit concession that the AC "***does not allege that the [D]efendants intended to bring about the October 7 attacks. It does not allege that the [D]efendants intended to bring about any act of terrorism.***" (Tr. (ECF No. 63-1) at 35:17-20).

Plaintiffs also argue that simply because the Order referenced some of the facts ***alleged in the AC*** in allowing Count One to proceed, the issue on appeal is not a pure question of law. (*See* Opp. at 4, 8). But Plaintiffs' suggestion that opinions applying law to facts—as virtually all

opinions do—are unappealable under Section 1292(b) is simply wrong, has no basis in the statute, and would essentially nullify this avenue for appeal.  As the Supreme Court has noted, a "purely legal issue[]" is one that "can be resolved without reference to any **disputed** facts."  *Dupree* v. *Younger*, 598 U.S. 729, 735 (2023).[2]  Here, the Circuit would not need to resolve any factual disputes since (1) this Court has already held that the AC does not plead a "close nexus" between Defendants' conduct and the Attack, and (2) Plaintiffs themselves acknowledge that they have not pled that Defendants intended to bring about any terrorist attacks.  The question presented is simply whether, under controlling Supreme Court authority, this is sufficient to state a JASTA aiding-and-abetting claim, which it is not.

---

[2] The cases on which Plaintiffs rely are inapposite.  *See, e.g.*, *United States* v. *Prevezon Holdings Ltd.*, 2016 WL 187936, at *2 (S.D.N.Y. Jan. 15, 2016) (denying request for interlocutory review of the "highly fact-specific" question of whether defense counsel should be disqualified); *McGraw-Hill Global Educational Holdings, LLC.* v. *Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018) (denying request for interlocutory review requiring a factually intensive analysis that would "necessarily require the Court of Appeals to delve into the record"); *Dorce* v. *City of New York*, 2022 WL 3133063, at *1 (S.D.N.Y. July 18, 2022) (Koeltl, J.) (denying certification where defendants simply disputed whether pleaded facts met an undisputed legal standard, so there was no "controlling question of law as to which there is a substantial difference of opinion"; here, in contrast, there is, at a minimum, (1) substantial disagreement over the requirements of *Twitter* and (2) no dispute as to the relevant facts, *i.e.*, that there was no "close nexus" between the Defendants' conduct and the Attacks, and that the AC did not plead Defendants intended to further the Attacks).

Judge Failla's recent decision in *Coinbase* makes clear that the question proposed for interlocutory appeal is in fact "purely legal" and immediately appealable. 2025 WL 40782, at *7. There, Judge Failla had denied Coinbase's motion for judgment on the pleadings, finding that the SEC had pled sufficient facts to plausibly allege that the digital assets identified in the complaint qualified as "investment contracts." *See id.* at *4. Even though this finding required "assessing economic realities" and "looking at the totality of the circumstances surrounding the offer of an investment contract, including the intentions and expectations of the parties at that time," Judge Failla certified her decision for interlocutory appeal. *Id.* at *2. Judge Failla acknowledged that she had applied the law to particular factual allegations—as this Court did in the Order—but nevertheless found interlocutory appeal warranted, explaining that her decision "effectively interpreted the meaning of investment contract, 15 U.S.C. § 77b(a)(1), through the lens of *Howey* and its progeny, based on the pleadings and without a factual record." *Id.* That is precisely what the Court did here: apply controlling law to the pleadings without a factual record. *Cf. Coinbase*, 2025 WL 40782, at *8 (distinguishing Judge Torres' order denying interlocutory appeal in *SEC* v. *Ripple Labs., Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023), where Judge Torres had "studied an extensive, heavily disputed factual record and detailed expert reports," and concluded on summary judgment that certain transactions were sales of securities, and that others were not).

Finally, in disputing that a decision from the Circuit will have great "value for a large number of cases," *Coinbase*, 2025 WL 40782, at *6, Plaintiffs nitpick that Defendants did not provide the precise number of pending cases that assert JASTA aiding-and-abetting claims. (Opp. at 10). Plaintiffs cite no requirement to do so, nor is there any, but since they ask, attached hereto as **Appendix A** is a list of ***26 cases*** pending in Second Circuit district courts that would likely benefit from an immediate decision on the question proposed for appeal.

