June 24, 2025

**VIA ECF**

The Honorable Judge Barbara C. Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> Re:     ***Raanan, et al.* v. *Binance Holdings Limited, et. al.*,**
> **No. 24 Civ. 00697 (JGK) (BCM)**

Dear Judge Moses:

Pursuant to the Court's Order of May 30, 2025 (ECF No. 74, the "May 30 Order"), the Parties respectfully submit this joint letter to update the Court on the status of jurisdictional discovery, the anticipated schedule within which such discovery will be completed, and whether and when a pretrial scheduling order should be entered pursuant to Fed. R. Civ. P. 16(b). May 30 Order at 2. The Parties' positions are set forth below.

### *Plaintiffs' Position*

Although nearly four months have elapsed since the Court granted jurisdictional discovery, to date Defendants have: (i) not produced a single document; (ii) not identified a single document they can or will produce; (iii) not provided Plaintiffs with any information about what documents or information sources they have or how they are stored; (iv) not set forth with any specificity the bases for their refusal to produce documents, as required by Rule 34; and (v) on purported privilege grounds, even refused to state whether Defense counsel has discussed the discovery requests with their clients. Plaintiffs are therefore not currently able to provide the Court with an anticipated schedule for the completion of discovery or to identify an appropriate time for entry of a scheduling order pursuant to Rule 16(b). However, Plaintiffs do anticipate filing a motion to compel in the near term.

As Plaintiffs have alleged, Defendants enabled the terrorist groups that perpetrated the October 7 attacks (the "Attacks"), knowingly and substantially providing financial assistance to them by giving them unfettered access to Defendants' international cryptocurrency exchange, Binance.com, on which the terrorist groups conducted tens of millions of dollars in transactions before the Attacks. Also as Plaintiffs alleged, Defendants' ability to provide financial services to the terrorist groups was made possible in large part by Defendants' illicit retention of certain market makers and other high-volume U.S. trading customers that Defendants termed "VIPs" on the platform. Those VIPs provided necessary liquidity for the Binance.com platform, such that in 2019, when Defendants created a U.S.-based exchange that would comply with U.S. anti-money laundering laws, Defendants secretly maintained these VIPs on the international platform—in violation of U.S. law—and misled U.S. regulators about it. The important role of these VIPs should not be in dispute, as Defendants pled guilty to charges stemming from this misconduct, entered

into related settlements with multiple U.S. regulators, and paid more than $4 billion in fines. The guilty plea and the settlement documents contain facts detailing the VIPs' role.

As relevant here, Defendants' settlement with the CFTC identifies that certain VIP customers are located in New York and Chicago—the two main U.S. financial centers. Plaintiffs alleged that the important liquidity-providing role of the New York-based VIPs on the international platform, combined with the fact that Defendants deceived U.S. regulators by secretly retaining these New York-based VIPs on the platform, give rise to long-arm jurisdiction under CPLR 302(a). The settlement documents as well as a lawsuit filed by the SEC also describe market making activity on the international platform performed by certain entities owned by Defendant Zhao. Those entities maintained bank accounts at Signature Bank in New York; large transactions in those accounts with Binance-owned accounts are detailed in the SEC's legal filings. Plaintiffs have similarly alleged that these entities' New York bank activities give rise to long-arm jurisdiction in New York.

In its February 25, 2025 Order granting jurisdictional discovery (ECF 53, "Order"), the Court noted that "the relationship between Binance's alleged circumvention of regulatory requirements involving its New York customers and Binance's similar alleged misconduct involving FTOs is not apparent from the Amended Complaint's allegations." Order at 11-12. The Court similarly noted that "the link between the defendants' alleged New York-based transactions and the wrongs alleged by the plaintiffs is not as evident, at least on these allegations." *Id.* at 12 n3. Notably though, because Plaintiffs had made a "sufficient start" towards establishing jurisdiction based on these dual categories of allegations, the Court ordered jurisdictional discovery as to them. *Id.* at 13. To that effect and for example, the Court stated that jurisdictional discovery "may clarify the character and extent of the connection, if any, between the alleged market-making activities of Binance's New York-based VIP customers and Binance's ability to provide financial services to Hamas and PIJ." *Id.*

