# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
JUDITH RAANAN *et al.,*  :
:
:
Plaintiffs,  :
:
: Case No: 1:24-cv-00697-JGK
-v-  :
:
:
BINANCE HOLDINGS LIMITED, and  :
CHANGPENG ZHAO,  :
:
:
Defendants.  :
:
---------------------------------------------------------------x

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
RELATING TO JURISDICTIONAL DISCOVERY TO ALL DEFENDANTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and this Court's February 25, 2025 Order granting jurisdictional discovery, Plaintiffs Judith Raanan, Natalie Raanan, Uri Raanan, R.M., Shakked Sarah Mathias, Shir Tziporah Mathias, Ilan Troen, Rachel Troen, Bar Yuval Shani, Aron Troen, Judah Troen, Abraham Troen, Oren Glisko, Liat Rasel Glisko, Y.G., Ori Glisko, Vered Benveniste, Yosef Benveniste, Chaya Benveniste, Rachel Ohnona, Jeffrey Ludmir, Adi Bosi, D.B, S.B., Deborah Ben Aderet, L.B., R.B., and Nevo Shoulian (collectively, "Plaintiffs") hereby demand that Defendants Binance Holdings Limited and Changpeng Zhao (collectively, "Defendants") produce for inspection and copying within 30 days the documents requested below that are in the possession, custody or control of Defendants at the offices of Seiden Law LLP, 322 Eighth Avenue, Suite 1200, New York, NY 10001.

## **DEFINITIONS**

The following Definitions shall apply to the individual document requests (referred to each individually as a "Request" and collectively as the "Requests") as well as the Definitions and Instructions herein:

1. The terms "Defendants," "You" and "Your" shall mean or refer to Defendants Binance Holdings Limited and Changpeng Zhao, together with any attorneys, agents, representatives, assigns, or other Persons (defined below) acting or purporting to act on their behalf, any non-U.S. affiliates, or any entities under their legal or practical control.

2. The term "Binance" shall mean or refer to Defendant Binance Holdings Limited together with any attorneys, agents, representatives, assigns, or other Persons (defined below) acting or purporting to act on its behalf, any non-U.S. affiliates, or any entities under its legal or practical control.

3. The term "Zhao" refers to Defendant Changpeng Zhao.

4. The terms "Person" or "Persons" or "Person(s)" shall mean any natural person, firm, organization, partnership, joint venture, proprietorship, association, organization, team, or any other form of entity.

5. The term "FinCEN Consent Order" shall refer to Binance's Consent Order with the U.S. Financial Crimes Enforcement Network, No. 2023-04.

6. The term "VIPs" shall mean the U.S. Enterprise Users in Binance's VIP Program as described in the FinCEN Consent Order. Examples of such VIPs are Trading Firms A, B and C as identified in the U.S. Commodity Futures Trading Commission's March 27, 2023 complaint in the District Court in the Northern District of Illinois captioned *Commodity Futures Trading Commission v. Zhao et al.*, Case No. 1:23-cv-01887, Docket No. 1, at ¶¶ 150-186.

7. The terms "Binance Platform," "Binance Exchange" and "Binance.com" shall refer to Binance's international platform accessible from the website Binance.com that is the subject of Binance's Consent Order with the U.S. Financial Crimes Enforcement Network, No. 2023-04.

8. The term "Retained VIPs" shall refer to the VIPs that Binance retained on the Binance Platform following the launch of the Binance.US exchange as described on pages 10-14 of the FinCEN Consent Order.

9. The term "SEC Complaint" shall refer to the June 5, 2023 complaint filed in the action in the District Court for the District of Columbia captioned *Securities and Exchange Commission v. Binance Holdings Ltd. et al.*, Case No. 1:23-cv-01599, Docket No. 1.

10. The term "Affidavit" shall refer to the June 5, 2023 Declaration of Sachin Verma filed with the SEC Complaint, Docket No. 21.

