**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDITH RAANAN, *et al.*                                     :

                Plaintiffs,                    :       No. 1:24-cv-00697-JGK-BCM

      vs.                                                       :

                               :

BINANCE HOLDINGS LIMITED and CHANGPENG    :      **ORAL ARGUMENT**
ZHAO,                                                                  **REQUESTED**

              Defendants.                   :

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### DEFENDANTS BINANCE HOLDINGS LIMITED'S AND CHANGPENG ZHAO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION <u>TO DISMISS THE AMENDED COMPLAINT</u>

**BAKER HOSTETLER LLP**

Marco Molina
Joanna Wasick
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4231
mmolina@bakerlaw.com
jwasick@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

**WITHERS BERGMAN LLP**

Christopher N. LaVigne
Joseph E. Gallo
Alexander C. Haden
430 Park Avenue, 10th Floor
New York, NY 10022
Tel: (212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

**MILBANK LLP**
Neal Kumar Katyal (*pro hac vice* pending)
Colleen Roh Sinzdak (*pro hac vice* forthcoming)
1101 New York Ave. NW
Washington, DC 20005
Tel: (202) 835-7505
NKatyal@milbank.com
CRohsinzdak@milbank.com

Nola B. Heller
Matthew J. Laroche
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5108
Nheller@milbank.com
Mlaroche@milbank.com

*Attorneys for Defendant Binance Holdings
Limited*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT FACTUAL BACKGROUND ...............................................................................3

    A.    Plaintiffs Allege That Defendants Indiscriminately Permitted Illicit
Activity on the Binance.com Exchange ...................................................................3

    B.    The Court Previously Found No "Close Nexus" and That No Transactions
on Binance.com Were Directly Targeted at the Attacks ..........................................4

THE AMENDED COMPLAINT FAILS TO STATE AN AIDING-AND-ABETTING JASTA
CLAIM UNDER SECOND CIRCUIT PRECEDENT ..............................................................5

    A.    Recent Precedent Forecloses Plaintiffs' Claim ........................................................6

        i.    Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos .....................6

        ii.    Ashley v. Deutsche Bank Aktiengesellschaft .............................................7

        iii.    Troell v. Binance Holdings Limited ...........................................................8

    B.    The Amended Complaint Does Not Satisfy the Pleading Requirements for
Knowing and Substantial Assistance Under JASTA ..............................................10

        i.    The Court Has Already Found There Is No Nexus Between
Defendants' Alleged Conduct and the Attacks ..........................................11

        ii.    Plaintiffs Do Not Meet the "High Bar" Necessary to Demonstrate
Defendants Provided "Pervasive, Systemic, and Culpable"
Assistance to FTOs .....................................................................................13

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025) ...................................................................................... *passim*

*Atchley v. AstraZeneca UK Ltd.*,
    165 F.4th 592 (D.C. Cir. 2026) ................................................................................................13

*Fraenkel v. Standard Chartered Bank*,
    2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025) ............................................................11, 12, 15

*Raanan v. Binance Holdings Ltd.*,
    2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ..................................................................... *passim*

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025) ........................................................................................................ *passim*

*Troell v. Binance Holdings Ltd.*,
    2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) ...................................................................... *passim*

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ..............................................................................................1, 6, 11, 15

**Statutes**

18 U.S.C. § 2333(d)(2) ...............................................................................................................5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................................1

Defendants Binance Holdings Limited ("BHL") and Changpeng Zhao respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Amended Complaint ("Amended Complaint" or "AC") (ECF 17).

### PRELIMINARY STATEMENT

Defendants unequivocally condemn all acts of terrorism, including the abhorrent attacks on the State of Israel on October 7, 2023 (the "Attacks") perpetrated by Hamas and the Palestinian Islamic Jihad ("PIJ"). Defendants are not responsible for those Attacks. Pursuant to recent Supreme Court and Second Circuit precedent, and a Southern District decision applying that precedent to a case involving identical allegations to this case, Defendants cannot be held liable for aiding and abetting the Attacks because, as this Court has previously determined, (1) there is no "close nexus" between Defendants' alleged conduct and the Attacks and (2) Defendants' alleged AML and KYC compliance failures were "not directly targeted at the" specific Attacks at issue here. *Raanan v. Binance Holdings Ltd.*, 2025 WL 605594, at *23 (S.D.N.Y. Feb. 25, 2025) ("*Raanan I*"). Accordingly, the Court should dismiss Plaintiffs' sole remaining claim for JASTA aiding-and-abetting liability.

