**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDITH RAANAN, *et al.*                                          :

                    Plaintiffs,          :          No. 1:24-cv-00697-JGK-BCM

      vs.                                                   :

                                    :

BINANCE HOLDINGS LIMITED and CHANGPENG      :          **ORAL ARGUMENT**
ZHAO,                                                                      **REQUESTED**

                   Defendants.         :

                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### DEFENDANTS BINANCE HOLDINGS LIMITED'S AND CHANGPENG ZHAO'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION <u>TO DISMISS THE AMENDED COMPLAINT</u>

<table>
<tr><td>

BAKER HOSTETLER LLP

Marco Molina
Joanna Wasick
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4231
mmolina@bakerlaw.com
jwasick@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

</td><td>

WITHERS BERGMAN LLP

Christopher N. LaVigne
Joseph E. Gallo
Alexander C. Haden
430 Park Avenue, 10th Floor
New York, NY 10022
Tel: (212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

MILBANK LLP
Neal Kumar Katyal (*pro hac vice*)
Colleen Roh Sinzdak (*pro hac vice*)
1101 New York Ave. NW
Washington, DC 20005
Tel: (202) 835-7505
NKatyal@milbank.com
CRohsinzdak@milbank.com

Nola B. Heller
Matthew J. Laroche
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5108
Nheller@milbank.com
Mlaroche@milbank.com

*Attorneys for Defendant Binance Holdings Limited*

</td></tr>
</table>

**TABLE OF CONTENTS**

**Page**

ARGUMENT ........................................................................................................................1

    A.    Plaintiffs Have Not Plausibly Alleged a Concrete Nexus Between Defendants' Conduct and the Attacks.........................................................1

        i.    Ashley Is Binding Authority and Forecloses Liability Based on Speculation that Proceeds of Alleged FTO-Affiliated Transactions Enriched FTOs Downstream.........................................................2

        ii.    Troell Is Indistinguishable and Supports Dismissal of Plaintiffs' Identical Claims .........................................................3

    B.    Plaintiffs Do Not Meet Their "Drastically Increase[d]" Burden to Show Defendants' Intent to Aid the Attacks .................................................5

    C.    Plaintiffs Cannot Show Any Systemic, Pervasive and Culpable Assistance...........7

CONCLUSION....................................................................................................................8

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alsanabani v. Spear Operations Group*,
2026 WL 983064 (D.D.C. Apr. 13, 2026) ...................................................................................6

*Ashley v. Deutsche Bank Aktiengesellschaft*,
144 F.4th 420 (2d Cir. 2025) ................................................................................... *passim*

*Atchley v. AstraZeneca UK Ltd.*,
165 F.4th 592 (D.C. Cir. 2026) ...................................................................................3, 7, 8

*Atzili v. Islamic Rep. of Iran*,
24-cv-03365, ECF 112 (D.D.C. May 29, 2026) ....................................................................1, 3

*Fraenkel v. Standard Chartered Bank*,
2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025) ...........................................................................6

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2021) ................................................................................................................7

*Raanan v. Binance Holdings Ltd.*,
2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) .........................................................................1, 6

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025) .............................................................................................. *passim*

*Troell v. Binance Holdings Ltd.*,
2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) ..................................................................... *passim*

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) ................................................................................................................6

Plaintiffs' opposition (ECF 128 ("Opposition" or "Opp.")) confirms that the AC[1] does not set forth a viable JASTA claim. Plaintiffs offer no reason to revisit the Court's prior determination that the AC does not establish a "close nexus" between Defendants' conduct and the Attacks. *Raanan I*, 2025 WL 605594, at *23. As this Court already held, "the financial assistance allegedly provided" was "not directly targeted at the October 7, 2023 attacks in particular[.]" *Id.* Recent cases from the Supreme Court, the Second Circuit, other District Courts, and even this Court squarely foreclose JASTA liability on those allegations. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025); *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025); *Troell v. Binance Holdings Ltd.*, 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026); *Atzili v. Islamic Rep. of Iran*, 24-cv-03365, ECF 112 (D.D.C. May 29, 2026).