## II. THERE IS, AT A MINIMUM, A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE ISSUE PRESENTED.

Plaintiffs argue that there is no substantial ground for difference of opinion concerning *Twitter*'s application, because *Twitter* merely reaffirms existing Second Circuit precedent. (*See* Opp. at 13-16). But this ignores the conflict between *Twitter* and the Circuit's prior ATA decisions.

*First*, *Twitter* undermines the Second Circuit's prior guidance on the nexus needed to meet the knowing and substantial assistance element. In *Honickman* v. *BLOM Bank SAL* (a pre-*Twitter* decision) the Circuit stated that "knowing and substantial assistance to the actual injury-causing act . . . is unnecessary." 6 F.4th 487, 599-600 (2d Cir. 2021). Similarly, in *Kaplan* v. *Lebanese Canadian Bank, SAL* (another pre-*Twitter* decision), the Circuit found it irrelevant to the "knowing and substantial assistance" analysis whether the defendant "intentionally supported the [FTO] in perpetrating the [specific] attacks" that injured plaintiffs. 999 F.3d 842, 864 (2d Cir. 2021). The Ninth Circuit took the same approach in *Twitter* v. *Taamneh*, 598 U.S. 471, 503 (2023) ("The Ninth Circuit framed the issue of substantial assistance as turning on ***defendants' assistance to ISIS' activities in general***"), and the Supreme Court expressly rejected this as error, *id.* at 495 ("***[T]he question is whether defendants gave substantial assistance to ISIS with respect to the Reina attack***. The focus thus must remain on the Reina attack; plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack therefore—at minimum— ***drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack.***").

*Second*, *Twitter* clarified JASTA's intent requirement by explaining that the "knowing" assistance element is separate and distinct from "general awareness." *Id.* at 503-04. This flatly contradicts—indeed it likely implicitly overrules—the Second Circuit's statement in *Honickman*

that the "knowing" assistance element "d[oes] not require [defendant] to know anything more . . . than what [it] knew for the general awareness element." 6 F.4th at 499-500; *see also Kaplan*, 999 F.3d at 864 ("knowledge component" is satisfied "[i]f the defendant knowingly—and not innocently or inadvertently—gave assistance . . . and if that assistance was substantial").

Plaintiffs also note that several district courts have issued decisions stating that *Twitter* is in accord with existing Second Circuit authority. (Opp. at 13). Respectfully, to the extent those courts continued to apply *Honickman*'s and *Kaplan*'s standards for nexus and intent in the wake of *Twitter*, they erred. Indeed, in one of the decisions relied on by Plaintiffs, Judge Schofield noted that unless and until the Second Circuit weighs in, she felt bound to continue applying *Honickman* and *Kaplan*. *Hakimyar* v. *Habib Bank Ltd.*, 2025 WL 605575, at *10 (S.D.N.Y. Feb. 25, 2025); *see also United States* v. *Dupree*, 2016 WL 10703796, at *4 (E.D.N.Y. Aug. 29, 2016) (determination of whether Second Circuit precedent has been overruled "should almost always be left to the Circuit to reconsider its prior decision"), *aff'd*, 767 F. App'x 181 (2d Cir. 2019).

Regardless of whether other district courts believe that *Twitter* can be reconciled with the Circuit's prior ATA authority (and it cannot), the Second Circuit's guidance on the subject is sorely needed. Faithfully applying *Twitter* here—where there are no plausible allegations of a direct nexus, and a conceded lack of intent to further an attack—requires dismissal of Plaintiffs' JASTA aiding-and-abetting claim before the matter proceeds further, not after it has concluded. 598 U.S. at 498 (dismissal required where plaintiffs cannot show that defendants "culpably associate[d themselves] with the [relevant] attack" or "participat[ed] in it as something that [they] ***wishe[d] to bring about***[.]") (second alteration added).