Pursuant to the Court's March 12, 2025 Order (ECF 60), on April 2, 2025, Plaintiffs served Defendants with a set of jurisdictional discovery requests. Exhibit A (the "RFP"). The RFP's requests are narrowly tailored to Plaintiffs' two theories of jurisdiction, seeking: (i) information regarding the identities of the VIPs, their physical addresses, IP addresses from which they accessed the Binance platform, their trading volume, and documents concerning Binance's reasons for maintaining them on the international platform; and (ii) information regarding the identity of Zhao's entities that maintained accounts at Signature Bank, copies of bank statements, any contracts between those entities and Binance, and documents sufficient to show the role of funds held at Signature Bank in Binance's trading activities. Many of these requests are styled as requests for documents "sufficient to show"; virtually all of them are seeking documents and information that were likely previously produced to the U.S. government during its years-long investigation of Defendants.

Defendants served their responses on May 2, 2025. Exhibits B and C. Both sets are virtually identical and make the same boilerplate relevance objections to each request, with Binance objecting that each request "seeks documents that are beyond the permissible scope of jurisdictional discovery as so limited by the Court's order" (*e.g.* Exhibit B at 2, 6-20.) and Zhao

objecting to each request "to the extent that it seeks documents that are beyond the permissible scope of jurisdictional discovery as so limited by the Order." (*E.g.*, Exhibit C at 5-23.). Neither set of objections explains why or which part of any particular request is allegedly "beyond the permissible scope." Both Defendants stated that in light of their objections, they "will not respond to the RFP as written." In other words, ***Defendants committed to producing no documents***. Instead, Defendants agreed to meet and confer.

By their objections, Defendants violated Rule 34, which requires that litigants "state with specificity the grounds for objecting to the request, including the reasons" and "state whether any responsive materials are being withheld on the basis of that objection." *See also Freydl v. Meringolo*, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011) ("[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy while producing no documents … are a paradigm of discovery abuse."); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence ... are improper unless based on particularized facts."). Plaintiffs nevertheless proceeded to meet and confer in order to ascertain what Defendants' actual objections were and to identify any documents or information that would be produced.

The parties met and conferred three times – on May 20, May 28, and June 20, 2025. These calls were not productive due to the unreasonable demands made by Defendants' counsel. For example, Defendants' counsel spent much of each meeting demanding that Plaintiffs provide more clarity on the term "VIP"—a term of art used by ***Defendants***—and demanding that Plaintiffs provide Defendants with a "comfort letter" or similar representation, by which Plaintiffs would purport to agree in advance to an overarching limitation on any jurisdictional discovery. Defense counsel referred to this as a "gating issue" and refused to produce ***any*** documents until Plaintiffs did so. To the extent that each request was discussed, Defendants could not identify any responsive information with specificity regarding the VIP-related requests that, according to Defendants, was purportedly outside the scope of jurisdictional discovery other than Request 4, which seeks documents concerning Binance's decision to maintain the VIPs on the international platform. Even though Plaintiffs allege the decision was made because these VIPs' large trading volume was necessary for the international platform to function, Defense counsel stated this was purportedly outside the scope and demonstrative of a "fishing expedition." Plaintiffs' counsel repeatedly asked about what, if any, responsive information Defendants had in their possession, custody, or control (including as part of prior productions to the government) and how it was maintained. Defendants' counsel either could not or would not answer those questions with respect to any request. On the May 28 meet and confer, Defendants' counsel further indicated that Defendants do not consider any requests concerning the Zhao entities and Signature Bank to be within the scope of jurisdictional discovery.

Following each meet and confer, Plaintiffs sent Defendants email correspondence by which Plaintiffs declined to provide the demanded "comfort letter," reminded Defendants of their obligations under Rule 34, and requested that Defense counsel speak with their clients regarding the RFPs, such that the parties could have a productive discussion about what documents or information existed and could be produced. Exhibit D. Plaintiffs also memorialized their understanding of Defendants' specific objections following the May 28 meet and confer because

Defendants refused Plaintiffs' repeated request to amend their responses and objections to comply with Rule 34. Exhibit D at 3, 4, 6. Defendants responded that Plaintiffs' understanding of their objections was incorrect but again declined to specify the basis of any objections. *Id.* Defendants agreed to continue meeting and conferring with respect to five Requests pertaining to the VIPs, Nos. 1-3 and 9 and 10. Plaintiffs requested again that prior to any future meet and confer, Defense counsel obtain meaningful information from their clients regarding what responsive documents and information Defendants had in their possession, custody, and control, how such documents or information was maintained, and whether such documents or information had been previously produced to the government. Exhibit D at 6-7.