11. The term "Merit Peak" shall refer to Merit Peak Limited, the entity described at Paragraph 5 of the Affidavit.

12. The term "Key Vision" 'shall refer to Key Vision Development Limited, the entity described at Paragraph 5 of the Affidavit.

13. The term "Sigma Chain" shall refer to Sigma Chain AG, the entity described at Paragraph 5 of the Affidavit.

14. The terms "Communication" and "Communications" means every disclosure, transfer, exchange, or transmittal of information (in the form of facts, opinions, ideas, photographs, drawings, inquiries or otherwise) whether orally or by document or whether face-to-face, by telephone, telecopies, any form of video transmission, mail, email, facsimile, personal delivery, overnight delivery, computer transmission, text messages, iMessage, Facebook Messenger, WeChat, WhatsApp, and any other electronic communication form, mode, tool, application,

medium or otherwise.

15.  The terms "Document" and "Documents" are used with their customary broad meanings, are synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and thus include without limitation the following of which, whether printed, reproduced by any process, written and/or produced by hand: notes; correspondence; communications of any nature; memoranda; notebooks of any character; summaries and/or records of conversations; diaries; routing slips; reports; publications; photographs; minutes or records of meetings; transcripts of oral testimony and/or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and/or contracts, including all modifications and/or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts of, revisions of drafts of and/or translations of any document; audio and/or video tape recordings; printed out copies of computer files; documents stored in computer form, such as on a hard drive, disk, and/or memory; electronic data; mail; warranties; guarantees; blueprints; architectural plans; and specification materials. Any document with any marks on any sheet or side, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or notation of any character and not part of the original text or image, or any reproduction thereof is a separate document for the purposes of these Requests.

16.  The term "Electronic Data" means all information of all kinds maintained by electronic or computer processing systems including all non-identical copies of such information. Electronic Data includes, but is not limited to, computer programs (whether private, commercial, complete, or work-in-progress), programming notes or instructions, input and/or output used or produced by any program or utility (including electronic mail messages and all information

referencing or relating to such messages anywhere on the computer system), word processing Documents and all information stored in connection with such Documents, electronic spreadsheets, databases including all records, fields and structural information, charts, graphs and outlines, arrays of information, and all other information used or produced by any software, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said Electronic Data consists of an active file, deleted file or file fragment. Electronic Data includes any and all information stored in computer memories, hard disks, floppy disks, CD-ROM drives, USB drives, flash media devices of all types and their equivalent, magnetic tape of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal. The term Electronic Data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with the information described above.

17. The terms "any," "all," and "each" shall each be construed as encompassing any and all.

18. The term "reflecting" means relating to, concerning, regarding, referring to, reflecting or reflecting upon, discussing, analyzing, supporting, constituting, comprising, containing, including, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, or mentioning.

19. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might

otherwise be construed to be outside its scope.

20. As used herein, where appropriate, the singular includes the plural, the plural includes the singular, the masculine includes the feminine and non-binary, and the feminine includes the masculine and the non-binary.

21. The "Action" means this civil action, bearing the case number 1:24-cv-00697-JGK that is currently pending in the District Court for the Southern District of New York, captioned *Judith Ranaan et al. v. Binance Holdings Limited et al.*

22. The term "Relevant Period" refers to the time from July 14, 2017 to October 7, 2023.

23. All other words and phrases are to be given their standard English meaning and common definitions.

## INSTRUCTIONS

The following Instructions shall apply to the Requests below as well as the Definitions and Instructions herein:

1. These Requests shall be continuing, to the extent permitted by the Federal Rules of Civil Procedure and require You to provide supplemental responses which set forth any responsive information acquired or discovered by You following service of Your original responses to these Requests.

2. If You have any good faith objection to any Request or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a part of the Request shall be stated. If there is an objection to any part of a Request, then the part objected to should be Identified and responses, Documents responsive to the remaining unobjectionable part shall be produced.

3. Each Request shall be responded to separately and completely. The response shall specify which Documents are Responsive to which Request.

4. Each Request shall be responded to on the basis of Your entire knowledge, from all sources, after an appropriate and good faith inquiry has been made and a search has been conducted.