To state a JASTA aiding-and-abetting claim, Plaintiffs must plausibly allege that, *inter alia*, Defendants "knowingly and substantially assist[ed] the principal violation" by plausibly alleging a "concrete nexus" between Defendants' purported conduct and the Attacks, or that Defendants provided "pervasive, systemic, and culpable assistance" to a foreign terrorist organization ("FTO"). *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 486, 502 (2023) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). The Second Circuit recently outlined the types of plausible, non-speculative allegations that are required to meet these standards in cases asserting aiding-and-abetting claims against institutions that allegedly provide financial services

to FTOs. *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 445 (2d Cir. July 21, 2025); *Troell v. Binance Holdings Ltd.*, 2026 WL 636849, at *17, *20-22 (S.D.N.Y. Mar. 6, 2026) (applying *Ashley* to virtually identical claims).

*Ashley* was decided after *Raanan I* and considered a materially similar theory of JASTA liability, which alleged defendants aided and abetted an FTO by providing financial services to entities associated with that FTO. 144 F.4th at 430. Like Plaintiffs here, the *Ashley* plaintiffs alleged the defendant banks knowingly facilitated money laundering and other suspect transactions by FTO-affiliated entities, failed to employ robust anti-money laundering and counter-terrorist finance policies, and operated in high-risk terrorist finance jurisdictions. *Id.* Like this Court in *Raanan I*, the Second Circuit recognized that the plaintiffs had not plausibly alleged a concrete nexus between the defendants' conduct and the attacks at issue. *Id.* at 444-45. The Second Circuit further held that plaintiffs could not salvage their claims through allegations of generalized, "pervasive, systemic, and culpable" assistance when defendants were alleged to have facilitated financially suspect transactions "writ large," rather than conduct showing the defendants actively sought to associate themselves with the FTOs' terrorist operations or form a "near-common enterprise" with them. *Id.* at 445.

Other district courts have already applied *Ashley* to dismiss comparable claims, holding that "'wrongdoing with regard to evading sanctions regimes and assisting customers to evade those sanctions'" is "'far too attenuated to establish a direct nexus between [a bank's] conduct and the [a]ttacks.'" *Troell*, 2026 WL 636849, at *18 (quoting *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at *9 (S.D.N.Y. Sept. 26, 2025) (Garnett, J.)). Most notably, the Honorable Judge Jeannette Vargas applied *Ashley* to dismiss a virtually identical JASTA claim against Defendants—based on the same Attacks and the same alleged compliance issues in the Amended

Complaint—because plaintiffs failed to: (1) establish a "close nexus" between Defendants' alleged conduct and the attacks and meet their "increased burden" to show that Defendants somehow consciously and culpably assisted the attacks; and (2) plausibly allege that Defendants "sought to form a common enterprise" with the Attacks' perpetrators. *Troell*, 2026 WL 636849, at *21-22. Judge Vargas recognized this Court's prior decision but observed that the decision was issued "before" *Ashley* and that "application of *Ashley* to the facts of this case requires dismissal of Plaintiffs' aiding-and-abetting claims." *Id.*

The same result should follow here.

## RELEVANT FACTUAL BACKGROUND

### A.    Plaintiffs Allege That Defendants Indiscriminately Permitted Illicit Activity on the Binance.com Exchange

The Court identified the following allegations from the Amended Complaint in its determination of the First Motion to Dismiss. These facts are virtually identical to those alleged in *Troell*. (*See infra* at 8-9.) Plaintiffs are victims or family members of victims who were harmed in the Attacks committed by Hamas, PIJ, and other groups. (AC ¶¶ 1, 19-64; *Raanan I*, 2025 WL 605594, at *1.) Based on Plaintiffs' purported analysis of publicly available data, BHL allegedly processed $60 million of transactions between 2019 and September 2023 involving cryptocurrency wallets belonging to Hamas and PIJ. (AC ¶¶ 194, 209; *Raanan I*, 2025 WL 605594, at *2.) Notably, Plaintiffs do not describe this analysis in any detail, do not attach it or its specific results to the AC, do not provide any specific wallet address or explain how any such address is owned or controlled by Hamas or the PIJ, and do not connect any wallet addresses or customer accounts or transactions by those accounts to the Attacks. Plaintiffs also do not plausibly allege that anyone at BHL knew these unidentified accounts belonged to or were affiliated with Hamas and PIJ when the transactions were processed. Instead, Plaintiffs allege Defendants willfully failed to implement

3

necessary internal controls and disclosure requirements, which allowed Hamas and PIJ associated transactions on Binance.com. (AC ¶¶ 4, 176, 180-82; *Raanan I*, 2025 WL 605594, at *2.)