Nor have Plaintiffs established that Defendants' conduct was so "'pervasive, systemic, and culpable' such that we can say [Defendants] aided every wrongful act." *Ashley*, 144 F.4th at 445. Plaintiffs' claim that Defendants failed to implement AML and KYC controls "writ large" does not come close to satisfying that extraordinary high bar. Quite the opposite, those allegations undermine any notion that Defendants sought to "associate[ ] themselves" with any FTOs' "operations" or to form "a near-common enterprise" with any FTO. *Id*. The Court should dismiss.

## ARGUMENT

### A.  Plaintiffs Have Not Plausibly Alleged a Concrete Nexus Between Defendants' Conduct and the Attacks

Plaintiffs still do not and cannot connect Defendants' compliance failures or any transactions on Binance.com to the Attacks. (Op. Br. at 12.) Nor does Plaintiffs' reliance on the

---

[1] Capitalized terms not defined herein have the meaning set forth in Defendants opening brief (ECF 115 ("Opening Brief" or "Op. Br.")).

purported scale of transactions on the platform plausibly establish aiding-and-abetting liability, as volume alone does not bridge the inferential gap between Defendants' conduct and the Attacks. Accordingly, Plaintiffs' causal theory comprises many unknown steps requiring pure speculation and fails to adequately allege a concrete nexus under recent precedent.

i.    *Ashley* Is Binding Authority and Forecloses Liability Based on Speculation that Proceeds of Alleged FTO-Affiliated Transactions Enriched FTOs Downstream

Plaintiffs claim *Ashley* is different because the defendant banks there never "'did anything positive'" to assist the terrorists, and did not deal directly with the terrorists, whereas Defendants here specifically designed Binance.com "to allow terrorists to access financial markets and conceal illegal transactions[.]" (Opp. at 1, 7 (quoting *Ashley*, 144 F.4th at 441).) That is obviously false and unsupported by any concrete allegations in the AC. Binance.com is one of the biggest digital asset exchanges in the world, serving over 300 million legitimate customers. (*See, e.g.*, LaVigne Decl. (ECF 116) Ex. 1 at 3 (describing BHL's large-scale business operations).) Plaintiffs and the agency filings they rely on do not allege BHL created a business that catered to terrorists. (*See* LaVigne Decl. Ex. 1 at 33, 35, 46, 50, 54, 56.) At most, the AC alleges only that BHL's compliance failures made it easier for bad actors of all ilks—not terrorists, let alone any specific FTO—to access Binance.com. (AC ¶¶ 4, 6, 183, 187, 188, 228; Op. Br. at 4; Opp. at 1, 2, 3, 14); *see also Troell*, 2026 WL 636849, at *22. That is not enough under *Ashley*.

Moreover, Plaintiffs **admit** that Defendants' motivation for these compliance failures was to retain U.S. VIP users. (*See, e.g.*, LaVigne Decl. Ex. 1 at 10, 12, 14; AC ¶¶ 174-181, 189, 192.) This is fatal to their claims. *Troell*, 2026 WL 636849, at *21 (finding Hamas or the PIJ "were not given special accommodations, other than those made available to any VIP customer"). Just today, a D.C. District Court dismissed with prejudice a substantially similar JASTA aiding-and-abetting claim against BHL, and distinguished *Raanan I* in part because "BHL's alleged assistance in

2

helping certain users evade sanctions controls was based on customers' VIP status . . . rather than their connections to Hamas." *Atzili*, 24-cv-03365, ECF 112 at 23 n.11 (noting *Raanan* predated the D.C. Circuit's decision in *Atchley*, which, like *Ashley*, dictates that general knowledge that "assistance was going to a [FTO] is insufficient" under JASTA, and that *Troell* confirmed this conclusion "in a similar case"). Thus, like in *Ashley*, Plaintiffs cannot show that Defendants specifically wished to bring about the Attacks. 144 F.4th at 444-45 (legally insufficient to allege defendants "opened their doors to criminals with ties to terrorists to clean their money—a portion of which was likely to end up in the [FTO]'s pile of resources").