### III. CERTIFYING THE ORDER FOR INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE THE LITIGATION BY TERMINATING IT.

Plaintiffs argue that interlocutory appeal would not "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because if the Circuit reversed the Order and dismissed the AC, Plaintiffs would likely get an opportunity to replead.  (*See* Opp. at 17-19). Entirely apart from the perverse logic of allowing a deficient claim to proceed because it could in theory be amended, this argument only underscores why the Circuit should have the opportunity to weigh in now.  It would be far more efficient to know in the near-term whether the Circuit agrees that the AC fails to state an aiding-and-abetting claim in light of *Twitter*, rather than waiting until after protracted discovery, summary judgment, and trial, on what the Circuit will ultimately deem to be a deficient pleading.  *See SEC* v. *Rio Tinto PLC*, 2021 WL 1893165, at *3 (S.D.N.Y. May 11, 2021) ("The institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b).").

Nor is there a basis for Plaintiffs' assumption that they would be granted yet a third attempt to plead a sufficient JASTA claim.  *See, e.g.*, *McBeth* v. *Porges*, 171 F. Supp. 3d 216, 235 (S.D.N.Y. 2016) (Furman, J.) (denying leave to amend where "[p]laintiff already amended his complaint in an attempt to cure the deficiencies raised in [d]efendants' initial motion to dismiss [which] . . . underscore[d] the futility of further amendment").  This is primarily because "[l]eave to amend may properly be denied if the amendment would be futile."  *Krys* v. *Pigott*, 749 F.3d 117, 134 (2d Cir. 2014).

If (as Plaintiffs' argument on this point assumes) the Second Circuit rules that a complaint fails where it does not allege the intent to advance any terrorist attack, and alleges only an attenuated nexus between a defendant's conduct and an attack (as is clearly the case with AML failures that are not directed at supporting terrorism), there is no plausible allegation that has any

basis in fact that would be sufficient to state a claim. That is because Binance is an exchange that offers its services to over 100 million users worldwide, its services have no "definable nexus" to any terrorist attack, and Plaintiffs have not come close to identifying anything that could change that.[3] Nor could Plaintiffs plausibly backtrack on their explicit admission that they do not allege Defendants intended to further an attack. The AC's inadequacy is not merely a failure of pleading, it is the result of the actual facts not supporting liability under JASTA, and no amendment that has any basis in fact could change that. Nor have Plaintiffs even suggested what other facts they could plausibly plead to rescue the AC. *See Noto* v. *22nd Century Grp.*, 35 F.4th 95, 107 (2d Cir. 2022) ("denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured").

## CONCLUSION

For the reasons stated above, Defendants respectfully submit that the Court should immediately certify for interlocutory appeal the portion of its Order that sustained Count One.

---

[3] A recent decision by Judge Cote is in accord. In dismissing claims against Deutsche Bank under the Trafficking Victims Protection Reauthorization Act, Judge Cote referenced the ATA and stressed that "even if other regulations require financial institutions to maintain certain controls to detect or prevent money laundering or terrorism financing, the TVPRA itself does not require a company providing generally available services to investigate its customers to ensure they are not indirectly connected to trafficking." *See Mueller, II* v. *Deutsche Bank Aktiengesellschaft*, 2025 WL 1019201, at *6-7 (S.D.N.Y. Apr. 4, 2025). Accordingly, Judge Cote dismissed claims where plaintiffs alleged that the banks offered "routine financial services" to customers allegedly connected to FTOs, but did not provide "tailored" services or support to them. *Id.* at *6.

Date:   April 11, 2025
        New York, New York

/s/ Samson A. Enzer
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*


/s/ Teresa Goody Guillén
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*

9

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph III.D of the Individual Practices of Judge John G. Koeltl, Defendants have complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 2,516 words.

Date:   April 11, 2025

*/s/ Samson A. Enzer*
**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

*/s/ Teresa Goody Guillén*
**BAKER & HOSTETLER LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*