Notwithstanding this request and on a subsequent meet and confer held on June 20, 2025, Defense counsel was once again unprepared to provide ***any*** information about what responsive documents and information their clients might have. Moreover and for the first time, Binance's counsel questioned why any VIP's identity was relevant. When Plaintiffs' counsel asked whether Defense counsel had spoken with their clients or with their clients' counsel in the U.S. regulatory and criminal matters, both Defendants' counsel refused to answer on purported privilege grounds. Once again, Defendants counsel refused to represent that Defendants would produce any document and likewise provided no information regarding whether any such documents exist.

Defendants have no legitimate basis to assert sweeping, boilerplate objections to all of Plaintiffs' requests or to not produce any documents. *See Finkelstein v. Bical*, 2023 WL 9119575, at *1–3 (E.D.N.Y. Dec. 14, 2023) ("What [Defendant] cannot do under the current Rules framework is use the overbreadth objection to produce nothing at all … A proper response would have been to indicate a scope of documents that [he] would produce, state that other documents exist, but would be withheld on the basis of the burden of collecting and producing those documents."). Defense counsel was also obligated months ago to confer with their clients and inform themselves regarding what responsive documents and information exist. *See id.* ("A lawyer's obligation is to interrogate a client's documents and then cogently respond on the basis of that acquired knowledge.").

Defendants have proposed yet another meet and confer, which is currently scheduled for July 2, 2025. Based on Defendants' conduct to date, Plaintiffs do not anticipate the next meet and confer to be any more productive than the prior ones. Indeed, the three prior meet and confers have proven to be a waste of time and resources. Plaintiffs believe that, absent a directive from this Court at the upcoming July 1, 2025 conference (or a significant change in Defendants' positions), motion practice will be forthcoming.

### Defendants' Position[1]

In his Order (ECF No. 53, the "February 25 Order"), Judge Koeltl held that while Plaintiffs had not adequately pled personal jurisdiction, limited jurisdictional discovery would be permitted:

---

[1] Defendants informed Plaintiffs that the Court's Individual Rule 1.D limits letters to 2000 words. While Defendants have limited our section of this letter in accordance with Individual Rule 1.D, and advised Plaintiffs of the Rule, Plaintiffs declined to do the same.

> Discovery may clarify the character and extent of the connection, if any, between the alleged market-making activities of Binance's New York-based VIP customers and Binance'[s] ability to provide financial services to Hamas and PIJ. Therefore, the plaintiffs may conduct limited jurisdictional discovery.

*Id.* at 13.

On April 2, 2025, Plaintiffs served Requests for Production Relating to Jurisdictional Discovery ("RFPs") on Defendants; Defendants responded and objected on May 2, 2025.  Not only are Plaintiffs' RFPs unreasonably broad—seeking six years' worth of documents and communications and four years of transaction data—they are largely untethered from the scope of jurisdictional discovery permitted by the February 25 Order.

First, whereas the February 25 Order limits jurisdictional discovery to information about *New York*-based VIP customers, Plaintiffs seek information about VIP customers *nationwide*, and in one instance, "all trades" on Binance.com.  *See* RFP Nos. 1 ("Documents sufficient to identify *all* Retained VIPs"); 2 ("Documents sufficient to show all physical addresses in Binance's records for each Retained VIP"); 3 ("Documents sufficient to show all IP and MAC addresses used to access the Binance Platform by each Retained VIP"); 9 ("Documents sufficient to show the trade volume of each Retained VIP as compared to the volume of all trades on the Binance Platform").