5. You are requested to produce all Documents and Communications in response to each Request set forth herein. You are requested to produce all responsive Documents and Communications in the custody, control, and possession of You, as defined above, or known to You, as well as in the custody, control, and possession of or known to Your counsel, employees, agents, servants, investigators, consultants and Representatives and, unless otherwise privileged, their counsel, employees, agents, servants, investigators, consultants and representatives.

6. These Requests include the original document and all copies that differ from the original in any respect, such as notations made on the copy. These Requests include any attachments, addenda, and/or exhibits to the documents responsive to said Requests. These Requests are also inclusive of all media of any nature that are now or at any time have been within Your care, custody, or control. If a responsive document is no longer in Your care, custody, or control, identify the document and its disposition.

7. Each Request shall be construed to include any Documents and things or information that are later discovered by You.

8. If You claim there is any ambiguity in any term in any Request, without waiver of Plaintiffs' right to seek a full and complete production in response to the Request, You shall assume a reasonable meaning, state what that assumed meaning is, and respond to the Request according to the assumed meaning.

9. For each Document produced pursuant to these Requests, include all additional Documents and information necessary to render the produced Document comprehensible and not misleading.

10. If any Document or Communication is withheld under any claim of privilege, including without limitation, attorney-client privilege and attorney work product, You should provide the following information with respect to such document:

   a. The dates (creating, transmitting, receiving, and deleting) of the document or communication;

   b. The title of the document or communication;

   c. The name and address of its author(s) or preparer(s) and the identification of each such person;

   d. The name of each Person who was went for furnished with, received ,viewed, or has custody of the document or communication or a copy thereof together with any identification of such Person;

   e. The Request to which the document or communication relates;

   f. The title and description of the document or communication sufficient to identify it without revealing the information for which privilege is claimed;

   g. A description of the subject matter of the document or communication in sufficient details to support Your contention that the document or communication is privileged.

11. You are instructed not to destroy, dispose of, erase, or "overwrite," any documents, communications, materials, or other tangible or intangible things identified in response to these Requests, including without limitation, information stored on computers or other electronic media.

In addition, if any documents or communications responsive to any of this discovery are subject to destruction under any document retention or destruction program, the documents and communications should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

12. For each document or communication that would be responsive to one of these Requests but has been destroyed, discarded, lost or otherwise disposed of, please furnish a list setting forth as to each document and communication:

   a. the type of document or communication;

   b. the general subject matter of the document or communication;

   c. the date, if any, which the document bears or communication occurs;

   d. the identity of the author(s) or preparer(s) of the document or the parties of the communication;

   e. the identity of the addressee(s) and of every other person who received, read, reviewed, or had access to the document or communication;

   f. where not apparent, the relationship of the author(s), addressee(s) and recipient(s) to each other and to Defendant;

   g. the custodian(s) of the document or communication or person(s) otherwise responsible for the document's safekeeping, storage, or filing;

   h. the date of destruction or other disposition;

   i. the person authorizing destruction or other disposition;

   j. the person(s) destroying or disposing of the document or communication;

   k. the circumstances surrounding the destruction or disposition and, if the document or communication was destroyed, the reason for the circumstances

           surrounding its destruction;

    l. the particular Request that calls for the production of the document or communication; and

    m. the efforts made to locate lost or misplaced documents or communications.

13. Each Request that calls for the production of a Document or Documents shall be deemed to call for the production of the original Document[s] and Communication[s], to the extent that they are in or subject to, directly or indirectly, Your control. In addition, each Request shall be considered to include all copies and, to the extent applicable, preliminary drafts of Documents or Communications which, as to content, differ in any respect from the original or final draft or from each other (*e.g.*, by reason of handwritten notes or comments having been added to one copy of a Document or Communication but not on the original or other copies thereof).