Plaintiffs rely heavily on U.S. agency filings regarding BHL's historical anti-money laundering (AML), Know-Your-Customer (KYC), and sanctions efforts to allege that Defendants did not comply with their legal AML and KYC obligations or file Suspicious Activity Reports (SARs). (AC ¶¶ 158-74, 179-80, 183-88; *Raanan I*, 2025 WL 605594, at *2.) These retrospective agency filings do not allege or conclude that Defendants were contemporaneously aware of terrorists using its platform, or that Defendants intended them to do so; that Defendants knowingly transacted with any FTO; that Defendants knowingly allowed Hamas or the PIJ to transact on Binance.com; that Defendants processed any transactions (let alone $60 million) "involving cryptocurrency wallets belonging to Hamas and PIJ"; or that Defendants were connected to or supported the Attacks. Instead, these filings reflect that a very small percentage of the billions of transactions on Binance.com involved third parties affiliated with FTOs and that BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorism financing." (May 8, 2026 Declaration of Christopher N. LaVigne ("LaVigne Decl."), Ex. 1 (FinCEN Consent Order) at 46; *see also id.* Ex. 2 (DOJ Plea Agreement) at 7-8.)

Plaintiffs allege that BHL's "deficient KYC procedures" led to a "free-for-all financial ecosystem for criminals" (AC ¶¶ 183-190), and that Defendants' failure to comply with AML and KYC rules was motivated by a desire to retain US VIP users. (*Id.* ¶¶ 174-181.) Plaintiffs also allege Defendants were aware that Hamas and PIJ used Binance.com to finance their terrorist activities due to various third-party and media reports. (*Id.* ¶¶ 182-231; *Raanan I*, 2025 WL 605594, at *2.)

**B.**     **The Court Previously Found No "Close Nexus" and That No Transactions on Binance.com Were Directly Targeted at the Attacks**

On February 25, 2025, the Court dismissed Plaintiffs' primary ATA liability claims.

4

*Raanan I*, 2025 WL 605594, at \*15-17. However, the Court held the Amended Complaint sufficiently stated a JASTA aiding-and-abetting claim. It found that Plaintiffs had sufficiently alleged Defendants "were generally aware that they were playing a role in international terrorism[.]" *Id.* at \*20. And, though recognizing it was a "closer question," the Court also found that Plaintiffs sufficiently alleged knowing and substantial assistance to FTOs. *Id.*

The Court recognized that Plaintiffs had not established "a close nexus" between Defendants' alleged conduct and the Attacks, but found Defendants' "alleged widespread, intentional circumvention of anti-terror financing regulations, considered with [their] purported knowledge that Hamas and PIJ were transacting on the Binance platform, support the inference that [their] assistance was knowing." *Id.* at \*23. The Court also found the "financial assistance allegedly provided was substantial," though it was "not directly targeted at the October 7, 2023 attacks in particular." *Id.* (quoting AC ¶ 194).

## THE AMENDED COMPLAINT FAILS TO STATE AN AIDING-AND-ABETTING JASTA CLAIM UNDER SECOND CIRCUIT PRECEDENT

JASTA imposes liability on "any person who aids and abets, by knowingly providing substantial assistance" to "the person who committed [the] act of international terrorism" that injured the plaintiff. 18 U.S.C. § 2333(d)(2). An aider and abettor must "intend to facilitate [the offense's] commission." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025). As most relevant here, that requires a plaintiff to plausibly plead that the defendant "'***knowingly*** and ***substantially*** assist[ed] the principal violation.'" *Ashley*, 144 F.4th at 435 (quoting *Halberstam*, 705 F.2d at 477) (emphasis added). In its original motion to dismiss decision, this Court found the knowing and substantial assistance requirement was satisfied, even though Plaintiffs had not plausibly alleged a "close nexus" between Defendants' conduct and the Attacks, and Defendants alleged assistance was not "directly targeted" at those Attacks. *Raanan I*,