Plaintiffs also try to downplay the allegations in *Ashley* as "attenuated" so that "the endpoint of the laundered money was entirely amorphous[.]" (Opp. at 8.) But this is exactly Defendants' argument: Plaintiffs make **no** connection between Defendants' actions and the Attacks other than that some transactions on Binance.com must have found their way to FTOs, including Hamas and the PIJ. (AC ¶¶ 152, 194-98.) The AC contains no allegations regarding, for example, whether and how any transaction on Binance.com resulted in funds flowing from the FTO-affiliated entity to Hamas or PIJ, and whether and how those funds were used for the Attacks. So, the AC suffers from the same attenuation and speculation rejected in *Ashley*. (Op. Br. at 7.)

ii.    *Troell* Is Indistinguishable and Supports Dismissal of Plaintiffs' Identical Claims

*Troell* dismissed essentially identical (and equally flawed) allegations and theories of liability against Defendants under JASTA, including specifically regarding the Attacks. Plaintiffs admit that Judge Vargas "noted the 'dearth of detail regarding the nature of transactions or the individuals who allegedly conducted the transactions from which a linkage with the terrorist attacks can reasonably be drawn'" and therefore, she "could not 'infer[]' that terrorists operated on Binance and conducted transactions related to October 7." (Opp. at 8 (quoting *Troell*, 2026 WL 636849, at *21).) So too here. Plaintiffs do not identify a single transaction or individual connected

3

to the Attacks, or identify *any* conduct by Defendants done with the intent to support the Attacks.

Nor can they. Just like in *Troell*, while the AC alleges that "Hamas, PIJ and other terrorists were using its exchange" (AC ¶ 5), this allegation is conclusory and contradicted by the FinCEN Consent Order reference cited in that paragraph, which does not claim that BHL processed any transactions directly for an FTO (as opposed to third parties purportedly associated with FTOs). Instead, at most, the FinCEN Consent Order alleges that BHL user addresses "were found to interact" with wallets "associated with" certain FTOs. (LaVigne Decl. Ex. 1 (FinCEN Consent Order) at 46.) Plaintiffs admit this. (AC ¶ 5 (alleging that BHL failed to "augment its ability to identify terrorist-*related* accounts"; "enable[d] users *linked* to Hamas, PIJ and other terrorist groups to evade regulatory scrutiny"; and processed transactions "*related to*" terrorist financing) (emphasis added).) And their Opposition similarly references Hamas- and other FTO-"associated" accounts or third parties, including "suspicious activity involving BuyCash, a money transmitter that was added to OFAC's SDN sanctions list in October 2023 for its involvement in Hamas fundraising, as well as ties to al-Qaeda and ISIS." *Troell*, 2026 WL 636849, at *8; (*Troell* AC ¶ 502; AC ¶ 196-98 (same); Opp. at 3 (similar), 4 (similar)). Plaintiffs cannot semantically reframe these allegations by claiming that Defendants "directly" provided services to FTOs. (Opp. at 11.)

Also as in *Troell*, Plaintiffs allege Hamas-associated transaction activity occurring *years before* the Attacks, and do not connect those transactions to the Attacks. For example, Plaintiffs claim that "from July 2017 through July 2023," Binance.com was used to process transactions "related to . . . terrorist financing" (Opp. at 3 (quoting AC ¶ 190)); that Hamas operated on Binance.com "in February 2019" (*id.* (quoting AC ¶¶ 213, 216)); and that there was "Hamas usage" on Binance.com "in April 2019 and in July 2020." (*Id.* (quoting AC ¶ 213, 215).) *Troell* rejected these same allegations as insufficient. 2026 WL 636849, at *20, *21. Similarly, Plaintiffs

4

and the *Troell* plaintiffs both allege that Hamas-identified wallets conducted "at least $56 million of transfers through Binance[.com]" and PIJ-identified addresses "obtained at least $59 million through transfers on Binance[.com]." *Id.* at *8; (*Troell* AC ¶¶ 1263, 1267; AC ¶ 194 (similar)).

Plaintiffs point to a single allegation not explicitly alleged in *Troell* that "a PIJ-owned wallet" transferred Tether Tokens to another wallet on November 22, 2022 (Opp. at 4; AC ¶ 152), but Plaintiffs again do not connect this transfer to the Attacks. And like Plaintiffs' other allegations that were dismissed in *Troell*, Plaintiffs do not plausibly allege Defendants' participation in or knowledge of that transfer, nor where those Tether Tokens went. Nor do Plaintiffs offer any support for their allegation that BHL had such knowledge based on its purported "ability to monitor transactions by FTO users," which does not convert into actual, contemporaneous knowledge. (Opp. at 15.) To the contrary, Plaintiffs' supporting citation regarding this transfer demonstrates that Israeli law enforcement did not identify and seek to seize this account ***until almost a year after the transfer occurred***. (AC ¶ 152 n.1 (citing a July 4, 2023, Administrative Seizure Order).)