Second, many RFPs are not limited to VIP customers, but seek information about foreign entities allegedly owned or controlled by Defendant Zhao.  *See* RFP Nos. 14 ("Documents sufficient to identify every Person owned in whole or in part by Zhao"); 15 ("Signature Bank statements for all accounts of the customers identified in response to Request No. 14"); 17 ("All contracts between Binance and any Person identified in response to Request No. 14").

Third, most of the RFPs are wholly irrelevant to the claims and defenses in the matter.  For example, Plaintiffs seek information about Defendants' motivations for creating a VIP program (RFP No. 4 ("All Documents and Communications concerning the decision in the summer of 2019 to retain certain VIPs on the Binance Platform following the launch of the Binance.US exchange . . . .")) which has no bearing on whether New York-based VIP customers facilitated Defendants' ability to provide the services of which Plaintiffs complain.  The RFPs also seek technical information concerning the operation of BHL's exchange, but Plaintiffs can articulate no reason for why they need that information, except that it will help them formulate *additional requests*. *See* RFP Nos. 11 ("Documents sufficient to show the internal processes by which exchange and over-the-counter transactions of any kind are executed, processed and settled on the Binance Exchange); 12 ("Documents sufficient to show how exchange and over-the-counter transactions on the Binance Exchange are recorded in the ledgers, books and records of Binance"); 13 ("Documents sufficient to show how crypto to fiat transactions of any kind are processed, converted and reconciled on the Binance Platform . . .").

The Parties met and conferred about BHL's objections on May 20, 2025, May 28, 2025, and June 20, 2025.  In these meetings, Defendants have emphasized the limitations on the scope of jurisdictional discovery in the February 25 Order, and that Defendants will work with Plaintiffs to produce jurisdictional discovery that comports with that Order.

But Plaintiffs have persisted in their overbroad view of the scope of jurisdictional discovery, arguing discovery "should be guided by the allegations of the Amended Complaint, the issues that the Court identified in its Order, and the Court's analysis of these issues thereunder." ECF No. 56 (March 11, 2025 Joint Status Update Letter). In essence, then, Plaintiffs would prefer that jurisdictional discovery be "guided" by the allegations in their Amended Complaint, which are obviously much broader than what Judge Koeltl authorized. Plaintiffs, have refused to articulate a more specific theory of jurisdiction. In fact, during the Parties' May 28 meet and confer, when Defendants pointed out that so many of Plaintiffs' Requests are irrelevant to any theory of jurisdiction they had articulated, Plaintiffs said they could just amend their complaint to state a new theory of jurisdiction. By their own admission, Plaintiffs are on a fishing expedition to find *some* unarticulated theory of jurisdiction, and do not consider themselves limited by the February 25 Order, which of course they are.

Because the Parties have not agreed on the scope of jurisdictional discovery, we respectfully submit it would be unproductive to propose a schedule for the completion of such discovery at this time. Nonetheless, as we informed Plaintiffs, we are searching for information responsive to certain RFP (Nos. 1-3, 9-10) to the extent relevant to the question on which discovery is authorized, and we are willing to continue discussing with Plaintiffs responses to narrowed versions of these Requests that comport with the scope of jurisdictional discovery authorized by Judge Koeltl.

Similarly, we respectfully submit that it would be premature to enter a pretrial scheduling order under Federal Rule of Civil Procedure 16(b). This is consistent with Judge Koeltl's March 12, 2025 memo endorsement approving the Parties' joint proposal to stay merits discovery pending the outcome of jurisdictional discovery (ECF No. 60).

In terms of next steps, Defendants propose that the Parties continue to meet and confer to attempt to resolve their differences over the scope of jurisdictional discovery, and update the Court in 30 days.

Date: June 24, 2025

/s/ Jennifer Blecher
**Seiden Law LLP**
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

**Perles Law Firm, P.C.**
Steven R. Perles
Joshua K. Perles
Edward B. Macallister
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*

/s/ Anirudh Bansal
**Cahill Gordon & Reindel LLP**
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
Ivan Torres
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Binance Holdings Limited*

/s/ Marco Molina

**Baker & Hostetler LLP**
Teresa Goody Guillén (*pro hac vice*)
Marco Molina
Joanna F. Wasick
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

*Attorneys for Changpeng Zhao*