14. If You or Your attorneys know of the existence, past or present, of any Document or Communication or thing called for in a Request, but such Document or thing is not now in Your possession, custody, or control or in the possession, custody, or control of Your agents, representatives, or attorneys, You shall so state in response to the Request, identify such Document or Communication or thing in response to the Request, and identify the Person in whose possession, custody, or control the Document or Communication or thing was last known to reside.

15. All Documents and Communications produced in response to these Requests must be marked to indicate the specific request to which they are responsive.

16. If an objection is made to any Request, state Your objection and the ground or grounds for the objection with particularity in Your written response. If an objection is made only to part of the Request, identify that part in Your written response and state Your objection and the grounds of the objection.

17. Plaintiffs reserve their right to supplement these Requests at any time prior to trial.

18. Unless otherwise noted, the time period for the Request shall be within the Relevant Period.

## DOCUMENT REQUESTS

1. Documents sufficient to identify all Retained VIPs.

2. Documents sufficient to show all physical addresses in Binance's records for each Retained VIP.

3. Documents sufficient to show all IP and MAC addresses used to access the Binance Platform by each Retained VIP.

4. All Documents and Communications concerning the decision in the summer of 2019 to retain certain VIPs on the Binance Platform following the launch of the Binance.US exchange as described on pages 11-12 of the FinCEN Consent Order.

5. All Documents and Communications concerning efforts to retain VIPs or other high-volume trading customers in New York following the launch of the Binance.US platform.

6. All Documents and Communications concerning Zhao's direction or knowledge of efforts to maintain VIPs or other high-volume trading customers on the Binance Platform following the launch of the Binance.US platform.

7. All marketing materials, policies and procedures, and operational Documents concerning Binance's VIP Program.

8. Documents sufficient to show all incentives or benefits, including but not limited to lower pricing, that Binance offered to VIPs.

9. Documents sufficient to show the trade volume of each Retained VIP as compared to the volume of all trades on the Binance Platform.

10. Documents sufficient to identify the "single U.S. VIP user [who] was responsible for 12% of all trading volume on Binance.com" in October 2020 as described on page 11 of the FinCEN Consent Order.

11. Documents sufficient to show the internal process by which exchange and over-the-counter transactions of any kind are executed, processed and settled on the Binance Exchange, including movement of funds into and out of omnibus wallets.

12. Documents sufficient to show how exchange and over-the-counter transactions on the Binance Exchange are recorded in the ledgers, books and records of Binance.

13. Documents sufficient to show how crypto to fiat transactions of any kind are processed, converted and reconciled on the Binance Platform, including but not limited to the flow of funds and cryptocurrency, and any reconciliation thereof. *See, e.g.*, the Affidavit at 4 (describing Key Vision's "expected funds flow activity.").

14. Documents sufficient to identify every Person owned in whole or in part by Zhao, such as Merit Peak, Key Vision and Sigma Chain and the "dozens of other … non-Binance entities, all beneficially owned by Zhao" referenced in Paragraph 6 of the Affidavit, that maintained both accounts at Signature Bank's New York branches and accounts on the Binance Platform.

15. Signature Bank statements for all accounts of the customers identified in response to Request No. 14.

16. Signature Bank statements for all Binance accounts held at New York branches.

17. All contracts between Binance and any Person identified in response to Request No. 14.

18. Documents sufficient to show the relative trade volume on the Binance Platform of each of the entities identified in response to Request No. 14 as compared to all trades on the Binance Platform.

19. All Documents and Communications sent to or from Zhao (or copying Zhao) relating to the use of funds held at Signature Bank's New York branches in connection with trading

or settlement activity on the Binance Platform.

Dated: April 2, 2025                                        SEIDEN LAW LLP

By: /s *Amiad Kushner*
Robert W. Seiden
Amiad Kushner
Jake Nachmani
Jennifer Blecher
Dov Gold
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

PERLES LAW FIRM, P.C.
Steven R. Perles
Joshua K. Perles
Edward B. MacAllister
816 Connecticut Avenue, NW
12th Floor
Washington, D.C. 20006
(202) 955-9055

*Attorneys for Plaintiffs*