5

2025 WL 605594, at *23.

Since this Court's decision, the Supreme Court, Second Circuit, and other district courts in this Circuit have issued opinions clarifying that plaintiffs bringing JASTA aiding-and-abetting claims must establish either (1) Defendants' intent to assist the specific Attacks, through either a "substantial nexus" between Defendants' conduct and the Attacks or, absent a substantial nexus, a "drastically" greater "show[ing] [D]efendants somehow consciously and culpably assisted the [A]ttack[s]," *Twitter*, 598 U.S. at 502-03; *Ashley*, 144 F.4th at 441; or (2) that Defendants "actively sought" to associate themselves or form "a near-common enterprise" with an FTO. *Ashley*, 144 F.4th at 445. Plaintiffs' allegations do neither.

### A.    Recent Precedent Forecloses Plaintiffs' Claim

#### i.    *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*

In *Smith & Wesson*, the Supreme Court reinforced the *Twitter* principles limiting aiding-and-abetting liability. There, the plaintiff alleged under a different federal statute that gun manufacturers aided and abetted Mexican drug cartels by "supply[ing] firearms to retail dealers whom they know illegally sell to Mexican gun traffickers." *Smith & Wesson*, 605 U.S. at 280-81. The Supreme Court dismissed the claim and explained that when liability is premised on aiding and abetting "a broad category of misconduct," the defendant's "participation must be correspondingly 'pervasive, systemic, and culpable,'" such that the defendant effectively aided every wrongful act. *Id.* at 292 (quoting *Twitter*, 598 U.S. at 502). The Supreme Court explained that an "ordinary merchant does not become liable for all criminal misuses of his goods, even if he ***knows*** that in some fraction of cases misuse will occur[,]" and is liable only if "he takes steps to ***promote the resulting crime and make it his own***." *Smith & Wesson*, 605 U.S. at 292 (cleaned up) (emphasis added).

6

      ii.        *Ashley v. Deutsche Bank Aktiengesellschaft*

After *Smith & Wesson*, the Second Circuit limited the viability of aiding-and-abetting claims brought against institutions alleged to have provided financial services to terrorists. In *Ashley*, the Second Circuit affirmed dismissal of JASTA aiding-and-abetting claims based on allegations that the defendant banks knowingly contributed to an FTO's money laundering operations by performing U.S.-dollar transactions for FTO-affiliated entities and money launderers; failing to employ robust anti-money laundering and counter-terrorist finance policies; and operating in "high risk terrorist finance jurisdictions, such as Afghanistan, Pakistan, and Russia." 144 F.4th at 430, 440. As here, the *Ashley* plaintiffs alleged these transactions and compliance failures enabled FTOs to purchase weapons and pay personnel for terrorist attacks. *Id.* at 443-44. The Second Circuit rejected JASTA liability, finding that the *Ashley* plaintiffs advanced "sweeping theories of international criminal conspiracies spanning different continents and terrorist organizations ***without ever persuasively tying those theories to the terrorist attacks***." *Id.* at 439 (emphasis added).

The *Ashley* plaintiffs alleged that, by facilitating money laundering, the banks "allowed" the terrorists "to access funds" they used in their terrorist activities. *Id.* at 443. The Second Circuit held this theory impermissibly relies on "money's fungibility" by assuming that any activities that enrich a terrorist organization must support particular terrorist acts. *Id.* at 444. The Circuit explained that "it is not enough to say that the defendant assisted the terrorist organization's 'activities in general,'" or that it is "possible that some of the Bank's transactions . . . produced money that was transferred to" the terrorist organization for use in the specific attacks that harmed plaintiffs. *Id.* (citing Twitter, 598 U.S. at 503). The Court held that such "attenuated" theories were not enough to plausibly allege the "concrete nexus" required to establish knowing and substantial assistance. *Id.* at 445.