In sum, the allegations here are precisely like those Judge Vargas rejected in *Troell*— indeed, Judge Vargas recognized as much. *See Troell*, 2026 WL 636849, at *17. So did Judge Moses. *See* ECF 129 (noting that *Troell* "granted a motion to dismiss a similar complaint").

**B.**     **Plaintiffs Do Not Meet Their "Drastically Increase[d]" Burden to Show Defendants' Intent to Aid the Attacks**

Plaintiffs do not engage with their "drastically increase[d]" burden to show Defendants "consciously and culpably assisted the [A]ttack[s]," given the lack of a close nexus between Defendants' conduct and the Attacks. *Troell*, 2026 WL 636849, at *21. To meet this stringent requirement, Plaintiffs must plausibly plead that the Attacks were something "that [Defendants] wish[ed] to bring about" or sought "by [their] action[s] to make [] succeed." *Smith & Wesson*, 605 U.S. at 291. This Court's conclusion that Defendants' conduct was not directly targeted at the

Attacks (*Raanan I*, 2025 WL 605594, at *23) is fatal under *Smith & Wesson*, *Ashley*, and *Troell*.

At most, Plaintiffs allege BHL should have been aware that some bad actors generally were taking advantage of its products downstream, yet deliberately avoided its AML and KYC obligations. (AC ¶¶ 131-163.) But this theory of willful ignorance is foreclosed by recent precedent. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498 (2023); *Smith & Wesson*, 605 U.S. at 293; *Ashley*, 144 F.4th at 437, 443-44; *Troell*, 2026 WL 636849, at *14-15; *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at *8 (S.D.N.Y. Sept. 26, 2025); *Alsanabani v. Spear Operations Group*, 2026 WL 983064, at *5 (D.D.C. Apr. 13, 2026); (Op. Br. at 14-15).

Like their attempt to distinguish *Ashley*, Plaintiffs argue that *Smith & Wesson* does not apply because "the gun manufacturer-defendants" there "did not offer any affirmative assistance" to the "'bad-apple[s].'" (Opp. at 6 (quoting *Smith & Wesson*, 605 U.S. at 295).) But the complaint in *Smith & Wesson* alleged "the manufacturers treat rogue dealers just the same as they do law-abiding ones—selling to everyone, and on equivalent terms." 605 U.S. at 295. The same is true here: Plaintiffs do not allege that BHL treated any alleged FTO-associated user any differently than its other users **because of** the purported FTO association. (AC ¶¶ 4, 6, 183, 187, 188, 228.) While the Court previously found that BHL has an "independent duty" to implement robust AML controls (*Raanan I*, 2025 WL 605594, at *21), that duty was not targeted at any specific FTO or customer. Indeed, Plaintiffs themselves only allege that BHL failed to implement or apply those controls "writ large." (*See, e.g.*, AC ¶ 214 (BHL "did not file any SARs as it was required to do")); *Troell*, 2026 WL 636849, at *15, *21 (concluding that BHL's alleged affirmative misconduct in failing to implement AML and CFT obligations was not aimed at Hamas or the PIJ, or any FTO); *Raanan I*, 2025 WL 605594, at *23 (compliance failures "not directly targeted at the" Attacks).

Further, there is no allegation in the AC or the agency filings that, *e.g.*, Defendants were

6

contemporaneously aware of FTO-affiliated transactions, that Defendants specifically intended to or did shield or process those transactions, or that FTO-affiliated customers sought and received assistance from BHL. (Op. Br. at 4.) Plaintiffs have no response. *Cf. Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592, 609-10 (D.C. Cir. 2026). Accordingly, *Smith & Wesson* forecloses aiding and abetting liability even where, as alleged here, BHL should have known "that 'some bad actors' are taking 'advantage' of its products for criminal purposes, . . . even if the company could adopt measures to reduce their users' downstream crimes." *Smith & Wesson*, 605 U.S. at 293.