7

The Circuit also recognized that, in certain limited circumstances, plaintiffs may show knowing and substantial assistance in the absence of a "concrete nexus" by demonstrating that the defendant's "participation" was so "'pervasive, systemic, **and culpable**,' such that we can say the defendant aided every wrongful act." *Id.* at 445 (emphasis added) (citing *Smith & Wesson*, 605 U.S. at 292). The Circuit emphasized, however, that this was a "high bar" that could not be met simply by alleging that "the [defendant's] aid was pervasive and systemic[.]" *Id.* Rather, a plaintiff has to plausibly allege that the defendants' activities "were designed or performed with the intent to aid" the terrorist organization. *Id.* And satisfying this "culpability" requirement demands more than allegations that the defendant "culpably executed financially suspect transactions **writ large**[.]" *Id.* (emphasis added). The allegations must show the transactions were undertaken "in a manner that actively sought to 'associate'" the defendant with the terrorist organization or to "form a 'near-common enterprise'" between defendant and the terrorist organization. *Id.* The Circuit concluded the *Ashley* plaintiffs had not made this showing because "as pled, the Banks may have opened their doors to criminals with ties to terrorists to clean their money—a portion of which was likely to end up in the [FTO]'s pile of resources." *Id.* But those allegations were "insufficient" to support a JASTA claim. *Id.*

iii.        *Troell v. Binance Holdings Limited*

On March 6, 2026, Judge Vargas applied *Ashley* to dismiss a JASTA aiding-and-abetting claim, brought by similarly situated plaintiffs allegedly harmed by the October 7 Attacks, against the same Defendants, based on allegations that are virtually identical to those in this case. Like Plaintiffs here, the *Troell* plaintiffs based their claim on an undisclosed analysis purportedly showing "$56 million through transfers involving identified Hamas addresses that flowed through Binance" (*Troell*, 2026 WL 636849, at *21; AC ¶ 194 (alleging "$60 million" in Hamas and PIJ transactions on Binance.com)), and on U.S. agency filings regarding BHL's historical compliance

efforts. (*Troell*, 2026 WL 636849, at \*7-8; AC ¶¶ 232-44).) The *Troell* plaintiffs also alleged

Defendants' failure to comply with AML and KYC obligations or file SARs (*Troell*, 2026 WL

636849, at \*5; AC ¶¶ 5, 190, 218, 232) "indiscriminately permitted illicit activity on the Binance

platform" (*Troell*, 2026 WL 636849, at \*21; *see* AC ¶¶ 183-190) and Defendants were aware from

public reporting that Hamas affiliates were using Binance.com. (*Troell,* 2026 WL 636849, at \*21;

AC ¶ 210.)

Judge Vargas determined the allegations were "analogous to *Ashley*" and found the

plaintiffs had failed to allege either "plausible factual allegations sufficiently linking Defendants'

actions to [the Attacks] that injured [the p]laintiffs," or "that [Defendants] were intentionally

seeking to associate themselves with [FTOs] or to form a common enterprise with them." *Id.*

(citing *Ashley*, 144 F.4th at 445). Judge Vargas explained that:

> Defendants [we]re not alleged to have provided the IRGC (or any FTO for that matter)
> with weapons or advanced technology. Nor [wa]s there any allegation that Defendants had
> any indirect involvement in transactions involving weaponry or advanced technology used
> in terrorist attacks. Rather, liability [wa]s predominantly premised on the allegation that
> individuals and entities with terrorist affiliations were permitted to transact on the Binance
> exchange.

*Id.* at \*17. Judge Vargas found that while such "'remote support can still constitute aiding and

abetting in the right case,'" a lack of nexus "'drastically increases [Plaintiffs'] burden to show that

defendants somehow consciously and culpably assisted the attack.'" *Id.* at \*21 (quoting *Twitter*,

598 U.S. at 496, 503). Judge Vargas found the plaintiffs could "not me[e]t that increased burden"

because the "allegations that Defendants have indiscriminately permitted illicit activity on the

Binance[.com] platform ***undermine[d]*** such a claim of aiding-and-abetting liability." *Id.*

(emphasis added). Applying *Ashley*, Judge Vargas found:

> It is not alleged that Defendants uniquely flouted AML/CFT regulations and reporting
> requirements for the benefit of Hamas or the PIJ. These entities were not given special
> accommodations, other than those made available to any VIP customer on the platform.
> Rather, the allegations are that the Binance exchange permitted all sorts of illicit actors to

9

engage in transactions unchecked, routinely refused to file SARs for any suspicious transactions, and took elaborate steps to protect the accounts of any VIP user. Nothing on these facts suggests that Defendants sought to form a common enterprise with Hamas or the PIJ, or any FTO for that matter.