Plaintiffs argue that this case is more akin to *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2021), where the defendants gave special treatment to FTOs. (Opp. at 13-14.) But Judge Vargas rejected this argument, finding *Kaplan* "merely serves to illustrate the deficiencies in Plaintiffs' allegations." *Troell*, 2026 WL 636849, at *18. As Judge Vargas explained, in *Kaplan*, the defendant bank *knew* that its customers "were integral parts" of a particular FTO, defended customers from accusations of money laundering for the FTO, advertised those customers, and helped them conceal sources of deposited funds. *Id.* The allegations here, by contrast, do not "identify the persons or entities who held the wallets at issue," "explain the nature of their connection to the [FTO]," "provide any facts from which it could be inferred that the nature of the wallet owners' affiliation with the [FTO] should have been known to Defendants," and "indicate that Defendants gave any special treatment to the owners of the wallets in question." *Id.* Judge Vargas thus concluded *Ashley* rather than *Kaplan* controls. The same result should follow here.

C.      **Plaintiffs Cannot Show Any Systemic, Pervasive and Culpable Assistance**

Plaintiffs also fail to meet the "high bar" for pleading Defendants' systemic, pervasive and culpable assistance of the FTOs at issue here. *Ashley*, 144 F.4th at 445. As Defendants explained, the allegations that they did not enact AML and KYC obligations "writ large" foreclose any notion that Defendants sought to "associate[ ] themselves" with any FTOs' "operations" or to form "a

7

near-common enterprise" with an FTO. *Id.*; *Troell*, 2026 WL 636849, at \*15, \*22.

Plaintiffs do not meaningfully dispute that, nor can they. As the Supreme Court explained, "routine and general activity that happens on occasion to assist in a crime—in essence, incidentally—is unlikely to count as aiding and abetting." *Smith & Wesson*, 605 U.S. at 292 (quotation marks and citation omitted). Thus, "an ordinary merchant does not become liable for all criminal misuses of his goods, even if he knows that in some fraction of cases misuse will occur." *Id.* (cleaned up). Rather, the "merchant becomes liable only if, beyond providing the good on the open market, he takes steps to promote the resulting crime and make it his own." *Id.* (internal quotation omitted). Plaintiffs have not pointed to any such allegations here. This is simply not a case where Defendants are alleged to have had "bespoke dealings" directly with terrorist groups by secretly routing cash and nonfinancial bribes (*e.g.*, drugs) to those groups in response to "unusual solicitations" from those groups. *Cf. Atchley*, 165 F.4th at 612.

Nor can Plaintiffs save their claim through "dangerous wares" or "unusual services" theories. (Opp. at 14-15.) *Ashley* squarely rejected the argument that liability can "attach[] to an upstream financial institution of a company that itself produces a potentially dangerous ware." 144 F.4th at 443; (Op. Br. at 15). Accordingly, "Plaintiffs have not plausibly alleged that Defendants sought to engage in a common enterprise with any of the FTOs who committed the [A]ttacks[.]" *Troell*, 2026 WL 636849, at \*22; (*see also* Op. Br. at 14).

## <u>CONCLUSION</u>

For all of the foregoing reasons and those set forth in the Opening Brief, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' AC. Because Plaintiffs do not identify any additional facts that could cure the deficiencies discussed above, any request for further leave to amend should be denied.

Dated: May 29, 2026
New York, New York

| BAKER HOSTETLER LLP | WITHERS BERGMAN LLP |
|---|---|

By: */s/ Marco Molina*
Marco Molina
Joanna Wasick
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4231
mmolina@bakerlaw.com
jwasick@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

By: _____
Christopher N. LaVigne
Joseph E. Gallo
Alexander C. Haden
430 Park Avenue, 10th Floor
New York, NY 10022
Tel: (212) 848-9800
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

MILBANK LLP

Neal Kumar Katyal (*pro hac vice*)
Colleen Roh Sinzdak (*pro hac vice*)
1101 New York Ave. NW
Washington, DC 20005
Tel: (202) 835-7505
Nkatyal@milbank.com
Crohsinzdak@milbank.com

Nola B. Heller
Matthew J. Laroche
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5108
Nheller@milbank.com
Mlaroche@milbank.com

*Attorneys for Defendant Binance Holdings Limited*

9