*Id.* at \*21.

Judge Vargas acknowledged *Raanan I*, but found that *Ashley* compelled a different result regarding the JASTA claim. Judge Vargas noted this Court's finding that "a close nexus between [D]efendants' alleged assistance and the attacks is lacking," and concluded "that application of *Ashley* to the facts of this case requires dismissal of Plaintiffs' aiding-and-abetting claims." *Id.* at \*22 (quoting *Raanan I*, 2025 WL 605594, at \*23). And Judge Vargas similarly rejected plaintiffs' argument that Defendants pervasively, systemically, and culpably assisted FTOs because it depended on allegations that "Defendants generally permitted and solicited" bad actors of "all ilks" to use Binance.com, which is insufficient under *Ashley* to establish "that Defendants sought to engage in a common enterprise with any of the FTOs who committed the terrorist attacks at issue." *Id.* (citing *Ashley*, 144 F.4th at 445).

**B.      The Amended Complaint Does Not Satisfy the Pleading Requirements for Knowing and Substantial Assistance Under JASTA**

These post-*Raanan I* precedents demonstrate that aiding-and-abetting liability requires a showing that the defendant "participate[d] in" the act that harmed the plaintiff as "something" it "wishe[d] to bring about" and that the defendant sought "by [its] action[s] to make it succeed." *Smith & Wesson*, 605 U.S. at 291. In the JASTA context, Plaintiffs must plausibly allege either (1) a "concrete nexus" between the defendant's acts and the terrorist attack or, absent such a nexus, a "drastically" greater showing that the defendant consciously and culpably assisted the attack, or (2) that defendants' activities were "were designed or performed with the intent to aid" the terrorist organization, such that defendants were "actively" seeking to have formed a "near-common enterprise" with the terrorists. *Ashley*, 144 F.4th at 445. Plaintiffs cannot satisfy either requirement.

10

i.      *The Court Has Already Found There Is No Nexus Between Defendants' Alleged Conduct and the Attacks*

To "substantially assist" a terrorist attack under JASTA, there must be a "concrete" and "definable nexus between [Defendants'] [alleged substantial] assistance and th[e] attack[.]" *Twitter*, 598 U.S. at 503 ("[T]he question is whether defendants gave substantial assistance to ISIS with respect to the Reina attack. The focus thus must remain on the Reina attack[.]"). Post-*Twitter* decisions in this Circuit reaffirm this requirement. *Ashley*, 144 F.4th at 444 (no aiding-and-abetting claim where "no discernable nexus between the money laundering and the attacks committed"); *Troell*, 2026 WL 636849, at *21 ("[L]ack of a definable nexus between Defendants' conduct and the terrorist attacks at issue still dooms the claims."); *Fraenkel*, 2025 WL 2773251, at *9.

The Court already recognized that "a close nexus between the [D]efendants' alleged assistance and the [A]ttacks is lacking" and that any alleged financial assistance was "not directly targeted at the [Attacks] in particular[.]" *Raanan I*, 2025 WL 605594, at *23. That holding is correct. Like in *Troell*, Plaintiffs' allegations do not plead **any** nexus between any activity by Defendants and the Attacks. The Amended Complaint contains no allegation that any Binance.com transaction was used to fund or assist the Attacks. Nor are there any non-conclusory allegations that an actual member of an FTO, let alone one who carried out the Attacks, transacted on Binance.com, or that Defendants intended for any such member to do so.

At best, Plaintiffs allege Defendants' general compliance failures allowed FTO-"affiliated" third party transactions on Binance.com, from which funds may have later flowed to FTOs. (AC ¶¶ 137, 182-192, 198, 226.) *Ashley* squarely rejected that theory as a basis for JASTA liability. *See Ashley*, 144 F.4th at 440 (rejecting JASTA liability based on money's fungibility because of "the tenuous connection between the banking services and the terrorist attacks," and because assisting an FTO's money laundering operations generally does not demonstrate an intent to further the

11

specific terrorist activities at issue); *Fraenkel*, 2025 WL 2773251, at \*9 (alleged sanctions evasion "is far too attenuated to establish a direct nexus between SCB's conduct and the Attacks").

Absent a close nexus, Plaintiffs bear a "drastically increase[d]" burden "'to show that defendants somehow consciously and culpably assisted the [A]ttacks.'" *Troell*, 2026 WL 636849, at \*21 (quoting *Twitter*, 598 U.S. at 503). As in *Troell*, Plaintiffs "have not met that increased burden here." *Id.* For example, Plaintiffs point to BHL offboarding a user "associated with Hamas" while permitting the user to take its funds and leave. (AC ¶ 215.) But Plaintiffs do not allege that the account or funds were connected to terrorism or to the Attacks. Judge Vargas analyzed that same allegation and found it insufficient. *Troell*, 2026 WL 636849, at \*21. As she noted with respect to another FTO, Plaintiffs' lack of specificity is fatal here. *Id.* at \*22. "Plaintiffs provide no information as to the nature of the association a particular wallet had with the [FTO]"; whether these wallets were "owned and controlled by the [FTO] itself, by an operative of the [FTO], a supporter, or an intermediary such as a money transmitter or financer"; "what was publicly known about such individuals, or such wallets, at the time the transactions took place"; to "what extent substantial transactions took place prior to, or after, the terrorist attacks at issue"; "[h]ow much was transacted through these wallets prior to [certain] terrorist attacks"; or "the nature of these transactions, i.e., [whether] these wallets [were] used to transmit funds to the [FTO], for currency trades, or for some other purpose[.]" *Id.* at \*17-18.

This is precisely the type of "attenuated conduct" courts have rejected as insufficient to plead knowing and substantial assistance. *See, e.g.*, *Ashley*, 144 F.4th at 445 ("The complaint demands a high degree of speculation, particularly because of the disconnect between the Banks' involvement and support for the terrorist attacks, which is insufficient to plead an aiding-and-abetting claim."); *Fraenkel*, 2025 WL 2773251 at \*9. By contrast, post-*Twitter* decisions have

found JASTA liability only where there exists a close nexus between a defendant's conduct and an FTO's attacks. *See Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592, 607, 609-10 (D.C. Cir. 2026) (finding JASTA aiding-and-abetting claim sufficiently alleged where defendants made numerous direct physical bribery payments and drug deliveries to FTO in its headquarters while FTO attacks took place outside the headquarters).

ii.    *Plaintiffs Do Not Meet the "High Bar" Necessary to Demonstrate Defendants Provided "Pervasive, Systemic, and Culpable" Assistance to FTOs*

Absent a concrete nexus, Plaintiffs may satisfy the knowing and substantial assistance requirement if they can allege Defendants' conduct was so "'pervasive, systemic, and culpable' such that we can say [Defendants] aided every wrongful act." *Ashley*, 144 F.4th at 445. This Court previously found that Plaintiffs had "alleged widespread, intentional circumvention of anti-terror financing regulations," and Defendants' "purported knowledge that Hamas and PIJ were transacting on the Binance[.com] platform." *Raanan I*, 2025 WL 605594, at *23. But *Ashley* and *Troell* make clear such allegations are not sufficient to meet the knowing and substantial assistance requirement such that Defendants could be found to have aided Hamas and the PIJ for every attack they have perpetrated worldwide.

In *Ashley*, the Court explained that even where a defendant's conduct is allegedly "pervasive and systemic," it will not support a finding of knowing and substantial assistance in the absence of plausible allegations that defendants "designed or performed" their alleged actions "with the intent to aid" a particular FTO. 144 F.4th at 445. *Ashley* held it is *not* enough to allege that Defendants "culpably executed financially suspect transactions **writ large**," or that they "opened their doors to criminals with ties to terrorists[.]" *Id.* (emphasis added). Plaintiffs must plausibly allege that Defendants' actions were designed or performed with "the intent to aid" the relevant FTO or its terrorist activities, and Plaintiffs have not come close to making that showing.

13

*Id.*; *see also Smith & Wesson*, 605 U.S. at 292.

Indeed, Judge Vargas reached that precise conclusion with respect to the analogous allegations in *Troell*, holding that plaintiffs had not plausibly alleged that Binance had "'designed or performed' its actions 'with the intent to aid' the terrorist organizations" because it was "not alleged that Defendants uniquely flouted AML/CFT regulations and reporting requirements for the benefit of Hamas or the PIJ." *Troell*, 2026 WL 636849, at \*21 ("These entities were not given special accommodations, other than those made available to any VIP customer on the platform."). Judge Vargas further noted that, at most, plaintiffs alleged an "arms' length relationship" between Defendants and the FTOs or their affiliates through accounts and transactions on Binance.com, with only "sparse allegations of any communications" with any FTOs or affiliates. *Id.* at \*22. These allegations failed to meet the "high bar" necessary to establish that Defendants sought to engage in a common enterprise with Hamas or the PIJ.

Here, Plaintiffs do not allege that Defendants knowingly or intentionally gave special treatment to FTOs or purported FTO-associated accounts. (*See, e.g.*, AC ¶ 214 (BHL "did not file *any* SARs as it was required to do") (emphasis added).) To the contrary, the Amended Complaint alleges Defendants' motive was entirely unconnected and agnostic to the FTOs or Attacks and was instead aimed at retaining "millions of U.S. customers" who "accounted for 15 to 20 percent of [BHL's] transaction fees" and "generat[ed] billions of dollars in revenue." (AC ¶¶ 154-57.)

At most, Plaintiffs allege that BHL was aware that some bad actors generally were taking advantage of its products downstream yet deliberately avoided its AML and KYC obligations. (AC ¶¶ 210-21.) But this willful ignorance theory is foreclosed by *Smith & Wesson*, *Ashley*, and their progeny. Plaintiffs must show that Defendants' actions were done with particularized "intent to aid" the perpetrators of the Attacks, and Plaintiffs have not made that showing. *Ashley*, 144 F.4th

14

at 445; *see also Twitter*, 598 U.S. at 498; *Smith & Wesson*, 605 U.S. at 293 ("When a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet. And that is so even if the company could adopt measures to reduce their users' downstream crimes.") (internal citation omitted); *Fraenkel*, 2025 WL 2773251, at *8; LaVigne Decl. Ex. 3 (*Troell* November 25, 2025 Transcript) 50:9-11 ("THE COURT: But willful blindness doesn't meet the third prong of the aiding and abetting test. There has to be specific intent there or severe and [pervasive] assistance.").

Finally, while this Court previously suggested that Binance might be held liable under a "dangerous ware" theory, *Ashley* foreclosed any argument that financial services—such as those offered on Binance.com—constitute "dangerous wares." *See Twitter*, 598 U.S. at 502. *Ashley* rejected the argument that aiding-and-abetting liability "attaches to an upstream financial institution of a company that itself produces a potentially dangerous ware." 144 F.4th at 443-44. Implicit in *Ashley*'s reasoning is the maxim that financial services, such as those provided by an exchange like Binance.com, are not converted into dangerous wares because a downstream user purchases or produces such a ware through the use of those financial services. *See generally Troell*, 2026 WL 636849 (considering dangerous wares theory and not finding that Binance.com services were dangerous wares).

*Smith & Wesson*, *Ashley*, and their progeny underscore that Plaintiffs' allegations cannot satisfy the "high bar" for establishing knowing and substantial assistance in the absence of a "close nexus." Those decisions therefore establish that Plaintiffs failed to state a claim under JASTA.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' Amended Complaint.

Dated: May 8, 2026
      New York, New York

BAKER HOSTETLER LLP

By: */s/ Marco Molina*
Marco Molina
Joanna Wasick
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4231
mmolina@bakerlaw.com
jwasick@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

WITHERS BERGMAN LLP

By: _____
Christopher N. LaVigne
Joseph E. Gallo
Alexander C. Haden
430 Park Avenue, 10th Floor
New York, NY 10022
Tel: (212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

MILBANK LLP

Neal Kumar Katyal (*pro hac vice* pending)
Colleen Roh Sinzdak (*pro hac vice* forthcoming)
1101 New York Ave. NW
Washington, DC 20005
Tel: (202) 835-7505
Nkatyal@milbank.com
Crohsinzdak@milbank.com

Nola B. Heller
Matthew J. Laroche
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5108
Nheller@milbank.com
Mlaroche@milbank.com

*Attorneys for Defendant Binance Holdings Limited*

16